NELSON P. COHEN
Acting United States Attorney

SUSAN J. LINDQUIST
Assistant U.S. Attorney
Federal Building & U.S. Courthouse
222 West 7th Avenue, #9, Room 253
Anchorage, Alaska  99513-7567
Phone: (907) 271-5071
Fax: (907) 271-2344
susan.lindquist@usdoj.gov

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| MARK N. WAYSON, | ) Case No.  4:06-cv-00001-JWS |
| | ) |
| Plaintiff, | ) **LINDA RUNDELL'S, IN HER** |
| v. | ) **INDIVIDUAL CAPACITY,** |
| | ) **MOTION TO DISMISS FOR** |
| LINDA RUNDELL and UNITED | ) **FAILURE TO STATE A CLAIM** |
| STATES OF AMERICA, | ) **AND FOR QUALIFIED** |
| | ) **IMMUNITY** |
| Defendants. | ) |
| | ) |

Defendant, Linda Rundell ("Rundell"), in her individual capacity, through counsel, and without waiving her right to be properly served, moves, pursuant to Fed. R. Civ. P. 12(b)(6), to dismiss all causes of action against her in her individual capacity.  Mark N. Wayson ("Wayson") failed to state a claim upon which relief can be granted and she is entitled to qualified immunity from suit for the allegations in the Amended Complaint.

## FACTS

Around April 5, 2002, Wayson wrote to Earl Devaney, the Inspector General, Department of the Interior, and asked him to investigate whether BLM manager, Robert Schneider, or others, had created a dangerous, provocative situation for him and other Alaskans. Amended Complaint ¶ 5. Ex. B at 1. In his letter, Wayson described a September 15, 2001 incident in which Carol Hammond, a Bureau of Land Management ("BLM") engineer directing an erosion control project on or near Wayson's state mining claim. Wayson asked her to halt the project and Hammond refused. Ex. B. Hammond called another BLM project manager, Shelly Jacobson, who came and checked the site. Ex. B. Hammond also stated that she felt threatened and she telephoned the BLM ranger to come to the site. Ex. B.

On September 17, 2001, Wayson met with state and federal officials about the project and his mining claims. Schneider decided to continue the project at another site and provided an armed ranger at the site until the project was completed. Ex. B. Wayson stayed off his mining site until the project was completed. Ex. B.

In response to Wayson's letter, BLM investigated the incident, and on September 19, 2002, Linda Rundell ("Rundell"), BLM's Acting State Director, signed a memorandum to BLM's Chief, National Law Enforcement Office. Ex. A; Amended Complaint ¶ 2. Rundell's memorandum stated in reference to the September 15 confrontation between Hammond and Wayson that "Ms. Hammond expressed fear to both Wayson and the BLM management that there was a perceived threat from Wayson. It was a weekend day and the incident was in a remote location." Ex. A. Later she wrote:

> As a manger, Schneider has the right, responsibility, and legal obligation to ensure he is not exposing his employees to any undue harm. Title 18 United States Code 111 states in pertinent part, 'whoever forcibly assaults, resists, opposes, *impedes, intimidates, or interferes* with any person designated in section 114 of this title (the BLM falls within this statute) while engaged in or on account of the performance of official duties shall be fined under this title or imprisoned not more than one year, or both.' Ms. Hammond, while performing her official duties, was intimidated by Mr. Wayson. It is our opinion that Mr. Schneider acted reasonably and prudently when he requested the rangers to stand by the site until the work was completed, thereby relieving Ms. Hammond of the intimidation she felt, whether real or perceived.

Ex. A. Rundell sent the memorandum to Walter I. Johnson, the Chief, National Law Enforcement Office, who forwarded it to the Special Agent-In-Charge, Western Division, Office of Inspector General, with a note stating that based on the memo, his office closed the case. Ex. E.

In 2003, Wayson sued Schneider, alleging that Schneider had violated his constitutional rights of free speech and due process. Ex. C, Wayson v. Schneider, F03-0035CV (JWS) ("Wayson I"). Wayson claimed that Schneider told Ben Kennedy, a state employee, that Wayson was a threat to BLM employees and that this statement chilled his speech and deprived him of access to his property. Ex. C at 2. During discovery in Wayson I, Wayson received a copy of Rundell's memorandum.

