RECEIVED JUL 06 2005 Office of United States Attorney Anchorage, AK

FILED JUL 06 2005 UNITED STATES DISTRICT COURT DISTRICT OF ALASKA By_____ Deputy

UNITED STATES DISTRICT COURT

DISTRICT OF ALASKA

| | |
|---|---|
| MARK N. WAYSON, ) | |
| ) | |
| Plaintiff, ) | F03-035 CV (JWS) |
| ) | |
| vs. ) | ORDER FROM CHAMBERS |
| ) | |
| ROBERT SCHNEIDER and THE ) | |
| UNITED STATES OF AMERICA, ) | |
| ) | [Re: Motion at Docket 64] |
| Defendants. ) | |

### I. MOTION PRESENTED

At docket 64, defendant Robert Schneider ("Schneider") moves for reconsideration of the court's order at docket 63 which denied his motion for summary judgment at docket 54. The court requested a response from plaintiff Mark N. Wayson ("Wayson") which was filed at docket 67. The court has considered the parties' papers.

### II. DISCUSSION

It is not necessary to recount the background of this litigation in detail. The court incorporates the discussion in its earlier orders.[1] As a result of earlier motion practice, the one claim remaining in this case is Wayson's *Bivens* claim against Schneider. In his complaint, Wayson alleges that Schneider's statement to state employee Ben

---

[1] *See* doc. 17 at pp. 1-2 and doc. 63 at pp. 1-4.

Exhibit D  69

Kennedy that Wayson was a threat to "all BLM employees"[2] chilled his constitutional right of free speech and also his right to access his property interest in his state mining claims. In the order at docket 63, the court pointed out that the statement did not keep Wayson off his mining claims during the period immediately following his September 15, 2001 encounter with BLM employee Carol Hammond, because he did not learn of the statement until December of 2001, and there is no other period of time in which there is any evidence that Wayson did not go to the mining claims. Thus, Wayson's *Bivens* claim stands or falls on the proposition that Schneider acted with the intent to discourage Wayson from exercising his constitutional right to free speech.

    The court's order at docket 63 concluded that there was circumstantial evidence from which a fact-finder might infer that Schneider did intend to chill Wayson's free speech rights. In particular, the court relied upon the video tape Wayson took of a conversation he had with Hammond on September 15, 2001, and Schneider's awareness of the correspondence of Tom Allen the former state director of BLM concerning an earlier interaction between Wayson and the BLM.

    Schneider's motion asserts error in the court's reliance on the possibility that the videotape might be interpreted to show that Hammond was not threatened, contending that Schneider had not seen the videotape. In his response, Wayson does not argue that Schneider had seen the videotape. Instead, Wayson points out that Schneider knew of its existence. From this fact, Wayson contends that failure to consider the videotape and instead rely on Hammond's description of the encounter is evidence suggesting reckless disregard of the best evidence of the encounter which, in turn, could support a conclusion that Schneider intended to chill Wayson's exercise of free speech. The problem with Wayson's argument is that there is no evidence that Schneider could have viewed the videotape and it is unreasonable to infer that he should have. The tape was made by Wayson, not Hammond, and the statement to Kennedy was made not long after the videotaped encounter. The court concludes that

---

[2]The actual statement—and Wayson concedes this point— was a threat to "BLM employees." The word "all" was not used. In the court's earlier order, it quoted the allegation in the complaint, but did not clarify that the allegation was slightly inaccurate.

Exhibit D

it erred in relying on the videotape as evidence which properly could be considered by the fact-finder in determining Schneider's state of mind when he communicated with Kennedy.

Schneider's motion also argues that the court erred in relying on the series of communications involving Tom Allen which concluded with recognition that Wayson was not a threat. Schneider's position seems to be that because he was operating only from his memory and that he correctly remembered that a portion of the correspondence does support the proposition that Wayson was a threat, the correspondence is not evidence which can support an intent to chill Wayson's free speech rights. Wayson's rejoinder is that Schneider was making use of a selective memory from which an implication of inappropriate intent may arise. Here, the evidence was available to Schneider in the agency files. On this subject, the court believes Wayson has the better of the argument. The reliance on some but not all of the information could support an inference of inappropriate intent.

The most critical flaw in the court's order, according to Schneider is that it does not adequately consider that the communication alleged to have chilled Wayson's free speech rights was not directed to Wayson himself, but to state employee Ben Kennedy. Furthermore, asserts Schneider, there is no evidence that Schneider intended what he said to Kennedy be communicated to Wayson. In response to this, Wayson does not argue that the communication to Kennedy was intended to be passed along to Wayson, but that if it was not intended for Wayson, then it was "more culpable as Wayson would suffer the same loss, but have more difficulty discovering its source."[3] Wayson also complains that the comment "was intended to discredit Wayson with other state and federal mining regulators and discredit or nullify his ongoing efforts to show that BLM was altering a streambed without an ADF&G Permit by portraying him as a dangerous radical."[4]

The "dangerous radical" terminology is hyperbole, of course, but the fundamental

---

[3] Doc. 67 at p. 4.

[4] Id.

Exhibit D

error with Wayson's position is that he confuses his right to speak freely with an assumed right to speak without contradiction. Wayson has a constitutional right to speak, but he has no constitutional right to have what he says considered in a vacuum, nor any right to require those who voice a different opinion to keep silent lest Wayson's speech be less effective. The right to speak carries no corresponding power to silence others.

Kennedy was a contact person for the State which clearly had an interest in what BLM was doing and a right to know why a law enforcement officer had been sent to the area. Schneider's communication to Kennedy was an explanation of why that happened. Absent evidence that Schneider expected what he told Kennedy to be forwarded to Wayson, a communication by Schneider *to Kennedy* objectionable only because it omitted some aspects of prior communications by Tom Allen is at most a "scintilla" of evidence supporting the critical proposition that Schneider acted with the intent to silence Wayson. A fair minded jury could not find from the facts here that a preponderance of the evidence shows Schneider intended to chill Wayson's right to speak freely. Under such circumstances summary judgment for Schneider is appropriate.[5]

### III. CONCLUSION

For the reasons above, the motion for reconsideration at docket 64 is **GRANTED**, and as a consequence, the motion for summary judgment at docket 54 is now also **GRANTED**. Because awarding summary judgment to Schneider means that all claims have been resolved against plaintiff, the Clerk will please enter judgment that plaintiff take nothing.

DATED at Anchorage, Alaska this 6th day of July 2005.

/s/ John W. Sedwick
JOHN W. SEDWICK
UNITED STATES DISTRICT JUDGE

---

[5] *Anderson v. Liberty Lobby, Inc.*, 477 S.Ct. 242, 252 (1986).

-4-