FILED
US DISTRICT COURT
DISTRICT OF ALASKA

2006 OCT 13  PM 3: 42

Mark N. Wayson
C/o Wickwire
2775 Hanson Road
Fairbanks, AK 99709
markonwayson@yahoo.com

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ALASKA

MARK N, WAYSON,                )
                               )
              Plaintiff,       )
                               )
        Vs.                    )
                               )
LINDA RUNDELL and the          )
UNITED STATES OF AMERICA       )
                               )
              Defendants.      )
_____ )    4:06-Cv 1 (JWS)

## OPPOSITION TO LINDA RUNDELL'S MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM AND FOR QUALIFIED IMMUNITY

Plaintiff understands that the scope of the court's review is to be governed by rule 12

b (6) and not rule 56, and that the allegations in the Plaintiff's amended complaint will

be assumed to be true for the purposes of ruling on the defendant's motion.   The

Defendant's Exhibits provide no facts for her Motion to Dismiss which disputes (1) the

Plaintiff's damages, or (2) the violation of the plaintiff's right to free speech and due

process. The Court, looking at the record in the light most favorable to the party opposing

Wayson v. Rundell, 4:06 Cv 1 JWS
Opp to Mot to Dismiss Fail to state
Claim & qual Immun. 10-13-06

the motion, and drawing all inferences most favorable to that party, will for the purposes
of this opposition, take the allegations in the Plaintiff's amended complaint as true.
Poller v. Colombia Broadcasting System Inc. 368 U.S. 464, 473, 82 S.Ct. 486, 491 7
L.Ed.2d.458 (1962)

Those allegations include that the Defendant acted in retaliation for the Plaintiff
exercising his free speech rights in complaining about Robert Schneider and other
conduct and constitutional violations by BLM, and that the Defendant's act is the cause
of general and special damages which the Plaintiff alleges.

Plaintiff has never claimed a right to prosecute a violation of the criminal statutes,
making the Defendant's contention pleadings in this regard incorrect.

Plaintiff has not asserted any constitutional right to be free of defamation.

Plaintiff has not asserted any right to have the government investigate anything at his
request.

Plaintiff has not asserted any claim that the right to free speech includes the right to a
responsive listener.

Wayson v. Rundell, 4:06 Cv 1 JWS
Opp to Mot to Dismiss Fail to state
Claim & qual Immun. 10-13-06

The Defendant's extrapolation from the dismissed Schneider case, that only a 'scintilla' of evidence exists that Rundell intended to silence Wayson is not a valid application to Wayson v. Rundell.   The Defendant is mistaken as well to use language from the dismissed Schneider complaint, to measure the damages in Wayson v. Rundell. Rundell's September 19, 2002 memo was sent to the Chief of Law enforcement for the BLM.   This magnifies many times, the effects of silencing Wayson, which Schneider achieved by communicating to Kennedy, a state of Alaska mining regulatory official, that Wayson was a ' serious potential threat to BLM employees.'   Rundell's retaliation against Wayson went a giant step beyond Schneider's to damage and silence Wayson. Instead of investigating Schneider as she claims she did, Rundell validated Schneider's 'serious potential threat to BLM employees,' by creating a record available nationwide of a forcible crime committed by the Plaintiff against a BLM employee, namely Carol Hammond.  Rundell's memo came more than a year after the 9-11 tragedy, and therefore, both as a normal citizen and as the BLM State Director she was fully aware of the new sharing of information and cooperation by law enforcement and intelligence agencies which followed  9-11.  Rundell could be expected to know therefore, that her finding would at least be accessible to virtually thousands of other federal officials, and that the effects of her finding could extend far beyond the borders of the United States, since many of these federal officials with access to her finding, live and work worldwide.

The 'bell' which Rundell rang with her finding will continue to chime for a long time, and cannot now be unrung . Rundells' message to Wayson is very clear. Paraphrased it is:

"Since you dared to complain about criminal activity by my subordinate, and other misconduct and environmental violations by the BLM, I therefore am creating a permanent record that you are the criminal, who forcibly committed a crime against a federal employee, and this record will haunt and burden you, and impede your free speech and property rights for the rest of your life."

