RECEIVED
MAY 21 2007
CLERK, U.S. DISTRICT COURT
FAIRBANKS, ALASKA

Mark N. Wayson
C/o Wickwire
2775 Hanson Road
Fairbanks, AK 99709
markonwayson@yahoo.com

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| MARK N, WAYSON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| Vs. | ) |
| | ) |
| LINDA RUNDELL and the | ) |
| UNITED STATES OF AMERICA | ) |
| | ) |
| Defendants. | ) |
| | ) 4:06-Cv 1 (JWS) |

## RESPONSE TO DEFENDANT'S OPPOSITION TO MOTION TO COMPEL DISCOVERY

The federal rules provide district judges broad authority to establish the limits of

discovery. The Defendant has made no argument that what the Plaintiff has requested

under discovery is not reasonably accessible, nor that producing the documents

requested by the Plaintiff cause any undue hardship or costs to the Defendant.   The

**Wayson v. Rundell, 4:06 Cv 1 (JWS)**
**Resp to Opposition to Mot. To compel 5-18-07**

Defendant continues as a Bureau of land Management State Director with access to the BLM documents which the Plaintiff has requested, and she has access to the Inspector General of the Department of the Interior's record, since the Plaintiff's complaint against Robert Schneider was filed there. The same evidentiary standards should apply in unconstitutional cases against government officials as in analogous cases against government officials and the government itself.

Ms. Lindquist argues in opposition that Ms. Rundell did not do the investigation by referring to a statement made in Ms. Rundell's deposition. Ms. Lindquist wrote, "…at her deposition, she stated that she did not investigate Wayson's complaint because she delegated it to BLM's law enforcement division.    Ex. B at 12. Ex C at 3, No.4."

This is not accurate. In the deposition cited by Ms. Lindquist, Ms. Rundell admitted an active role in the investigation. For clarification, the trail of investigation which Ms. Rundell laid out in her deposition appears to be as follows:

1. Ms. Rundell was assigned the investigation by "someone' from the National Law Enforcement office. ( Defendant's Exhibit B, page 7, lines 7-9.)

2. Ms. Rundell then "turned it over to the National Law Enforcement Office, and they conducted their investigation into the matter."    ( Defendant's Exhibit B, page. 12, lines 9-11.)

3. BLM law Enforcement at some point gave the case back to Ms. Rundell because she outlines her own efforts in the investigation saying that she spoke with Mr. Schneider

about the incident, and at some point reviewed the statements written by Ms.

Hammond and Officer Lee, before making her finding.   (Defendant's exhibit B, page

12, lines 12-23.)

4. Ms. Rundell made her finding and apparently returned the investigation to Chief of

BLM law enforcement. (Defendant's Exhibit B, the Rundell deposition of 9-7-04 did not

include the exhibits which were referenced by parties and Ms. Rundell in the deposition..)

5. The Chief of BLM Law Enforcement then apparently sent it back to an investigator at

the Department of the Interior's Inspector General.

(Attachment 1.  10-02-02 BLM Law enforcement Chief to DOI-OIG SAIC)


The Defendant is being sued personally for unconstitutional acts committed outside of

the law, but under color of law, and in her official capacity. But Ms. Rundell did not act

alone, and her personal status in this suit does not relieve her of the responsibility of

producing those documents which were a part of, or which were generated during the

investigation of the Plaintiff's complaint against Robert Schneider assigned to Linda

Rundell and other federal agents who were involved.   A Bivens claim can be based upon

a conspiracy of federal agents, who acting through either an express or implied

agreement, in a way to deprive someone of constitutional rights, are successful in the

deprivation of those constitutional rights.


Plaintiff does not understand why Ms. Lindquist wrote that Wayson did not file the

proposed order with the court. The Plaintiff understands that such proposed orders are

**Wayson v. Rundell, 4:06 Cv 1 (JWS)**
**Resp to Opposition to Mot. To compel 5-18-07**

separately filed by the court clerk, and are not filed with pleadings. The proposed order was submitted to the court clerk with the supporting pleading documents and is date-stamped "Received April 27, 2007, Clerk U.S. district court Fairbanks Alaska." A copy was mailed to Ms. Lindquist 4-27-07 at 4:18 p.m., and a courtesy copy, along with the Motion to Compel Discovery, and the Memorandum and Affidavit in support were e-mailed to Ms. Rundell on 4-28-07, at 12:09 a.m.

