```
 1              UNITED STATES DISTRICT COURT

 2                FOR THE DISTRICT OF ALASKA

 3
    MARK N. WAYSON,                    )
 4                                     )
                                       )
 5              Plaintiff,             )
                                       )
 6  vs.                                )
                                       )
 7  ROBERT SCHNEIDER and the           )
    UNITED STATES OF AMERICA,          )
 8                                     )
                Defendants.            )
 9  _____)
    Case No. F03-0035 CV (JWS)
10
                DEPOSITION OF CAROL HAMMOND
11                 September 21, 2004

12  APPEARANCES:

13      FOR THE PLAINTIFF:     MR. MARK N. WAYSON
                                In Propria Persona
14                              2775 Hanson Road
                                  Suite 1
15                              Fairbanks, Alaska 99709
                                (907)  474-0068
16
        FOR THE DEFENDANT:     MR. DANIEL R. COOPER, JR.
17                              Assistant U. S. Attorney
                                U. S. Department of Justice
18                              U. S. Attorney's Office
                                222 West Seventh Avenue, #9
19                                Room 253
                                Anchorage, Alaska  99513
20                              (907)  271-5071

21                      * * * *

22

23

24

25                                        ORIGINAL
```

LIZ D'AMOUR & ASSOCIATES, INC.
330 Wendell Street, Suite A
Fairbanks, Alaska 99701
(907) 452-3678

Exhibit I
Page 1 of 10

```
 1  A     I didn't notice that.
 2  Q     Now, do you recall telling me that you felt threatened?
 3  A     Yes.
 4  Q     Do you recall telling me that I was not threatening
 5        you?
 6  A     I recall telling you that you didn't threaten me in the
 7        sense that you didn't say if you don't leave I'll hurt
 8        you.  I recall telling you that your mannerisms, and
 9        tone of voice, and the way you were behaving was
10        threatening to me.  It made me feel threatened.
11  Q     Do you recall telling me that you didn't -- you did
12        not -- you felt threatened, but you did not feel
13        threatened by me?  Do you recall saying that?
14  A     I felt threatened by you.  You did not threaten me.
15        You did not say the words "I will hurt you if you don't
16        do this," or a direct threat.  I felt threatened by how
17        you were behaving.  I felt afraid.  I felt nervous,
18        apprehensive, intimidated.  You can use several words
19        to describe it.  Your behavior seemed unusual to me.
20        It seemed out of proportion for what was going on at
21        the site, and it made me feel afraid.
22  Q     What was going on at the site when I contacted you and
23        asked you to stop work on that site?
24  A     Say that question again, please.
25  Q     I said what was going on?  You said you felt -- what
```

LIZ D'AMOUR & ASSOCIATES, INC.
330 Wendell Street, Suite A
Fairbanks, Alaska 99701
(907) 452-3678

Exhibit I
Page 2 of 10

1  was going on the site when I asked you to stop work on
2  the site?
3  A   We were constructing a berm.
4  Q   So there was heavy equipment moving across my mining
5  claims?
6       MR. COOPER:  Well, I'm going to object to the
7  characterization.  You have not established through this
8  witness, or any other witness, for that fact, that those claims
9  were valid state mining claims on the date and time in
10 question.
11      MR. WAYSON:  Your objection is noted.
12      MR. COOPER:  Can you answer the question,
13 taking into particular account his construction of the phrase
14 "across my mining claims"?  Can you answer that question?
15 A   There was heavy equipment moving from the berm site to
16     the area where we were getting gravel.  We were using a
17     scraper, and the scraper was coming back and forth with
18     loads of grave.  And then there was a D-9, I believe,
19     that Paul Manuel was using to spread the gravel loads
20     out at the berm site.  So we had two pieces of heavy
21     equipment moving at the construction site.
22 Q   Were you aware that I had mining claims in the area?
23 A   In the area, yes.
24 Q   So you.....
25 A   That one time -- Shelly had told me that at one time

LIZ D'AMOUR & ASSOCIATES, INC.
330 Wendell Street, Suite A
Fairbanks, Alaska 99701
(907) 452-3678

Exhibit I
Page 3 of 10

```
 1          you had mining claims in the area.  I didn't know
 2          exactly where.
 3    Q     But didn't you refer to them when we were talking that
 4          day, and suggested they were someplace else?
 5    A     Do you have a specific thing in here I said, in the --
 6          I don't remember.
 7    Q     You don't remember saying that?
 8    A     No.
 9    Q     I have no reference in your report.
10    A     Okay.  No, I don't remember saying anything about them
11          being somewhere else.  I knew they were in the area,
12          and this statement here I say "the person who holds
13          claims south and east."  So I -- I guess my
14          understanding was if there were claims they were not at
15          the site we were working at.
16    Q     What time did you call Ranger Lee?
17    A     It was after you went over to talk to Paul and I felt
18          safe enough to get out of my vehicle to get my
19          satellite phone, and it says here that I called at
20          2:00 p.m.  So that would -- it means we had been
21          talking about a half hour.
22    Q     Oh, we'd been talking about a half hour at that point?
23    A     Yeah, if my times are correct.  Yeah.
24    Q     So your testimony here today is that I came to you and
25          talked for about a half an hour, and then when I left
```