After discovery, Schneider moved for summary judgment and the Court granted the motion. It found that Wayson only stayed off of his mining claim from September 2001 through December 2001. Ex. D at 2. The court also found that "absent evidence that Schneider expected what he told Kennedy to be forwarded to Wayson, a communication from Schneider to *Kennedy* . . . is at most a 'scintilla' of evidence supporting the critical position that Schneider acted with the intent to silence Wayson." Ex. D.

As a state director, Rundell had the authority over many areas including the watershed and law enforcement. Ex. F at 12. In the area of the watershed, she was charged with erosion control. She provided law enforcement services to the users of public lands. Id. She supervised a large workforce of employees. Ex. F

at 13.  Lastly, as director, she was given "the privilege and obligation of functioning with full latitude and independence of action."  Ex. F at 14.

## STANDARD OF REVIEW

When considering a motion to dismiss, the court views facts presented in the pleadings and inferences drawn from them in the light most favorable to the nonmoving party; there must be no unresolved issue of fact and no question that movant is entitled to judgment as a matter of law.  <u>General Conference Corp. of Seventh-Day Adventists v. Seventh-Day Adventists Congregational Church</u>, 887 F.2d 228, 230 (9th Cir. 1989); <u>see</u> <u>3550 Stevens Creek Associates v. Barclays Bank of California</u>, 915 F.2d 1355 (9th Cir. 1990).

As qualified immunity protects federal employees from the burden of discovery, it is properly first raised as a motion to dismiss under Fed. R. Civ. P. 12(b)(6).  <u>See</u>, <u>Mitchell v. Forsyth</u>, 472 U.S. 511, 527-28, 105 S.Ct. 2806 (1985); <u>Branch v. Tunnell</u>, 14 F.3d 449, 453 (9th Cir. 1994).  The 12(b)(6) motion is not changed into a Rule 56 summary judgment motion when the defendant attaches exhibits that could have properly been attached to the complaint.  <u>Branch</u>, 14 F.3d at 453.  "[D]ocuments whose contents are alleged in the complaint and whose authenticity no party questions" may be considered by the court without

converting the motion into a Rule 56 motion. Id. at 454. In Branch, the court allowed Tunnell's affidavit which had supported the application for a warrant and the deposition testimony of Donnely who had supplied information to Tunnell for use in Tunnell's affidavit.

In this case, Rundell is attaching the documents relevant to the issues raised which could have been attached to the complaint or to which no party would challenge the authenticity.

## ANALYSIS

**I.     WAYSON FAILED TO STATE A CLAIM FOR THE VIOLATION OF A CONSTITUTIONAL RIGHT**

   A.     Wayson Has No Constitutionally Protected Interest Not
          to Be Accused of a Crime.

Wayson alleges that in the September 19, 2002 memorandum, Rundell made an official finding that he committed a crime against BLM employee Carole Hammond. Amended Complaint ¶ 2. He alleges that there was no factual basis for Rundell's finding and that she did this to conceal the wrongdoing of her subordinate Schneider. Amended Complaint ¶ 3 & 6. Wayson alleges that she made this false finding "for the purpose of compromising Plaintiff's reputation and credibility with others, including the state of Alaska . . . ." Amended Complaint ¶ 6.

Falsely accusing someone of a crime is defamation.[1]  "A communication is defamatory if it tends to harm the reputation of another so as to lower him [or her] in the estimation of the community or to deter third persons from associating or dealing with him [or her]."  Green v. Northern Publishing Co., Inc., 655 P.2d 736, 739 (Alaska 1982), *cert. denied,* 463 U.S. 1208 (1983) (citing Restatement (Second) of Torts § 559 (1977)).

People have no constitutional right to be free of defamation unless it is accompanied by the loss of something substantial, like federal employment.  Paul v. Davis, 424 U.S. 693, 706 (1976).  In Paul, state officials identified the Plaintiff to local businesses as a known shoplifter.  The shoplifting charge against the Plaintiff had been dismissed.  The Plaintiff sued, "seeking redress for the alleged violation of rights guaranteed to him by the Constitution of the United States."  Id. at 696.  The Court found that such an allegation "would appear to state a classical claim for defamation actionable in the courts of virtually every State.  Imputing criminal behavior to an individual is generally considered defamatory Per se . . . ."  Id. at 697.  But defamation does not violate constitutional rights.  The court found "that the interest in reputation asserted in this case is neither 'liberty' nor

---

[1] Blacks Law Dictionary (8th Ed.) defamation**,** *n.* **1.** The act of harming the reputation of another by making a false statement to a third person.