The Plaintiff's right to be heard before being condemned to suffer grievous loss of any kind, even though it may not involve the stigma and hardship of criminal conviction, is a principle basic to our society. Joint anti-fascist Comm. v. McGrath, 341 U.S. 123, 168, 71 S. Ct. 624  (1951)

The defendant's suggestion that the Plaintiff's 'conviction' in the record violates no due process right, and could not have been damaging to him because "no government official charged him with a crime." is not valid. Accusation of criminal activity alone is retaliation and sufficient to cause damages. White v. Lee    227 F 3d 1214 (9th Cir 2000)

Retaliation can be an adverse action  which would deter a person of ordinary firmness from continuing with that protected conduct.   Dean v. Byerley, 354 F.3d 540 (6th Cir. 2004)

As a direct result of the Rundell memo, to clarify his complaint, Plaintiff asserts here that he would never have filed a complaint against Robert Schneider had he known that it would lead to Linda Rundell's finding which would so tragically and adversely affect the Plaintiff's ongoing litigation necessary to enforce his father-daughter access rights after his daughter was abducted to Germany.

As a direct result of the Rundell memo to the Chief of BLM Law Enforcement, Plaintiff cannot safely, and would not consider applying for permits to mine on any federal lands. Mining on all federal lands in the United States is regulated, of course, by the BLM. All applications require give and take with regulators, which would be forever prejudiced on federal lands by the Rundell memo, and it would be too risky for the Plaintiff to apply because of the likelihood that such give and take could result in more BLM unsubstantiated criminal findings. Any reasonable miner would avoid mining anywhere on federal ground if he had the Rundell finding hanging over his head.

The test for qualified immunity for federal employees in Bivens cases, is the same test applied to 1983 cases at the state level. 2 Civil rights & Civil Liberty Litigation, Nahmod Section 8:70.

The Defendant appears to have legally mistaken 'sovereign immunity' with 'qualified immunity,' and taken too broad a view of the language of her Position Description

(Defendant's Exhibit F) which states, "Lastly she was given "the privilege and responsibility of functioning with full latitude and independence of action." This Position Description cannot grant greater immunity than those cases which set the limits of qualified immunity. .

It was foreseeable that the Plaintiff's Free Speech would be chilled. Qualified immunity principles protect Rundell from liability in performing discretionary functions only if her conduct did not violate clearly established constitutional rights. The test for this is whether a reasonable official in her position would reasonably have known her conduct was consistent with the range of conduct expected from an official in her position acting on the facts that she had.

Applying this test to Rundell's memo about Plaintiff, she did not follow prescribed procedures, knew the Plaintiff had not and did not represent any threat to Carol Hammond, knew of the Plaintiff's numerous complaints, and knew that it was unlawful to infringe upon the Plaintiff's free speech, and knew that the finding she made was part of the public records and would probably get out to Plaintiff because it was written during the Wayson-Schneider dispute. Once out to Wayson, it was foreseeable to Rundell that it would serve to chill his free speech.

Plaintiff's due process rights were infringed. Due process is fairness. Due process is a cornerstone of law enforcement, which protects the citizen from government abuse and

excess, and is a fundamental element of any law enforcement investigation. Rundell had

to know of this basic principle as she was a law enforcement supervisor. She knew she

had no authority to record her finding of a criminal act by the Plaintiff because she knew

that judicial evaluation of probable cause is the essential checkpoint between the

government and the citizen. Steagald v. US, 451 U.S. 204, 212, 101 S.Ct. 1642, 1648, 68

(1981)


The question is whether Rundell skipped this checkpoint in order to silence or

discredit  Plaintiff with an accusation which she knew could never survive even the most

casual of judicial reviews, then or now.


The Defendant was fully aware of her due process responsibilities in resolving

Plaintiff's complaints against the BLM. Her memo is dated September 19, 2002. On

May 15, 2002, Congress passed the "No Fear Act." The act itself required that it be

posted. This would notify employees and warn supervisors like Rundell that she may not

use her authority to retaliate against someone criticizing the government. It would be

unreasonable for Rundell to contend that this Act reminded her of the free speech rights

of government employees, but that she still thought she could retaliate against non-

employees like Wayson when they exercise the same free speech rights.