Plaintiff here rebuts Ms. Rundell's responses in the numbered order as they are listed in Ms. Rundell's opposition.

1. Ms. Rundell is the state Director and was the acting state director in Alaska on 9-19-02. She has access to what her duties were at that time.

2. The 'list' requested refers to one which Ms. Rundell would provide from her records and recollection, and not one which might exist as a document in Ms. Rundell's personal records.

3. Ms. Rundell did investigate the complaint according to her testimony, and as an Acting State Director had responsibility to follow BLM procedures.

4. These documents are extremely relevant. They involve an action by the U.S. Attorney's office which directly affects the status and evolvement of this case, and the Plaintiff's ability to make discovery, notwithstanding Ms. Lindquist's claim that she is now Ms. Rundell's personal attorney, operating in some kind of contrived vacuum which prevents her from accessing records in her office, while still having the full resources of

Wayson v. Rundell, 4:06 Cv 1 (JWS)
Resp to Opposition to Mot. To compel 5-18-07

the U.S. Attorney and the United States government at her disposal to conduct Ms. Rundell's defense. Ms. Lindquist's status as Ms. Rundell's 'personal' attorney resulted directly from this certification by Judge Burgess.

5. This Abramoff-Rundell communication is relevant. Steven Griles was the second in command at the Dept. of the Interior, and a BLM supervisor of Ms. Rundell at the time Ms. Rundell made her finding, and he was convicted 3-27-07 of Obstructing an Investigation, in connection with his ties to convicted lobbyist Jack Abramoff. (Attachment 2  Firedoglake Internet Account of Griles Guilty Plea)

6. Any Abramoff to Burgess communication is relevant to any role by the U.S. Attorney in Ms Rundell's violation of constitutional rights and is accessible to the U.S. Attorney.

7. This statement is relevant because the certification did take place, regardless of the fact there is no 'FTCA' cause of action. The lack of any required BLM supervisory assertion that Ms. Rundell was acting within the scope of her employment, highlights the political posture of the U.S. Dept. of Justice in defending constitutional rights violations by government employees.

8. These documents supporting Judge Burgess' certification are relevant precisely because Rundell is sued under Bivens. Without reviewable justification for the certification, which would be available both in Schneider's and Rundell's certification, and with Ms. Rundell's ambivalence in deposition as to which attorney/solicitor advised her in making her finding, it is quite possible that the U.S. Attorney was one of the 'federal agents' acting in agreement with Ms. Rundell to deprive the Plaintiff of his

constitutional rights. A potential co-conspirator like the Anchorage U.S. Attorney who

already controls whether a criminal Obstruction of Justice investigation/prosecution of

Ms. Rundell will take place, and who can certify or allow a judge to certify that the

Defendant was acting within the scope of her employment, cannot be permitted to act as

the gatekeeper controlling what information will be available to the court to review

and/or allow into evidence in a civil process, Ms. Lindquist's 'personal' role

notwithstanding. .


9.  This policy document(s) is relevant because such a certification is reviewable by a

court, necessitating a policy which preserves a record which can be reviewed. Judge

Burgess was alerted to this responsibility in a letter to him, sent 1-25-06. There is no

public interest in concealing either this policy or the procedure which was followed in the

Rundell certification.

(Attachment 3. 1-25-06 Wayson-Burgess letter)

10. This is relevant because for the Attorney General to delegate to Judge Burgess, the

authority to certify that Ms. Rundell was acting within the scope of her

employment,would constitute a breach of the separation of powers between the Judiciary

and the executive branches of government.

11.  Any revised procedures as to law enforcement communications is relevant for while

U.S. Attorney, Tim Burgess was the 'Chair for the 'Anti-Terrorism Task Force for

Alaska,' he had access to and the means to disseminate intelligence information,

including information that the Plaintiff forcibly committed a crime against a federal

employee.  He would have been the authority to allow the transfer of such information to

U.S. Deputy Consulate Marion Ram in Duesseldorf.   The compelling interests of

restoring the Plaintiff's minor child's basic human rights, as well as the Plaintiff's, should

override the Defendant's objections to providing this information.