LIZ D'AMOUR & ASSOCIATES, INC.
330 Wendell Street, Suite A
Fairbanks, Alaska 99701
(907) 452-3678

Exhibit I
Page 4 of 10

```
 1              is when you got out of the car, you felt safe enough,
 2              you said, to get out of the truck?
 3    A         Uh-huh.
 4    Q         So this was about a half an hour time?
 5    A         Uh-huh.
 6    Q         And what did he say to you?  What did Ranger Lee tell
 7              you?  Or rather, what did you say to him first?  Strike
 8              that other question.  What did you tell Ranger Lee?
 9    A         Well, I would have to -- I didn't record exactly our
10              conversation.  I'm sure I told him that there was a
11              person at the site who wouldn't leave, was interfering
12              with the construction project, was making me feel not
13              safe, and I would appreciate his assistance.  And he
14              said he would come out.
15    Q         And where did you call him?  What number, how did you
16              get a hold of him?
17    A         I called -- it was probably his cell phone, or he may
18              have actually been in the office that day.  He works
19              weekends.  I'd have to go back and -- I know I got his
20              number off of the directory for the office, so maybe it
21              was his office phone that I called.
22    Q         Did you keep records for your cell phones, that you're
23              using at work?
24    A         This was a satellite phone.
25    Q         Do you keep records for the satellite phone that you
```

LIZ D'AMOUR & ASSOCIATES, INC.
330 Wendell Street, Suite A
Fairbanks, Alaska 99701
(907) 452-3678

Exhibit I
Page 5 of 10

```
 1  Q    (By Mr. Wayson)  Did you tell me at any time out there
 2       that I was trespassing?
 3  A    No, you told us we were trespassing.  You told me that
 4       we were trespassing.
 5  Q    Did you tell me that I was trespassing at any time?
 6  A    Did I say that in there?  In my diary?
 7  Q    I'm asking you whether or not you said it in the field?
 8  A    Did I say it in here?
 9  Q    You're certainly free to refer to your Contract Diary
10       if you'd like to, but I -- I'm asking the question.
11  A    (Witness reviews exhibit)  To the best of my
12       recollection, I never told you you were trespassing.
13  Q    Now I'm going to ask you about a comment on page 3b of
14       this exhibit 1, and I believe this is in another place,
15       but this is the one I'm referring to.  You said I made
16       a comment that -- about a third of the way down, it
17       says, "that was just like a woman," and that's in
18       quotes, "to have someone else" and then brackets,
19       "protect, or fight for, or do her business or
20       something."  Did you make that comment?
21  A    You made that comment.
22  Q    Right.  Can you tell me what comment was made?
23  A    I heard you say that was just like a woman to have
24       someone else either protect, fight for, or -- or do my
25       business, or something along those lines.  That's what
```

LIZ D'AMOUR & ASSOCIATES, INC.
330 Wendell Street, Suite A
Fairbanks, Alaska 99701
(907) 452-3678

Exhibit I
Page 6 of 10

40

```
 1        I heard you say.
 2  Q     And this is in reference to?
 3  A     Ed Lee coming out.
 4  Q     Okay.  Now, page 1b, I will refer you back to page 1b,
 5        and I refer to the part of the report that's written on
 6        the side of the page.
 7  A     (Witness reviews exhibit)  Right.  That's the same
 8        comment.  Again, 1b was written right at the time
 9        things were happening, and 2b is written -- or
10        whatever, yeah, page 2b is where I start more in a
11        sequential manner and go through the -- my recollection
12        of the while incident.
13
14  Q     Are you testifying here today that while you were
15        talking to me you writing this Contract Diary?
16  A     Yeah.  Or shortly thereafter.
17  Q     Oh, okay.
18  A     You know, I mean, like -- like when you walked away to
19        go talk to Paul is when I wrote up the previous half
20        hour of our conversation.
21  Q     So pages 1a, 1b, and 2a were written up while I was
22        talking to Paul?
23  A     No, 1 -- 1a was actually written before you came to the
24        jobsite, and 1b -- you know, starting at 1b, I may have
25        written that first sentence while you were yelling at
```