'property' guaranteed against state deprivation without due process of law." Id. at 712.

Wayson, too, asserts that Rundell falsely accused him of a crime in her memorandum. Such an allegation is actionable under state tort law. But Wayson, like the Plaintiff in Paul, is not suing for the tort of defamation. He is suing for a violation of constitutional rights. Paul squarely held that there is no constitutional right to be free of defamation. Thus, Wayson had no due process right to a "chance to defend himself against these charges." Moreover, in this case, no government official formally charged Wayson with a crime.

    B.    Wayson Has No Standing to Claim That Rundell Violated the Law and He Has No Constitutional Right to an Investigation.

Wayson alleges that in finding that Wayson had committed a crime, Rundell violated the law clearly established in 18 U.S.C. §1519,[2] Obstruction of Justice. Amended Complaint ¶ 10. He concluded that Rundell's false statements about

---

    [2] Destruction, alteration, or falsification of records in Federal investigations and bankruptcy. Whoever knowingly alters, destroys, mutilates, conceals, covers up, falsifies, or makes a false entry in any record, document, or tangible object with the intent to impede, obstruct, or influence the investigation or proper administration of any matter within the jurisdiction of any department or agency of the United States or any case filed under title 11, or in relation to or contemplation of any such matter or case, shall be fined under this title, imprisoned not more than 20 years, or both.

him in her report satisfy the elements of the crime of Obstruction of Justice. He concludes that because Rundell violated the law, she could not have been acting within the scope of her employment

Wayson has no private right of action to assert a violation of the criminal statute. Forsyth v. Humana,114 F.3d 1467, 1482 (9th Cir. 1997) ("The obstruction of justice claim under 18 U.S.C. § 1503 is also futile because 18 U.S.C. § 1503 is a criminal statute that does not provide for a private cause of action."); Scherer v. United States, et. al., 241 F. Supp. 2d 1270, (Kansas 2003) (listing cases). If he has no private right of action to assert the crime, then the fact that her actions may have violated a criminal statute does not affect the exercise of his Constitutional rights.

Within the context of the allegation that Rundell obstructed justice, Wayson alleges that her obstruction of justice deprived him of his due process right to have an investigation into whether Schneider violated his rights. Amended Complaint ¶ 13. Wayson has no Constitutional right to an investigation. Congress delegated to the United States Attorney General and his delegates the authority to conduct civil and criminal legal proceedings. 28 U.S.C. §§ 515, 516. Thus, the government, and not Wayson, has the right to decide when to conduct civil or criminal

proceedings. Wayson has no Constitutional right to have the government investigate anything at his request.

  C. Wayson's Free Speech Could Not Have Been Affected by an Internal Memorandum.

Wayson claims that the 2003 memorandum which was not released to him or the public, and which he received in 2004, infringed on his First Amendment Rights. Amended Complaint ¶24. An individual may bring a constitutional tort action for violations of the freedom of speech clause of the first amendment. Gibson v. United States, 781 F.2d 1334, 1342 (9th Cir.1986), cert. denied, 479 U.S. 1054(1987). The elements of such a claim are (1) a governmental action, (2) designed to retaliate against and chill political expression, and (3) damages. Allen v. Scribner, 812 F.2d 426, 437 (9th Cir. 1987) (Noonan, J., dissenting). Moreover, the courts have held that "[a] plaintiff 'may not recover merely on the basis of a speculative 'chill' due to generalized and legitimate law enforcement initiatives' . . . . However, where a plaintiff 'allege[s] discrete acts of police surveillance and intimidation directed solely at silencing' her or him, a civil rights claim will lie. . . . The defendant's intent is an element of the claim." Mendocino Environmental Center v. Mendocino County, 14 F.3d 457, 464 (9th Cir. 1994) (internal citations omitted).

The internal memorandum was only published to Wayson in the course of litigation of Wayson I. In Wayson I, the court found that "absent evidence that Schneider expected what he told Kennedy to be forwarded to Wayson, a communication from Schneider to *Kennedy* . . . is at most a 'scintilla' of evidence supporting the critical position that Schneider acted with the intent to silence Wayson." Ex. D at 4. The same rationale applies to the communication from Rundell to the BLM Chief Law Enforcement Office. There is no evidence that Rundell ever intended her memorandum to reach Wayson, and therefore, there is at most only a "scintilla" of evidence that Rundell acted with the intent to silence Wayson.