The 'No Fear Act' is the "Notification and Federal Employee Antidiscrimination and

Retaliation Act of 2002" Public Law107-174, Title 1, General provisions, section 101(1)


Wayson v. Rundell, 4:06 Cv 1 JWS
Opp to Mot to Dismiss Fail to state
Claim & qual Immun.  10-13-06

Under "Retaliation for Engaging in Protected Activity:" this Act prohibits Rundell from using her "authority to take or fail to take, or threaten to take or take, a personnel action against an employee or applicant because of disclosure of information by that individual that is reasonably believed to evidence violations of law, rule or regulation; gross mismanagement; gross waste of funds; an abuse of authority; or a substantial and specific danger to public health or safety,..."

Plaintiff's 'disclosure of information' through his complaints about Schneider and others at BLM, figuratively 'hit for the cycle' in touching upon every single one of the items of disclosure for which the No Fear Act protects Whistleblowers from retaliation by Rundell. Defendant may argue that the words 'personnel' and 'employee or applicant' in the Act, disqualify the Plaintiff for the protections which whistleblowers are provided by the Act, because of Plaintiff' was not an employee of Rundell's.

It is of course true that Plaintiff is not a federal Whistleblower. However, knowing of and complying with this new law was certainly a function of every law enforcement supervisor shortly after its passage. If this case reaches the discovery phase Plaintiff fully expects to find training materials from top levels of the Dept. of the Interior to all law enforcement supervisors alerting them to this new law with specific procedural instructions on how to avoid violating it. Therefore this law is relevant to what a reasonable official in Rundell's position would have realized that her memo finding Wayson guilty of a crime, would probably violate his free speech rights. .

Wayson v. Rundell, 4:06 Cv 1 JWS
Opp to Mot to Dismiss Fail to state
Claim & qual Immun. 10-13-06

8

The publishing and subsequent posting of this Act by Rundell in her workplace, shows that more than four months before she wrote the Sept. 19, 2002 memo, she was reminded of the Free Speech and Due Process rights of all federal employees and should also have been reminded that non-employees have the same constitutional rights. A law enforcement supervisor should not need to be reminded by Congress of the importance of constitutional rights, but this statute did so.

There are no provisions in the 'Position Description' (Exhibit F) calling for two tiers of treatment by the State Director; namely one for federal employees, and another for the mere citizen. The No Fear Act served to remind employers that employees do not relinquish any of their rights under the Constitution as American citizens. It did not grant them additional protections not already theirs as citizens.

The circumstances under which the No Fear Act protects federally employed Whistleblowers are quite similar to those which Linda Rundell encountered when confronted with the Plaintiff's complaints about Schneider and BLM. Wayson's complaints about BLM were similar enough to those typically made by a Whistleblower, that Rundell knew she had to extend the same due process requirements, and was under the same no-retaliation restrictions mandated by the Antidiscrimination and Retaliation Act of 2002 Public Law107-174, Title 1, when dealing with the Plaintiff, as when dealing with a federal Whistleblower.

Wayson v. Rundell, 4:06 Cv 1 JWS
Opp to Mot to Dismiss Fail to state
Claim & qual Immun. 10-13-06

The Defendant, in Exhibit A, uses 'we' several times, and in this Motion to Dismiss and is contending that she was requested/assigned to 'investigate.' However, the document giving her this assignment was not offered.

The Defendant's Exhibit F, is a "Position Description" for a Bureau of land management State Director, the position held by Rundell at the relevant time. It states that one of the areas of her authority within the "...technical and managerial direction of the State Director,..." is Law Enforcement, which is defined as:.

Law Enforcement: Providing law enforcement services for the protection of users of public lands in cooperation with other Federal, state and local authorities and providing resources for the detection of illegal activities on public lands, including the growing of illegal drugs.