(Attachment 4.   12-22-05 9th Circuit press release.)

12-13  Both requests are very relevant to the investigation which led to Ms. Rundell's

finding.  In her opposition the Defendant acknowledges " …there is no dispute about

Wayson's mining claim.  BLM acknowledges that he has state mining claims."

This acknowledgement conflicts with what the Chief of the BLM Law Enforcement

wrote in his 10-02-02 memorandum to the DOI-OIG,  (Attachment 1)when he said,

"…there is no evidence to support the allegation of any wrongdoing on the part of Robert

Schneider."

The fact that BLM had no jurisdiction on the state mining, claims certainly could indicate

wrongdoing on Schneider's part.  A finding of wrongdoing by Schneider should flow also

from the fact that BLM was conducting a project on the Plaintiff's state claims, rather

than on the abandoned Battest claims where the project had been authorized and funded,

and had already cost hundreds of thousands of taxpayer dollars.   Had Schneider been

doing his job as regional director and ensured BLM was on the right piece of ground, and

correctly adhered to the BLM policy regarding conflicting claims by operators, the

resolution of the 9-15-01 exchange between Wayson and Carol Hammond, could have

played out fairly, and the Plaintiff would not have a permanent record of committing a forcible criminal act against a federal employee who is now dead. . The policies requested do exist, and are relevant to establishing Plaintiff's Bivens claim.

14. This information which the Plaintiff has unsuccessfully tried to acquire from the DOI-OIG for years, is accessible to Ms. Rundell, and would have been accessible and reviewed by her as a step in any legitimate investigation before she made a finding either that Robert Schneider committed no wrongdoing, or that the Plaintiff committed a crime.

15-16. In her deposition Ms. Rundell claims that she didn't even know whether Pamela Stewart was working for BLM at the time of her investigation, but does acknowledge that Stewart was the top ranking law-enforcement officer in Alaska. (Defendant's exhibit B, page 10, lines 23-25, page 11, lines 1-7.) Nor could Ms. Rundell recall in 2004, who had written the memorandum of 9-19-02. (Defendant's Exhibit B, page 6, lines 18-19.) However, in her 2-09007 witness list, (Attachment 3, Plaintiff's Motion to Compel Discovery), Ms. Rundell recalls that it was Pamela Stewart who conducted the investigation and who prepared the 9-19-02 memo.

Ms Rundell was deceptive in her deposition 9-27-04. She testified six times within a very short period that it was someone from the "National Law Enforcement Office" who she asked to become involved in her investigation. (Defendant's Exhibit B, page 7, lines 7-9, page 8, lines 15-17, page 9, lines 9-11, page 9, lines 18-20, page 10, lines 17-19, page 12, 9-11.)

Suddenly in 2007, Ms. Stewart is slated as the witness who investigated Wayson's

complaint and drafted the memo for Ms. Rundell.  Ms. Rundell had/ has access to the

Stewart investigative report upon which she based her finding.


17.  Ms. Rundell acknowledges in her Witness list that Ms. Stewart "drafted the

memorandum for Ms. Rundell." Part of the BLM culture includes paid records falsifiers

like Evvie Punches who draft false documents for BLM administrators, to send to the

public and/or the legislative branch.    Ms. Punches helped to draft one of the early false

accusations against the Plaintiff, for the then acting BLM State Director in Alaska, Sally

Wisely.  The memorandum from Ms. Punches suggests using language to create a false

record that no correspondence had been received from the Plaintiff.  The false language

was subsequently used.  Such a memo(s) from Ms. Punches or others in preparing the 9-

19-02 Memorandum by Linda Rundell are relevant to the investigation which BLM

claims took place.

(Attachment 5.  Punches 9-17-96 Memo)

18.  This letter of resignation by Tim Burgess is accessible to Ms. Lindquist, and is very

relevant to any role the U.S. Attorney's office played in the violation of the Plaintiff's

constitutional rights.