LIZ D'AMOUR & ASSOCIATES, INC.
330 Wendell Street, Suite A
Fairbanks, Alaska 99701
(907) 452-3678

Exhibit I
Page 7 of 10

41

|    |   |   |
|----|---|---|
| 1  |   | me -- well, making me nervous.  You can tell my |
| 2  |   | handwriting in that first sentence is fairly shaky. |
| 3  | Q | Which is the first sentence you are referring to? |
| 4  | A | Where it say "Mark Wasson - I ask him to leave the job |
| 5  |   | site several times.  He claims we are on his active |
| 6  |   | state mining claim and that we are trespassing."  And |
| 7  |   | then I do remember that when you walked back to talk to |
| 8  |   | Paul that I wrote down some more notes. |
| 9  | Q | How long was I talking to Paul, in your opinion? |
| 10 | A | I don't know. |
| 11 | Q | Can you approximate, please? |
| 12 | A | Fifteen minutes, maybe. |
| 13 | Q | Fifteen minutes?  So about a half an hour with you, and |
| 14 |   | then 15 minutes with Paul is what you're testifying to? |
| 15 | A | It's been three years.  I don't remember exactly. |
| 16 | Q | Now, after Shelly came out to the jobsite -- well, |
| 17 |   | first of all, can you tell me, did Shelly come out to |
| 18 |   | the jobsite that day? |
| 19 | A | Yes. |
| 20 | Q | And do you know about what time she came out? |
| 21 | A | I'm just trying to remember if Shelly came before or |
| 22 |   | after Ed. |
| 23 | Q | I -- well, I can -- I think you've got it on the |
| 24 |   | report.  At some point you have Shelly -- Ed Lee coming |
| 25 |   | at 3:45, and I don't know if you wrote down that she |

LIZ D'AMOUR & ASSOCIATES, INC.
330 Wendell Street, Suite A
Fairbanks, Alaska 99701
(907) 452-3678

Exhibit I
Page 8 of 10

```
 1  A       No direct threats, that's correct.
 2  Q       And you said that you felt that my tone of voice and my
 3          demeanor, according to your Contract Diary, you found
 4          those threatening; is that correct?
 5  A       Yes.
 6  Q       Can you describe for us what particular aspects of my
 7          demeanor was threatening, you felt were threatening?
 8          MR. COOPER:  Other than what she's already
 9  testified to?
10          MR. WAYSON:  She testified to.....
11  Q       Am I to understand that pacing back and forth, was this
12          threatening or irrational?  I thought that was
13          irrational behavior?
14          MR. COOPER:  Go ahead and answer the question
15  if you can, Ms. Hammond.
16  A       What it was about your behavior that was -- made me
17          feel uncomfortable, threatened, intimidated, was
18          everything from your choice of words to how you said
19          them, to how you were like -- the way you pulled up,
20          slammed on the brakes, and immediately started saying
21          that we're trespassing, the -- the whole -- from the
22          minute you were on-site was a confrontational feeling.
23  Q       Is it your testimony that the first thing I told you
24          was that you were trespassing?
25  A       No.  the first thing you said is you asked who I was.
```

LIZ D'AMOUR & ASSOCIATES, INC.
330 Wendell Street, Suite A
Fairbanks, Alaska 99701
(907) 452-3678

Exhibit I
Page 9 of 10

```
 1  Q      Okay.  Do you recall me saying to you would you please
 2         move this project or stop this project?
 3  A      No.
 4              MR. WAYSON:  I'm going to offer one more quick
 5  exhibit.  I think I can anticipate the answer maybe.
 6                          (Deposition Exhibit 9 marked)
 7              MR. WAYSON:  This is the memorandum from
 8  Linda Rundell, dated September 19th, 2002.
 9              MR. COOPER:  (Mr. Cooper reviews exhibit)
10  Okay.  I'll just note my objection for the record.  Lack of
11  foundation.  Go ahead and examine the witness on exhibit 9.
12              MR. WAYSON:  Okay.
13  Q      First of all, I'll just ask you to take a look at it
14         and tell me if you've seen it before?
15  A      (Witness reviews exhibit)  I have not seen this before.
16  Q      And you testified before that you do not know
17         Linda Rundell; is that correct?
18  A      I know who she is.  I've met her, but.....
19  Q      Have you had any contact with her in reference to the
20         complaint I filed against Robert Schneider?
21  A      No.
22              MR. WAYSON:  I think that pretty much covers
23  it.  Let me just take one quick look.
24              MR. COOPER:  Okay.
25  Q      To your knowledge, Martha Woodworth was in charge of
```

LIZ D'AMOUR & ASSOCIATES, INC.
330 Wendell Street, Suite A
Fairbanks, Alaska 99701
(907) 452-3678

Exhibit I
Page 10 of 10