Moreover, there is no evidence that Wayson was ever silenced. Throughout the Amended Complaint Wayson lists numerous communications he made about Schneider and the incident he wanted investigated. Amended Complaint ¶¶ 14, 15, 16, 18, 19, 21. Wayson contacted his local Assistant U.S. Attorney, the U.S. Attorney, and the Attorney General about the issue. Wayson incorrectly assumes that his own right to speak comes with the right to have a responsive listener. As Wayson failed to allege any evidence to show that Rundell intended to silence him, and he failed to allege a single instance when the internal memorandum affected his right to speak, his claim fails.

D.  Rundell's Memorandum Did Not Deprive Wayson of the
    Use of His Property.

Wayson claims that Rundell's memorandum caused him to be deprived of the use of his property. Amended Complaint ¶ 24. He did not identify a single instance when he was deprived of the use of his property. Wayson made the same claim in Wayson I. In 2005, the court found that there was no evidence that Wayson declined to use his property because of a statement Schneider made to Kennedy. Ex. D at 2. The government demonstrated that there was not a time after Wayson heard of Schneider's statement in December 2001, that Wayson did not go on his mining claim. Id. In his letter to Mr. Devaney, he stated that he returned to his claim after the project was finished. Ex. B at 1. The letter infers that he stayed off of his mining claims immediately after the Hammond confrontation because of feared BLM provocation and not because of Rundell's memorandum which did not exist at the time.

Thus, Wayson voluntarily stayed off his property until the project was finished. Rundell's memorandum had nothing to do with his decision to stay off his property as it did not issue until long after the project was finished. Rundell did not write her memorandum until 2002 and Wayson did not learn of it until 2004. Wayson's allegation is conclusory and fails to state a claim.

## II. RUNDELL HAS QUALIFIED IMMUNITY UNLESS THE ACT COMPLAINED OF IS APPARENTLY LAWLESS.

As a general rule, federal officials are protected by qualified immunity as to constitutional claims or violation of federal law. "One of the purposes of immunity, absolute or qualified, is to spare a defendant not only unwarranted liability, but unwarranted demands customarily imposed upon those defending a long, drawn out lawsuit." Siegert v. Gilley, 500 U.S. 226, 232 (1991).

Qualified immunity is intended to provide government officials with the ability reasonably to anticipate when their conduct may give rise to liability for damages and to terminate unjustified lawsuits quickly. Anderson v. Creighton, 483 U.S. 635, 646 (1987); Davis v. Scherer, 468 U.S. 183, 195 (1984). Because qualified immunity is in part an entitlement not to be forced to litigate the consequences of official conduct, it is conceptually distinct from the merits of the plaintiff's claims that his rights have been violated. See, Mitchell v. Forsyth, 472 U.S. 511, 527-28 (1985). Qualified immunity affords a defendant government official broader protection than does the merits defense that no constitutional or statutory violation occurred. See, Hunter v. Bryant, 502 U.S. 224 (1991) (per curiam). To reach the question of entitlement to qualified immunity, the court assumes the violation of a constitutional or statutory right by the Defendant.

Otherwise, there is no need for the immunity. By the same token, immunity is not defeated because a right has been violated; if that were the case, immunity would be available only when it was not needed.

In <u>Anderson</u>, 483 U.S. at 640, the court held that "the contours of the [constitutional] right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." 483 U.S. at 640. In the light of pre-existing law, the unlawfulness must be apparent. <u>Id.</u>

The qualified immunity enunciated in <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818 (1982), protects "government officials performing discretionary functions." The Supreme Court noted that "such officials as police officers or prison wardens, to say nothing of higher level executives who enjoy only qualified immunity, routinely make close decisions in the exercise of the broad authority that is necessarily delegated to them." <u>Davis</u>, 468 U.S. at 196.

The reasonableness of the officer's action is judged with a forgiving standard intended to give ample room for mistake in judgments. <u>See</u>, <u>Hunter</u>, 502 U.S. at 227. The court intends for qualified immunity to protect "all but the plainly incompetent or those who knowingly violate the law." <u>Malley v. Briggs</u>,475 U.S. at 341. An official cannot be held to have acted unreasonably simply because a court might, in hindsight, be able to craft another way of carrying

out the function that is the basis of the suit.  See, Hunter, 502 U.S. at 228: "[T]he court should ask whether the agents acted reasonably under settled law in the circumstances, not whether another, or more reasonable, interpretation of the events can be constructed five years after the fact."  All that is required is that the defendant's action be within the range of professional competence expected of an official.  Malley, 475 U.S. at 346, n.9.