Even without the 'No Fear Act,' how could a State Director with law enforcement responsibilities not be aware that due process must precede a determination that someone has committed a crime. Why would a State Director with law enforcement resources at her disposal, not assign someone to investigate the facts before arriving at a finding of criminal conduct by the Plaintiff? Perhaps she knew in advance there was nothing to support the finding she made and her real intent was to use her power to punish the Plaintiff for complaining ?

Due Process is basic to law enforcement. There is a large body of law on what level of knowledge is expected of Law enforcement officers. It was clearly established by September 2002 that courts, not enforcement officers, have the role in due process of

Wayson v. Rundell, 4:06 Cv 1 JWS
Opp to Mot to Dismiss Fail to state
Claim & qual Immun. 10-13-06

determining the guilt of a party, and to scrutinize police actions which deny due process. The prohibition against, and unconstitutionality of the police skipping any of the steps in the process, and 'convicting' someone on their own is also fundamental 'Due Process 101.'

In the Motion to Dismiss, the Defendant is sometimes referred to as an 'officer' rather than an 'official' when trying to characterize her function as a manager more closely with the function of a law enforcement officer out in the field, making snap decisions. Cases such as Hunter v. Bryant, and Saucier v. Katz, cited by Rundell are not on point with as Rundell's law enforcement function in writing the finding memo did not require a snap decision.  Her function was not the same as that of an officer in the field.  The qualified immunity for discretionary functions of police officers making 'bad guesses in gray areas' is not extended to law enforcement managers like Rundell who had time to research, investigate, and deliberate with others on what she would write.  She was not in a gray area, but was within the bright lines defining her function and authority.   In Hunter v. Bryant, and Saucier v. Katz, there was an element of urgency which was not present when Rundell wrote her finding memo.

By September 19, 2002, more than a year had gone by since the 'September(2001) Wayson-Hammond incident' which the Defendant refers to.  More than eleven months had passed since Schneider had provided his "potential threat to BLM employees" assessment of Wayson to Kennedy with the State of Alaska, and more than five months

had gone by since the April 5, 2002 complaint from the Plaintiff to the D.O.I.-IG. (Defendant's Exhibit B) Thus, Rundell had sufficient time and resources to conduct an investigation. In addition to having no pressing time constraints, A BLM State Director may fairly be presumed to have free access to the legal resources of the U.S. Attorney's office, and other legal specialists in the federal government. Her Position Description (Defendant's Exhibit F) confirms this as well.

Defendant attached Exhibit B. This is the Plaintiff's letter of April 5, 2002, to the Interior Department Inspector General naming witnesses and stating that both written and video-taped evidence are available for his review. Yet Rundell offers no evidence that any investigation was conducted, but asserts that 'she did' one. It makes it clear that what started out as a finding, but later became an opinion, had no basis in fact.

The Defendant sent her September 19, 2002, finding of guilt by the Plaintiff to the "Chief" of the Bureau of Land Management law Enforcement for the United States, and in so doing, she had to know that the finding she sent, "Upon careful review,..." would serve to infringe upon the Plaintiff's free speech right, if only by closing the Plaintiff's complaint against the Defendant's subordinate, Robert Schneider. Under the 'all but the mentally incompetent' standard, Rundell knew such a finding sent to such a high enforcement authority would prejudice any and all future complaints against Robert Schneider, and/or other BLM employees made by the Plaintiff, through either the Dept. of the Interior or other law enforcement officials/agencies.

The Defendant fails the 'proper inquiry' test posed in the Motion to Dismiss, i.e. "Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?"

Taken in a light most favorable to the Plaintiff, Rundell's finding would be seen as retaliation against the plaintiff by any reasonable official in her position and with the facts she had as below that expected of Rundell.   No official would proceed to such an 'opinion' without investigating, and would not put this finding of the Plaintiff's guilt into a permanent government record.