19.  This public notice was produced by Ms. Rundell, and her production of the notice

suggests that what she can 'find' in her 'personal' files is selective and arbitrary, and she

is refusing to produce other  documents because they are not in her definition of her

"personal files."   Are we to believe that only public notices are in her personal files and

other documents requested are not?

**Wayson v. Rundell, 4:06 Cv 1 (JWS)**
**Resp to Opposition to Mot. To compel 5-18-07**

20, 21, 22.  It seems unlikely that there was no communication between convicted

Assistant Secretary of the Interior Griles and Ms. Rundell involving this matter, since it

was handled from Washington D.C., and Steven Griles was the number two official at the

Dept. of the interior at the time.    In her deposition Ms. Rundell described "Fran Cherry"

as being the Alaska State Director.  (Defendant's exhibit B page 5, lines 23-25.) Fran

Cherry was not the Alaska State Director.  He was appointed the  BLM Director of

Operations in Washington D.C. 5-08-02.

(Attachment 6. 5-08-02 BLM New release.)

Nevertheless, Ms. Rundell's statement in her opposition motion, in response to Plaintiff's

request for copies of all communications between Fran Cherry and Ms. Rundell,

regarding her investigation, stated , "There is none."  However, in her deposition Ms.

Rundell testified that the State Director who she previously identified as Fran Cherry had

been involved in the "careful review" of the incident she investigated.  (Defendant's

Exhibit B page 10, lines 13-19.)  So she definitely had help from Fran Cherry in the

careful review, but Ms. Rundell did not want to indicate he was in Washington D.C.  at

the time, as Director of Operations. .


    Plaintiff requests that the court be very direct and clear in ordering the Defendant to

cooperate in the discovery phase of this case.  Neither the Defendant nor the U.S.

Attorney have acted in good faith regarding discovery, but instead seek to slow the

process even further.  Neither is following the rules.  This is consistent with previous

**Wayson v. Rundell, 4:06 Cv 1 (JWS)**
**Resp to Opposition to Mot. To compel 5-18-07**

conduct by AUSA Daniel Cooper, noted in Plaintiff's Affidavit, where he stalled and

subsequently blocked discovery in the Schneider case by promising to deliver, but never

delivering, some of the same documents requested in this case. Since it was Rundell

assigned to investigate Schneider, the two cases cannot be viewed as completely separate.


Justice Louis Brandeis offered what could be another view of the conduct of the BLM

and the Anchorage U.S. Attorney's office. He said,

"Decency, security and liberty alike demand that government officials shall be subjected
to the rules of conduct that are commands to the citizen. In a government of laws,
existence of the government will be imperiled if it fails to observe the law scrupulously.
Our government is the potent, omnipresent teacher. For good or for ill, it teaches the
whole people by its example. Crime is contagious. If the government becomes a
lawbreaker, it breeds contempt for the law, it invites every man to come a law unto
himself. It invites anarchy. (*United States v. Olmstead*, 277 U.S. 438 (1928).

In a Bivens action such as this, where an official is being sued for violating the

Plaintiff's constitutional rights, the U.S. Attorney, by not holding public officials to the

same rules of conduct to which the Plaintiff is held to, becomes a co-conspirator with Ms.

Rundell to the violation after the fact, if not already more actively involved as a

participant previously.


Dated: May 18, 2007


Mark N. Wayson, pro se


**Wayson v. Rundell, 4:06 Cv 1 (JWS)**
**Resp to Opposition to Mot. To compel 5-18-07**

11

**CERTIFICATE OF SERVICE**
The undersigned hereby certifies
that on this _21_ day of _MAY_ ,
2007, a  copy of the foregoing was
served by mail on: AUSA Susan Lindquist

Office of U.S. Attorney
222 W. 7th Ave., #9, Rm. 253
Anchorage, Alaska 99513

_____
Mark N. Wayson

Wayson v. Rundell, 4:06 Cv 1 (JWS)
Resp to Opposition to Mot. To compel 5-18-07

# United States Department of the Interior

*BLM Nat'l enforcement closure*



**BUREAU OF LAND MANAGEMENT**
National Law Enforcement Office
3833 S. Development Ave.
Boise, Idaho 83705-5354

In Reply Refer To:
9260 (WO-370)

October 2, 2002

## For Official Use Only

Memorandum

To:       Special Agent-in-Charge, Western Division
          Office of Inspector General

From:     Chief, National Law Enforcement Office

Subject:  Investigative Referral: DOI-OIG No.2002-I-R-612-WCA; Schneider, Robert

Attached is a copy of the memo from Linda Rundell, Acting State Director for Alaska. The administrative inquiry revealed that there is no evidence to support the allegations of any wrongdoing on the part of Robert Schneider.