The proper inquiry to determine whether a federal officer has qualified immunity for a constitutional violation is: "Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?"  Saucier v. Katz, 533 U.S. 194, 201 (2001)  "If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity.  On the other hand, if a violation could be made out on a favorable view of the parties' submissions, the next, sequential step is to ask whether the right was clearly established.  This inquiry, it is vital to note, must be undertaken in light of the specific context of the case, not as a broad general proposition; and it too serves to advance understanding of the law and to allow officers to avoid the burden of trial if qualified immunity is applicable."  Id.  "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a

reasonable officer that his conduct was unlawful in the situation he confronted." Id.; Valdez v. Rosenbaum, 302 F.2d 1039, 1043(9th Cir. 2002).

Looking at the event in the light most favorable to Wayson, the question presented is, do the facts alleged show that Rundell violated a constitutional right? Would everyone, but the plainly incompetent, have recognized that the BLM Acting State Director could not conclude in an internal memorandum that Wayson's behavior was a crime, because it would violate his Constitutional rights? Of course not.

Rundell, as Acting State Director, oversaw the various divisions of BLM. One division was Law Enforcement. One function of BLM was to provide "law enforcement services for the protection of users of public land in co-operation with other Federal, state, and local authorities. . . ." Ex. F. Law enforcement and cooperating with Federal authorities were part of Rundell's job. The national BLM office asked Rundell to investigate the September Wayson-Hammond incident, and she did. She was authorized to investigate an incident that occurred in her jurisdiction and render an opinion about whether any person's actions constituted an illegal activity. She concluded that Wayson's actions could qualify as a crime under 18 U.S.C. 111.

BLM has law enforcement powers on BLM property and the incident involved a BLM employee engaged in a project to prevent soil erosion, an area within the State Director's authority. Rundell was exercising her discretion in gathering factual information and formulating conclusions. This act was within her job duties as the Acting State Director.

Rundell acted reasonably and should not have known that expressing an opinion about an incident within her authority could possibly violate a Constitutional right. There is no need for the court to go to the second step. If the court did consider whether the Constitutional right was clearly established, it would have to conclude that under Paul v. Davis, it was clearly established that people do not have a Constitutional right not to be defamed, which is the damage that results when someone is wrongfully accused of a crime

## CONCLUSION

Wayson does not have a constitutional right to be free of defamation, unless it is associated with a tangible benefit, like federal employment. He lacks standing to accuse Rundell of committing a crime and to claim a Constitutional right to an investigation. He did not allege a single incident when the memorandum prevented him from speaking or from using his property. As such he has failed to state a claim for which relief can be granted.

In the alternative, Rundell is entitled to qualified immunity. As the Acting State Director, she was in charge of law enforcement for the BLM. It was not apparently lawless for her to respond to the National Law Enforcement Officer's request for an investigation. She had not only the right, but the duty to determine whether a citizen had violated the law. She claimed that Wayson was aggressive toward a federal officer and that he violated 18 U.S.C. 111. She made this accusation in an internal memorandum, which was not published until it was given to Wayson in discovery in another lawsuit. As a director, she had discretion to act independently in her assigned areas of authority, which included managing employees, soil erosion projects, and law enforcement on BLM property. She did not knowingly violate a Constitutional right when she made a decision about Wayson's interaction with her employee who was working on a spoil erosion project. She is entitled to qualified immunity.

The court should dismiss this case under Fed. R. Civ. P. 12(b)6. The court should also grant Rundell qualified immunity and dismiss the case.

Respectfully submitted this 4th day of October, 2006.

NELSON P. COHEN
United States Attorney

s/ Susan J. Lindquist
222 West 7th Ave., #9, Rm. 253
Anchorage, AK 99513-7567
Phone: (907) 271-3378
Fax: (907) 271-2344
E-mail: susan.lindquist@usdoj.gov
AK #9008053

**CERTIFICATE OF SERVICE**

I hereby certify that on October 4, 2006,
a copy of the foregoing **LINDA RUNDELL'S, IN HER INDIVIDUAL CAPACITY, MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM AND FOR QUALIFIED IMMUNITY**
was served on:

Mark N. Wayson
c/o Wickwire
2775 Hanson Road
Fairbanks, AK 99709

by regular U. S. mail.

s/ Susan J. Lindquist