The right to free speech goes beyond the right to utter sounds or write words.  It is not a right which is limited to exercising inside a barrel.  And while it does not guarantee a response from government, free speech   delivery can be infringed upon by an act of government intended to prejudice listeners against the message being sent.  The most important protection provided the country by the First Amendment is speaking out against government misconduct. .   The Plaintiff' Free Speech right to continue to file complaints against Robert Schneider and/or others in the BLM and federal government to federal agencies charged with investigating misconduct and/or criminal activity was infringedd by the official designation of the Plaintiff as a criminal, in the defendant's Sept. 19, 2002 memo.   If not already advised by the highest law enforcement office of the nationwide Bureau of land Management, any action by an agency or official in response to a complaint from the Plaintiff, would lead invariably to the nationwide BLM enforcement office where the finding that the Plaintiff committed a crime has now stood

as the closure to the reported misconduct by Robert Schneider, for more than four years. Rundell's finding has infringed the Plaintiff's right to free speech forever, by not providing due process since the fundamental requirement of due process, is the opportunity to be heard 'at a meaningful time and in a meaningful manner.' Armstrong v. Manzo, 380 U.S. 545, S.Ct. (1965)

The 'Paul' holding which the Defendant cites, that there is no constitutional right to be free of defamation, does not, as Ms. Lindquist suggests, evolve automatically into the loss of the expectation by the Plaintiff of 'due process right to a chance to defend himself against these charges.'   Any 'official' under the 'everyone but the plainly incompetent' standard the Defendant applies, would indeed recognize the requirement of proceeding through the courts before concluding an inquiry into reported misconduct by Robert Schneider, with a finding that Mark Wayson forcibly committed a crime against Carol Hammond. Further, no official would make such a finding without an investigation, nor would an official make such a finding based not on the facts, but on whether,r as the Defendant determined in her Sept. 19, 2002 memo, (Exhibit A) the intimidation Ms Hammond claimed she "felt," was "real or perceived"

If the court were to accept the Defendant's conduct as being within the range expected of officials, it would serve notice that official action against a citizen, upon any perception of any federal employee's feeling that a crime has been committed against them by a citizen, is automatically justified, and whether real or perceived, the 'feeling' is

enough basis for the federal official to reach a conclusion of criminal activity by the citizen.

The Defendant is not factually accurate, both in her recitation of facts in the **FACTS** and elsewhere in the Motion to Dismiss.   Plaintiff challenges the authenticity of the Defendant's 'factual claims' in several areas.  This Motion to Dismiss because of qualified immunity by the Defendant is likely a preview of a summary judgment motion on the same grounds.  Nevertheless, the district court, rather than a jury, is the finder of facts in qualified immunity pleadings, and is better served with an accurate factual record now.

Defendant states in her **CONCLUSION** that,

"It was not apparently lawless for her to respond to the "National law Enforcement's Officer's request for investigation." There is no evidence attached that any request or investigation took place.  If after an investigation, and after the findings were sent to a federal prosecutor, the Plaintiff was formally charged and convicted after a trial where all due process protections governed the procedure,  Rundell might then be entitled to qualified immunity if Wayson sued for violating his right to free speech based upon the same finding being sent to the national BLM law enforcement Chief, after the criminal process were complete. Nevertheless, even this scenario might not be enough to grant Rundell qualified immunity because of her impeding the investigation into her subordinate's conduct, an investigation which was formally requested according to

Wayson v. Rundell, 4:06 Cv 1 JWS
Opp to Mot to Dismiss Fail to state
Claim & qual Immun. 10-13-06

15

Defendant's Exhibit B, and one which she is asserting several times to the court now in this motion to Dismiss, she carried out.

Referring to the 'internal memorandum'(Exhibit A of this motion) the Defendant in the Motion to Dismiss Conclusion, writes,

"She claimed that Wayson was aggressive toward a federal officer and that he violated 18 U.S.C. 111."

This is not true. Exhibit A does not contain any mention of Wayson being 'aggressive.' On page 3, of her Motion to Dismiss, Defendant quotes directly her memo of Sept. 19, 2002.

"Ms. Hammond expressed fear to both Wayson and BLM management that there was a perceived threat from Wayson…"

This is not true. "Fear" is never mentioned. Defendant's direct quote in her Motion does not match what is written in Defendant's Exhibit A. And there is no evidence attached to this Motion, that the Plaintiff was a 'perceived threat' to Ms. Hammond. Mere repetition of a previous incorrect statement by the Defendant is not evidence.