Predicated on the enclosed memo, we have closed this case. If you have any questions regarding this matter, please contact SA Greg Assmus at 208-387-5129.

/for/ Walter I. Johnson

Attachment:
As Stated

*Attachment #1*

Case 4:06-cv-00001-JWS   Document 50   Filed 05/21/2007   Page 14 of 22
Firedoglake » Firedoglake weblog » Abramoff Bodies Being Rapidly Buried

Page 1 of 7

**Blogads**

Advertise here

**FDL**
Sunday Book
Salon
5 pm ET / 2 pm PT

**May 20**
Moving a Nation to
Care: Posttraumatic
Stress Disorder and
America's Returning
Troops
*Discussion with author*
*Ilona Meagher, hosted*
*by Taylor Marsh*





**May 27**
In Defense of Our
America: The Fight for
Civil Liberties in the
Age of Terror
*Discussion with author*
*Anthony Romero,*
*hosted by Christy*
*Hardin Smith*





**June 3**
American Fascists:
The Christian Right

- About/Contact Us
- Home
- Blue America

Prev/Next Posts
« Te Presento El Mocoso, Ruben Navarrette, Jr. | Home | Oh the Irony »
Friday, March 23rd, 2007 at 3:00 pm

# Abramoff Bodies Being Rapidly Buried

By: Jane Hamsher



Is this one of the big fish the Department of Justice has been able to nail with the help of Jack Abramoff?

> Former Deputy Interior Secretary Steven Griles will plead guilty to one count of obstruction of justice in the Jack Abramoff corruption investigation, The Associated Press has learned.
>
> [snip]
>
> Prosecutors dropped earlier allegations that Griles did anything improper to help Abramoff or gained anything of value from the former Republican lobbyist, the AP was told. **The agreement does not require Griles to help investigators with their grand jury probe.**
>
> In exchange for the plea, federal prosecutors will seek no more than a 10-month prison sentence for Griles — the minimum they could seek under sentencing guidelines — but they will agree to let him serve half that in home confinement, according to one person involved in the case.

Who exactly is Steven Griles? From 2003:

> Griles is Interior Gale Norton's top lieutenant, the man who holds the keys to the nation's oil and mineral reserves. For the past two years, he's used those keys

Attachment # 2



and the War On
America
*Discussion with author
Chris Hedges*

AMERICAN
FASCISTS

CHRIS HEDGES

Buy from amazon.com

Anatomy of Deceit:
How the Bush
Administration Used
the Media to Sell the
War and Smear a
Critic

Buy from amazon.com

*All purchases made at
Amazon through our
links contribute to
support this site. We
greatly appreciate
your patronage.*

**Blogads**

Advertise here

Search

Search

Recent Posts

- Late Nite FDL:
  Ghouliani Says,

to unlock nearly every legal barrier to exploitation,
opening the public lands to a carnival of corporate
plunder. He became the toast of Texas. But now Griles
is hiding out from reporters and congressional
investigators after accounts of his ongoing sleazy
relationships with his former associates in big oil have
begun to ooze out into the open.

Griles's recent misfortunes are scarcely a surprise.
From the time he took his oath of office, Griles was a
congressional investigation waiting to happen. The
former coal industry flack was one of Bush's most
outrageous appointments, an arrogant booster of the
very energy cartel he was meant to regulate. His track
record could not be given even the slightest green
gloss. A veteran of the Reagan administration, Griles
schemed closely with disgraced Interior Secretary
James Watt to open the public lands of the West to
unfettered access by oil and mining companies, many
of whom funded Watt's strange outpost of divinely-
inspired environmental exploitation, the Mountain
States Legal Center.