The repetition of linking the 'perceived threat' to the Plaintiff, and the insertion of 'fear' and 'aggression' appears to go beyond merely slick lawyering. Words like "fear" and "aggressive" and "threaten" are often elements of intimidation. There was/is no evidence of intimidation or a violation of 18 U.S.C. 111 by the Plaintiff more than five years ago. Perhaps the Defendant is trying to flesh out the charge now, in the hopes that

the court will not actually review the Defendant's Exhibits. Perhaps the Defendant, five years late is trying to re-write the event of Sept. 15, 2001, to somehow justify tagging Wayson with a 'BLM conviction' of this statute in order to shut him up.

The Defendant's attachment of the Plaintiff's April 5, 2002, letter to the Inspector General does not make the contents 'evidence' against what she is claiming took place September 15, 2001. Nevertheless, the Defendant offers no objection in her Motion to the contents of Exhibit B. Exhibit B states that Ms. Hammond did feel 'threatened', but that she 'announced' on September 15, 2001 that the Plaintiff was not threatening her. Plaintiff would agree that this statement by Hammond, as reported by the Plaintiff in the Exhibit B, attached by the Defendant, that is;

"Carol Hammond inexplicably announced during the intereview that she felt "threaten ed", but that I was not threatening her.",

is an authentic factual representation that any threat Carol Hammond may have 'felt' on Sept. 15, 2001, was not caused by the plaintiff.

Page 3 of this Motion to Dismiss, opens with one of the Defendant's references to an 'investigation.' Defendant writes,

"In response to Wayson's letter, BLM investigated the incident, and on September 19, 2002, Linda Rundell (Rundell), BLM's acting State Director, signed a memorandum to BLM's Chief, National Law Enforcement Office."

This is not true.  There is no evidence attached to this Motion to Dismiss,  that any 'investigation which would qualify as an 'investigation' to either a law enforcement agency, or a State Director with the appropriate 'technical and managerial' skills managing a law enforcement agency, ever took place.

On page 16,of the Motion to Dismiss the Defendant claims that,  "Law enforcement and cooperating with federal authorities were part of Rundell's job.   The national BLM office asked Rundell to investigate the September Wayson-Hammond incident, and she did."

She did not.  While by page 16 of the Motion, the 'request' has morphed into an investigation of the 'September Wayson-Hammond incident,'(Schneider's misconduct took place in October.)  there is still no evidence that Linda Rundell conducted any investigation, and there is no evidence that the Defendant was asked to conduct  an investigation by the national BLM office.

The Defendant's repeated unsupported assertions here in this Motion and elsewhere, that she conducted an' investigation' which led to her finding against the Plaintiff, should be viewed by the court as indicative that the Defendant's acted intentionally through her 9-19-02 memo to retaliate against the Plaintiff, for complaining about the Defendant's subordinate, Robert Schneider, and other BLM misconduct, and to conceal that intent from the court here.  Other indications of this intent is the repetition of the claim, which the Defendant knows to be false, that Ms.Hammond claimed she was threatened by the

Wayson v. Rundell, 4:06 Cv 1 JWS
Opp to Mot to Dismiss Fail to state
Claim & qual Immun. 10-13-06

Plaintiff, and the fabrication now in this Motion of factors of intimidation, which did not exist before.


On page 2, para. 2, line 2, of the Motion to Dismiss, Defendant wrote;

"Schneider decided to continue the project at another site,..."

This is not true. There is no evidence that the project 'continued at another site.'

A statement by the Defendant that, "Schneider moved the project off of Wayson's duly recorded and staked state mining claims where the project had been halted Sept. 15, 2001, and onto the abandoned Battest federal mining claims at the location where the project had been originally planned, authorized, and funded." would not be challenged by the Plaintiff as an 'authentic' statement of fact by the Defendant.


It is irrelevant to have the Defendant quoting from a civil claim filed against Robert Schneider in 2003, long after Rundell wrote her 9-19-02 memo, and dismissed in 2005. Nevertheless, she quotes inaccurately. On page 4, para. 1, line 4, of her Motion, Defendant wrote in paraphrasing from her exhibit 'C';

"...Wayson was a threat to BLM employees,..."