Griles was up to his eyeballs in Abramoff dirt. From 2005:

Former deputy interior secretary J. Steven Griles launched a last-
minute campaign against a tribal casino apparently at the behest of
disgraced lobbyist Jack Abramoff, The Washington Post reported on
Sunday.

In early 2002, the Jena Band of Choctaw Indians submitted a gaming
compact to the Bureau of Indian Affairs for approval. Former
assistant secretary Neal McCaleb rejected it, citing an unfair "tax" on
the tribe's gaming revenues. Several members of Congress had
opposed the compact.

When the tribe made a second try, Griles tried to block the effort. He
showed up to a meeting on the tribe's land-into-trust request with a
"thick binder containing letters and legal arguments opposing the
Jena plan," The Post reported. He allegedly claimed the binder came
from a member of Congress but, when pressed, admitted it probably
came from Abramoff.

Griles probably never talked to Abramoff, the paper notes, but
instead to Italia Federici, the head of the Council of Republicans for
Environmental Advocacy, a group founded by Interior Secretary
Gale Norton. Federici spoke directly to Griles about Abramoff's
clients, who donated at least $225,000 to the organization. The

"Millionaires Only, Please"
- Is it Thursday? Then I'm Pro-Choice.
- Who Knew?
- No Withdrawal
- 7 Tips to Build a Blog Community
- The Liars Club
- AG Gonzales Testimony, Part V
- We Got Lots Going On
- AG Gonzales Testimony, Part IV
- AG Gonzales Testimony, Part III

Calendar
      May
M  T  W  T  F  S  S
      1  2  3  4  5  6
7  8  9  10 11 12 13
14 15 16 17 18 19 20
21 22 23 24 25 26 27
28 29 30 31
« Apr      «-»
Blogroll

- **Blogroll**

  o agonist
  o ain't no bad dude
  o alicublog
  o alternate brain
  o americablog
  o anonymous liberal
  o attytood
  o bob geiger
  o brad blog
  o brad delong
  o busy busy

Coushatta Tribe opposed the Jena Choctaw's casino plan.

The DOI Inspector General is now probing the contacts between Griles and CREA.

On January 10, 2007, The WaPo reported that "Federal prosecutors have notified a former deputy secretary of the interior, J. Steven Griles, that he is a target in the public corruption investigation of Jack Abramoff's lobbying activities, sources knowledgeable about the probe said." Griles was suspected of having lied to the Senate Indian Affairs Committee. And today they settle for basically — nothing. Thus disappears a guy who may have been able to give a lot of information about Ralph Reed, John Cornyn and others who were involved in Abramoff's Indian gaming shenanigans.

Griles' girlfriend was also a prosecutor at the Justice Department with problems of her own:

> The top environmental prosecutor at the Department of Justice purchased a $1 million home with the vice president and top lobbyist of a major oil company just months before granting leniency in its multi million-dollar pollution settlement with the government.

> As head of the Justice Department's 600-employee Environmental and Natural Resources Division, Assistant Attorney General Sue Wooldridge represents practically every federal agency in cases related to pollution, natural resources and wildlife. Houston-based ConocoPhillips, an international company with $164 billion in assets, was ordered to conduct toxic waste cleanup and install $525 million in pollution controls at nine refineries.

> Wooldridge quietly signed consent decrees giving the mega oil and energy company an extra three years to complete the costly work. It turns out that ConocoPhillips' vice president is a good friend and business associate of Wooldridge's and the company's top lobbyist, a well-connected former Deputy Interior Secretary, happens to be her boyfriend.

> The boyfriend, Steven Giles, is the highest-ranking Bush Administration official being criminally investigated in the Jack Abramoff corruption probe. When Giles left his post at the Department of the Interior he joined a powerful lobbying firm that recently severed ties with him because of his involvement with Abramoff, who is currently in prison.

> Giles, Woodridge and ConocoPhillips vice president Donald Duncan are longtime friends who back years. The trio purchased the lavish North Carolina home in a gated community just months before the federal prosecutor granted her friend's company a lot of extra time to comply with the law.