Exhibit C actually states;

"...potentially serious threat to all BLM employees,..."

On page 4, para. 1, of the Motion, Defendant writes in paraphrasing Exhibit C, that;

"...this statement chilled his speech and deprived him of access to his property."

Exhibit C correctly reads, page 2, para '7',

Wayson v. Rundell, 4:06 Cv 1 JWS
Opp to Mot to Dismiss Fail to state
Claim & qual Immun. 10-13-06

19

"…Plaintiff has lost the use and value of his property and has had his Free Speech rights infringed."

Plaintiff recognizes the Supreme Court's broadening of the qualified immunity defense, so that federal employees don't have to undergo the stress, and expense of civil discovery, or undergo the emotional and practical drain it imposes on time and resources, in response to frivolous suits. The Plaintiff would assure this court if proper here to do so, that the Plaintiff's suit is not frivolous, and not intended to harass any member of the government. The Plaintiff has gone to unprecedented effort and expense to resolve differences with the BLM, and avoid civil litigation for more than the last ten years, beginning in September of 1996, and as noted in the amended complaint, even after the dismissal of the case against Robert Schneider by this court. While recognizing the need for qualified immunity to protect federal employees, the Plaintiff submits that citizen litigants in civil rights cases bear more rather than less expense, incurred by federal employees, suffer as much if not more disruption of their lives and that of their families, and never have the Justice Dept. support network which the federal employee can expect. Citizen litigants seldom recover anywhere near what they have expended, and often pay a very high price financially and socially for their efforts, since so much of their lives can pass by before the wheels of justice turn. Since the Justice Department pretty much abandoned championing civil rights in the 70's, in favor of automatically defending virtually all government actions, it is the citizen litigant who has shouldered the burden of protecting the constitutional rights for all.

Wayson v. Rundell, 4:06 Cv 1 JWS
Opp to Mot to Dismiss Fail to state
Claim & qual Immun. 10-13-06

The Defendant's Motion to Dismiss itself is a document which should 'chill' the free speech of any miner or citizen who must function closely under the authority of the BLM or federal government. It is chilling to observe the cavalier attitude of the U.S. Attorney's office toward the report of criminal activity by a federal official. There is no denial that Rundell may have committed Obstruction of Justice. Rather the 'defense' of that here in this Motion to Dismiss is that it makes no difference if she did. The only refinement to this defense is the declaration that Rundell has the 'privilege' to act independently, which apparently to the Dept. of Justice, includes breaking the law, and there is the closing assertions in the Defendant's Motion that Rundell has the, "right and duty to determine whether a citizen had violated a law."

Legally, if only on the division of powers concept, it is easy to argue she does not have either this right or duty. However, practically she does have both as long as her acting as a policeman, prosecutor, and judge, is defended by the United States of America's Justice Department. It may be premature to do so, but the Plaintiff wishes to advise the court now, that if this motion to Dismiss is overcome, and subsequent hurdles successfully negotiated, Plaintiff will have to use the civil jury as a de facto grand jury for fact finding purposes, in exploring how far into and beyond the U.S. Attorney's office, the Obstruction of Justice reaches, in Plaintiff's effort roll back as far as possible the effects of the BLM 'conviction' upon the Plaintiff and his family.

Wayson v. Rundell, 4:06 Cv 1 JWS
Opp to Mot to Dismiss Fail to state
Claim & qual Immun.  10-13-06

21

Based on the foregoing, this court should deny Defendant's Motion to Dismiss.

Dated: October 13, 2006

_____

Mark N. Wayson, pro se

**CERTIFICATE OF SERVICE**
**The undersigned hereby certifies**
**that on this _13_ day of _OCT_ ,**
**2006, a copy of the foregoing was**
**served by mail on: Susan Lindquist**

**Office of U.S. Attorney**
**222 W. 7th Ave., #9, Rm. 253**
**Anchorage, Alaska 99513**

_____

Mark N. Wayson

Wayson v. Rundell, 4:06 Cv 1 JWS
Opp to Mot to Dismiss Fail to state
Claim & qual Immun. 10-13-06