- busy
- cafe politico
- calling all wingnuts
- charles goyette
- chase me ladies, i'm the cavalry
- confined spaces
- connecticut bob
- correntewire
- crooked timber
- crooks and liars
- daily kos
- david e.
- david sirota
- democratic underground
- democratic veteran
- dependable renegade
- digby
- dohiyi mir
- echidne of the snakes
- emboldened
- enter the jabberwock
- eric alterman
- eschaton
- fallen monk
- first draft
- glenn greenwald
- gothamimage
- howie klein
- huffington post
- inflatable dartboard
- intoxination
- jack & jill politics
- james

The <u>Committee on Oversight and Government Reform</u> has launched an investigation into the real estate transaction and the committee's chairman, a California congressman, said that there appears to be a "breakdown of ethics" at the Justice Department and that Justice Department officials should not be handling cases that affect their close friends and investment partners.

"A California congressman

Mark N. Wayson                                  Jan. 25, 2006
C/O Wickwire
2775 Hanson Rd.
Fairbanks Alaska   99709      markonwayson@yahoo.com

U.S. Attorney Timothy Burgess
Department of Justice
222 W. 7th Ave, #9
Anchorage Alaska 99513-7567

Re: Linda Rundell/Obstruction of Justice


Dear Mr. Burgess,

I learned yesterday  that the actions of BLM  Administrator  Linda
Rundell, which I identified as Obstruction of Justice, and into which I
have requested an investigation, were actions which you have certified
as within her duties as an employee of the United States government.

Please save all notes and records of any investigation and/or review
which led to this Rundell certification.  I intend to ask for a review of
this Rundell certification with the court.

As you may recall last time, you had no recollection whatsoever of what
led to your certification of Robert Schneider's actions.  No notes or
records could be located.


Mark N. Wayson


Sent 1-25-06
10:19 AM

Attachment # 3

Senate Confirms Timothy Burgess as District Judge for District of Alaska
Case 4:06-cv-00001-JWS    Document 50    Filed 05/21/2007    Page 19 of 22
Page 1 of 2



**United States Courts for the Ninth Circuit**

---



United States Courts for the Ninth Circuit

# Public Information Office

David Madden, Manager • (415) 556-6177 • (415) 556-6179 fax • dmadden@ce9.uscourts.gov

## NEWS RELEASE

December 22, 2005
Contact: Gregory Walters, (415) 556-2000

# Senate Confirms Timothy M. Burgess as District Judge for District of Alaska

SAN FRANCISCO – The United States Senate on Wednesday (Dec. 21) voted to confirm President Bush's nomination of Assistant United States Attorney Timothy M. Burgess of Anchorage to serve as a judge on the U.S. District Court for the District of Alaska.

Mr. Burgess was confirmed by the Senate by voice vote. He was originally nominated by the president on July 28, 2005, and favorably reported out of the Senate Judiciary Committee on Nov. 17, 2005. He will fill a judgeship that has been vacant since Jan. 27, 2005, when Judge James K. Singleton took senior status.

Mr. Burgess was appointed U.S. Attorney for the District of Alaska in October 2001, and before that was an assistant U.S. attorney for 12 years. Prior to his appointment, he was in private law practice as an associate with the law firm of Gilmore and Franklin in Anchorage from 1987 to 1989.

Born in San Francisco, Mr. Burgess received a B.A. degree in 1978 and Masters in Business Administration in 1982 from the University of Alaska. He received a J.D. degree from Northeastern University School of Law in Boston in 1987. Before attending law school, he was a legislative analyst for former Alaska Senator Frank H. Murkowski, now governor.

Mr. Burgess was selected in 2001 to serve on the Attorney General's Advisory Committee and was chair of its Environmental Issues Subcommittee. He is

*Attachment # 4*

Case 4:06-cv-00001-JWS    Document 50    Filed 05/21/2007    Page 20 of 22

chair of the Anti-Terrorism Task Force for Alaska and co-chairs the
Department of Justice's Environmental Crimes Policy Committee. He is a
member of the Alaska Peace Officers Association, the Alaska Bar Association,
and served as a director of Habitat for Humanity in Anchorage.

The U.S. District Court for the District of Alaska is based in Anchorage and
also hears cases in Fairbanks, Juneau, Ketchikan, Kodiak and Nome.

# # #

**Office of the Circuit Executive**

95 Seventh St. P.O. Box 193939  San Francisco CA 94119-3939

MEMORANDUM RE MARK WAYSON LETTER FOR SD

I talked by phone with Pete Johnson of Law Enforcement regarding the threats contained in this letter. He had been provided a copy of the letter by the SD's office and was already in contact with FBX office as to the threats of retaliation and intent to use deadly force on BLM personnel. He provided the attached E-Mail message through Lois Simenson for the legal cites on making threats on government personnel.

Lois Simenson provided the cite to the Privacy Act and the associated language.

I finally tracked down Tom Gorey. He is employed in the Office of External Affairs in Washington. He said his name may appear in public releases involving the regulations and people often conclude that he has written the regs. He remembers receiving a letter from Wayson and turning it over for response to his supervisor at the time, Steve Richardson. He explained that it is policy not to become involved in correspondence with personal connotations, which the letter from Wayson certainly had. He referred me to Peggy Birttell of the correspondence section for further information.

I spoke with Peggy who found Mr. Wayson's name, address, and the date 9-19-94 entered in the computer, but with no further information or record of a response having been written. She could offer no explanation for the lack of additional information. I asked her advice as to an appropriate response in this situation. She suggested the "according to the records, letter not received" language.

Tom Gorey  202-452-5031
Peggy Birttell  202-452-5043

_Evvie_

Evvie Punches
Land Law Examiner
9-17-96

BLM0000000545

Attachment #5

The Bureau of Land Management

NEWS



News Menu (Graphics)          News Menu (Text)          Home Page

*Last updated: 04/04/03*

| | |
|---|---|
| Bureau of Land Management<br>For Release: Wednesday, May 8, 2002 | Contact:<br>Larry Finfer          Rem Hawes<br>(202) 208-6913        (202) 452-5135 |

### BLM Names Fran Cherry as Deputy Director for Operations

Francis "Fran" Cherry has been named Deputy Director for Operations of the Bureau of Land Management, BLM Director Kathleen Clarke announced today. Cherry, a 33-year veteran of the BLM who has most recently served as State Director of the Bureau's Alaska State Office, succeeds Nina Rose Hatfield, who will become a Deputy Assistant Secretary for Policy, Management and Budget in the Department of the Interior.

"Fran Cherry is respected as an innovative manager and leader. He understands the needs of land users and the challenges we face in carrying out our multiple use mission," said Clarke. "I know that the entire Bureau will benefit from his insight and experience."

"I am honored to be named Deputy Director," Cherry said. "I'm proud to have served the Bureau and worked with so many wonderful colleagues and the public, and look forward to new challenges in Washington."

As the BLM's Alaska State Director, Cherry oversaw all aspects of the Bureau's operations on over 80 million acres of public lands, including implementation of a major energy initiative in the National Petroleum Reserve - Alaska (NPRA).

During his career with the BLM, Cherry has worked as Associate State Director for Montana/Dakotas; Natural Resource Specialist and Area Manager of the River Resource Area in Vernal, Utah; Regional Planner and Chief of the Branch of Planning in the Colorado State Office; and Manager of the Roswell District Office in New Mexico. Cherry also served in Washington, D.C., as Energy Policy Coordinator and Chief of the Branch of Solid Leasable Minerals.

Cherry, a native of Utah, earned his Bachelor of Science degree in zoology from Brigham Young University and received his Master of Science degree in Urban and Regional Planning at the University of Wisconsin. His outside activities include hunting and fishing.

The BLM, an agency of the U.S. Department of the Interior, manages more land -- 261 million surface acres -- than any other federal agency. Most of this public land is located in 12 Western states, including Alaska. The Bureau also administers 700 million acres of sub-surface mineral estate throughout the nation. The BLM, which has an annual budget of $1.8 billion, carries out its "multiple use" land management mission with a workforce of about 10,000 employees.

This page was created by the
U.S. Bureau of Land Management,
Office of Public Affairs
1849 C Street, Room 406-LS
Washington, DC 20240
Phone: (202) 452-5125
Fax: (202) 452-5124

Please contact us with
any questions relating to accessibility of documents.

Download Adobe Acrobat Reader

This is a U.S. Government Computer System.
Before continuing, please read this disclaimer and
privacy statement. Accessibility



*Attachment # 6*