Mark N. Wayson
C/o Wickwire
2775 Hanson Road
Fairbanks, AK 99709
markonwayson@yahoo.com

RECEIVED OCT 22 2007 CLERK, U.S. DISTRICT COURT FAIRBANKS, AK

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| MARK N, WAYSON, | ) |
| Plaintiff, | ) ) ) |
| Vs. | ) ) ) |
| LINDA RUNDELL and the UNITED STATES OF AMERICA | ) ) ) |
| Defendants. | ) ) |
| | ) 4:06-Cv 1 (JWS) |

**REPLY TO OPPOSITION TO ADD AN EXPERT WITNESS**

Permitting Ms. Jutta Froehlich-Tumbrink to testify as an expert witness in this case will be useful to the court because of her active involvement both in the Plaintiff's litigation in Germany, and in many cases similar to the Plaintiff's case in Germany, as well as her knowledge of German and international law.

Ms. Lindquist's statement of **FACTS** in opposition to adding Ms. Froehlich-Tumbrink as an expert witness is inaccurate, thereby making both her **ANALYSIS** and

**CONCLUSION** invalid since they are based upon the inaccurate facts she lays out.

Ms. Lindquist is incorrect. Judge Niepmann did not reverse her previously favorable decision in July of 2002.

Plaintiff had learned from the German Central Authority in August of 2001 that the Hague Treaty petition filed by the German Central Authority would be granted. There was a reversal in October of 2001, and a hearing set in December of 2001 where this reversal and denial of access by Judge Niepmann was confirmed.
Attachment 1. Wayson deposition 9-20-07; P. 7. lines 19-25 & p.8, lines 1-4

In her 'analysis' of these events Ms. Lindquist fails to mention that this denial of the previously approved petition in August 2001 for access between the Plaintiff and his daughter, first coincides with the reckless untrue statement by Robert Schneider to state regulator Ben Kennedy that the Plaintiff is a "potentially serious threat to BLM employees."
Attachment 2. Ben Kennedy e-mail

While Ms. Lindquist obviously intends some insult with the "It is not surprising,..." statement, in her **ANALYSIS**, it is nevertheless actually 'not surprising,' that, "Mr. Wayson's difficulties with the German court arose even before Ms. Rundell's memorandum was written." Ms. Froehlich-Tumbrink believes that the effects of Mr. Schneider's statement to Ben Kennedy, that Mr. Schneider, "...considers Mr. Wayson to

Wayson v. Rundell, 4:06 Cv (JWS)
Reply to oppos. to add Expert 10-22-07

2

be a potentially serious threat to BLM employees." which Ms. Rundell was assigned to investigate, was the basis for the denial of the previously approved Hague Treaty petition by Judge Niepmann.

The second relevant coincidence missing in Ms.Lindquist's 'analysis' offered in defense of her client is that the Patriot Act was enacted in October 2001, authorizing unprecedented information sharing between law enforcement and intelligence agencies, thereby explaining how statements/reports in the BLM law Enforcement division made their way to the German courts through the intelligence apparatus of the State department. A fair investigation by Ms. Rundell rather than her impeding the investigation of Robert Schneider, could have led to a substantial reduction of the damage done to the Plaintiff and his daughter. .

Ms. Lindquist is incorrect when she wrote that "Mr. Wayson made contacts with his daughter without difficulty in 2003." This is untrue. And in Ms. Lindquist's "Ex.A at 10," there is no indication that, "Mr. Wayson made contacts with his daughter without difficulty in 2003."

Ms. Lindquist is incorrect when she refers to her "Ex B, at 15-17" as indicating that, "Ms. Froehlich-Tumbrink testified that she spoke to a secretary at the Consulate who informed her that Ms. Ram at the Consulate had spoken with Judge Goehler-Schlicht, a judge at the appellate court, but Ms. Froehlich-Tumbrink did not know the content of the conversation."

The exhibit referred to does not contain such a claim by Ms. Froehlich-Tumbrink either on the pages cited or elsewhere in the deposition.

Ms. Lindquist is incorrect in her **ANALYSIS** when she adds, (referring to the contact by Deputy Consul Marion Ram of the U.S. Consulate in Dusseldorf with appellate judge Goehler-Schlicht)

"Moreover, the judge who got the information gave Mr. Wayson favorable decisions."

This is not true, and is unsupported by anything which Ms. Lindquist offers in her exhibits.

Defendant's 'Exhibit 'D' dated 10-15-07, is confusing since it refers to the 'Exhibit A' as a document written by the Defendant, when 'Exhibit A' of this Opposition response by Ms. Lindquist is actually excerpts from the Plaintiff's deposition of September 20, 2007. Attachment # 3. Defendant's 'Exhibit D', 10-15-07 Declaration by Linda Rundell.

Nevertheless, in 'Exhibit D' the Defendant writes,

"I am the defendant in this action. I signed the memorandum which is at issue in this case, and which is marked as Exhibit A."

Later in this "Declaration" Ms. Rundell writes,

" I did not intend the memorandum to affect Mr. Wayson at all."

While it was apparently not intended as an exhibit for this Opposition, Defendant's 'Exhibit D' is a strong indication that Ms. Froehlich-Tumbrink will be useful to the court,

since she can testify how Ms. Rundell's memorandum does affect the Plaintiff in Germany. If Ms. Rundell screams "Fire" in a crowded theater when it is obvious that there is no fire, she is responsible for the injuries to those fleeing in panic, and could not claim she is not responsible just because someone else repeated what she said after she shouted the first false warning. The same logic should be applied here regarding Ms. Rundell's statement in her 9-19-02 memorandum. The court, rather than Ms. Rundell, should determine the effects of her statement, and Ms. Froehlich-Tumbrink is in a much better position to assist the court in explaining the effects of Ms. Rundell's false warning in Germany upon the Plaintiff and his daughter, than Ms. Rundell is.

Attachment # 4  Ms. Froehlich-Tumbrink's expert witness report.

Plaintiff must meet the five day requirement for reply to opposition. The copy which AUSA Ms. Lindquist mailed 10-15-07 still has not arrived. Plaintiff must therefore reply to, and rely upon the courtesy e-mailed opposition which includes the Defendant's 'Exhibit D,' despite the fact that another exhibit "D" may have been intended.

Dated: October 22, 2007

_____
Mark N. Wayson, pro se

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on this 22 day of OCT, 2007, a copy of the foregoing was served by mail on:
Office of U.S. Attorney
222 W. 7th Ave., #9, Rm. 253
Anchorage, Alaska 99513

_____
Mark N. Wayson

Wayson v. Rundell, 4:06 Cv (JWS)
Reply to oppos. to add Expert 10-22-07

5

0002

```
 1        PURSUANT TO NOTICE, the Deposition of MARK N. WAYSON
 2   was taken on behalf of the Defendants before Maureen Green,
 3   Notary Public in and for the State of Alaska and Reporter for
 4   Metro Court Reporting, at the U.S. Attorney's Office, 222 West
 5   7th Avenue, Number 9, Room 253, Anchorage, Alaska, on the 20th
 6   day of September 2007, commencing at the hour of 1:03 p.m.
 7                            * * * *
 8                        TABLE OF CONTENTS
 9        Direct Examination by Ms. Lindquist . . . . . . . . 5
10        EXHIBITS
11        (None marked at these proceedings)
12
13                            * * * *
14
15
16
17
18
19
20
21
22
23
24
25
```

*Attachment #1*

0007

| | | |
|---|---|---|
| 1 | | because the Hague -- there was initial Hague filing in |
| 2 | | April of 1997 with the German Consulate in Rio |
| 3 | | Dejenaro.  There was a -- my daughter was abducted in |
| 4 | | December of 1997 from Brazil to Germany.  I located her |
| 5 | | in March of 1998, and then that is -- and I attempted |
| 6 | | to make contact, and then eventually that year, |
| 7 | | November -- October or November, the case was filed in |
| 8 | | Germany trying to implement the Brazilian decision, |
| 9 | | which I believe was dated March 9 -- March of 1998. |
| 10 | Q | What happened in Germany between October of 1998 and |
| 11 | | September of 2002? |
| 12 | A | Well probably the most significant event was that the |
| 13 | | German Central Authority accepted an access petition |
| 14 | | from me, and in June of 19- -- in June of 2001, they |
| 15 | | prepared a petition for the Hague court in Germany |
| 16 | | giving my daughter and I access to her non-German |
| 17 | | family, cultures, and nationalities. |
| 18 | Q | What happened between June 2001 and September of 2002? |
| 19 | A | Well in August of 2001, the -- a man named Witzel, who |
| 20 | | was then the German Central Authority, he notified my |
| 21 | | friend Ms. Tombrink that he'd contacted the Hague |
| 22 | | judge, and she was going to implement the petition as |
| 23 | | it was written. |
| 24 | Q | What happened between August of 2001 and September of |
| 25 | | 2002 regarding this action? |

0008

| | | |
|---|---|---|
| 1 | A | I didn't get a hearing on that until -- I believe the |
| 2 | | first hearing was October of 2001 and -- with the same |
| 3 | | judge who had indicated in August that she was going to |
| 4 | | grant it, and I got no access.  There was another |
| 5 | | hearing following that in December of 2001 -- late |
| 6 | | November, early December, and I got -- I think I got |
| 7 | | four or five hours contact with my daughter, which was |
| 8 | | the first contact for three and a half years about, and |
| 9 | | then she issued a decision in July of 2002 in which she |
| 10 | | said that I could not have any -- I could not even |
| 11 | | apply for access to my daughter for four more years. |
| 12 | Q | Who -- what's -- who is she? |
| 13 | A | Excuse me.  Judge Niepmann, N-i-e-p-m-a-n-n. |
| 14 | Q | Is she the judge on the case now? |
| 15 | A | No.  She's the -- she was the Hague judge at the time. |
| 16 | | I believe there are 60 Hague judges in Germany and |
| 17 | | she's one of those. |
| 18 | Q | Does the Hague still have your case? |
| 19 | A | I don't know.  The -- it's -- that's a point -- it's |
| 20 | | talking a legal point over there that has been in some |
| 21 | | dispute.  There is a Hague case, I mean, that was -- |
| 22 | | each time there's an action they open a new case, so -- |
| 23 | | but the same case has been continuous, and that would |
| 24 | | be the one in the Supreme Court right now in -- Supreme |
| 25 | | Court in Germany, although, as I mentioned at the |

> >
> > I am forwarding a copy of the last few emails I received from Mark
> > Wayson as well as this short narrative so that you are aware of the
> > events that occurred this fall involving Mr. Wayson, BLM, and DNR. Mr.
> > Wayson has a placer operation on Birch Creek in the Circle Mining
> > District. BLM mistakenly attempted to build a berm across a section of
> > his claim block this fall as part of an ongoing erosion control project.
> > Jack Kerin, Kim Griffith, and I met with Mr. Wayson, Del Eckles (an
> > associate of Mr. Wayson) and BLM personnel in our Fairbanks Office on
> > September 17 to discuss the project and status of Mr. Wayson's claims.
> > BLM eventually moved the project downstream from Mr. Wayson's placer
> > operation. However, Mr. Wayson was very upset and sent a letter
> > containing various accusations and complaints to Marty Rutherford and
> > Bob Loeffler, among others. Apparently he has received no response from
> > DNR to his letter of complaint. He also sent a copy of the letter with a
> > packet of material for me to forward to BLM. I met with Bob Schneider,
> > BLM Northern Field Office Manager, on October 12. It is important that
> > you understand that Bob Schneider considers Mr. Wayson to be a
> > potentially serious threat to BLM employees. Armed BLM enforcement
> > officers were sent to the berm construction site in September. On the
> > other hand, Mr. Wayson believes that BLM is literally gunning for him.
> > Evidently, there are some long-standing issues of conflict between BLM
> > and Mr. Wayson.
> > There is no need for you to respond to this email--I would just advise
> > that we all use some diplomacy when dealing with Mr. Wayson.
> >
> > Regards,
> >
> > Ben Kennedy
> > ------------------------------------------
> >
> > ------------------------------------------
> > Subject:
> >       Shelley and kerwin
> >   Date:
> >       Thu, 6 Dec 2001 02:58:39 -0800 (PST)
> >   From:
> >       mark wayson <markonwayson@yahoo.com>
> >     To:
> >       bkennedy@dnr.state.ak.us
> >
> > Dear Ben,
> > Thanks for the map. Did you get my e-mail inquiring
> > whether Shelley can identify where this so-called
> > project actually took place?
> > Also, I described the contradictions I am getting from
> > Krause. I do exactly as he says, tell him i am doing
> > as he says in my letter to him three years ago, and
> > now he won't follow through. Do you have any
> > suggestions, or is his another 'independent empire'
> > immune from inquiry/criticism etc.? I am still in
> > Germany.
> > Mark
> >
> > ------------------------------------------
> > Subject:
> >       Re: Shelly Jacobson out of office until Dec 3.

*Attachment #2*

BLM-STATE DIRECTOR   ID:505-438-7452   OCT 15'07   12:42 No.001 P.02
Case 4:06-cv-00001-JWS   Document 70   Filed 10/22/2007   Page 10 of 14
Case 4:06-cv-00001-JWS   Document 68-5   Filed 10/15/2007   Page 1 of 1

### DECLARATION

I, **Linda Rundell**, declare under penalty of perjury that the following is true:

1. I am the defendant in this action. I signed the memorandum which is at issue in this case and which is marked as Exhibit A.
2. Mr. Wayson asked the Inspector General to investigate Robert Schneider's decision to send a BLM ranger to the erosion project directed by Carol Hammond. Ms. Hammond had an unpleasant interaction with Mr. Wayson at the rural site and requested that a trooper remain at the site.
3. In order to determine whether Schneider's actions created a dangerous situation, I needed information about the action which precipitated Schneider's decision. I asked another employee to investigate and she wrote the memorandum for my signature.
4. When the memorandum was signed, I sent it to the Chief of Law Enforcement. I did not send it to anyone else. I never sent it to anyone else or any other entity. I never send it to anyone in Germany. I did not speak with anyone in Germany about Mr. Wayson. To the best of my knowledge, no person with whom I ever spoke about the events, ever conveyed information to anyone in Germany. Until Mr. Wayson sued me, I knew nothing about his litigation in Germany. Since then I have not communicated with anyone in Germany about the memorandum.
5. I did not intend the memorandum to affect Mr. Wayson at all. I intended to make a decision about Mr. Schneider's actions. I did not intend to do anything to Mr. Wayson. I did not intend to and I did not take, any action to charge Mr. Wayson with a crime. I did nothing to block him from using his property. I said nothing and did nothing to prevent him from speaking. I never spoke with Mr. Wayson until I was deposed in his prior case against Mr. Schneider.

Date: 10/15/07    _Linda SC Rundell_
                  Linda Rundell
                  Former, Acting State Director, BLM, Alaska
                  Current, Director, BLM, New Mexico

Declarations have the same legal force as affidavits. 28 U.S.C. § 1746

Exhibit D

*Attachment #3*

Mitglied der BAG
Verfahrenspflegschaft für
Kinder und Jugendliche e.V.

Jutta Fröhlich-Tumbrink-Gumpersberger Str. 23-64732 Bad König

Bad König, September 25th 2007

# EXPERT WITNESS REPORT

Jutta Fröhlich Tumbrink
Gumpersberger Str. 23
64732 Bad König
Germany
Telephone: 49 61636257

Title: Guardian ad Litem

Education:

1973 Completed legal education at Johann-Wolfgang-Goethe University
Frankfurt Germany
2003 Completed 15 month( Weiterbildung zur Verfahrenspflegerln nach § 50 FGG und § 70b FGG) Guardian ad Litem training course at Hamburg Germany.

Experience:

Worked continually full or part-time in family law cases, both on a voluntary and paid basis from 1975 to present, upon completion of two year practicum which also included exposure to family law issues in Germany.

Since 2003 have worked continuously as a guardian ad litem in the Appeals Courts of the Frankfurt Main judicial district. Approximately 40 % of the cases handled are international cases.

Am completely familiar with the procedures, practices, rules and regulations which govern family court actions in German courts.

Have been consulted by the Central German Justice Ministry in Berlin regarding international cases, and by the Appeals courts in Frankfurt, regarding international custody and access cases.

■ Jutta Fröhlich-Tumbrink         ■ Tel. 06163.6257
■ Gumpersberger Str. 23           ■ Fax. 01805.06034310961
■ 64732 Bad König                 ■ frotum@t-online.de

*Attachment #4*

■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■

Will testify that I had been informed by Mark of actions by the BLM, regarding conflicts which they had with his mining north of Fairbanks, and that I had warned him more than once that I believed his own government was behind the Hague Petition being reversed, and I will testify that it was I, rather than he, who pointed out the downward parallel corresponding sequence of events, both in the German courts, and by this BLM, which I believe led to the denial of even his right to petition by judge Niepmann.

Will testify that after successfully appealing Judge Niepmann's decision this violation of the German and international law, Mark experienced steady progress in the appeals court which led to a 12.11.03 decision by the 21st Appeals court of Cologne Germany, which provided favorable and increasing access between Mark and his daughter.

Will testify that I personally confirmed by telephone with Deputy Consulate Marion Ram of the American Consulate in Dusseldorf Germany, that she had called Judge Goehler-Schlicht, president of the 21st Appeals of Cologne Germany, in approximately January of 2004, to report that the American Consulate did not want Mark Wayson coming to the American Consulate because all the employees there felt threatened by him, that he was intimidating, and that they were scared of Mark.

Will testify that when I pressed Consulate Ram for details and the source of these reported fears, she refused to speak with me further on the matter.

Will testify that judges in German have the constitutional right and responsibility to act independently, subject to the law, but in family cases, judges must first exercise this independence to protect the welfare of the child, and act upon information with that intent despite the laws governing their actions.

Will testify that I had learned of the accusation against Mark by Linda Rundell through conversations with Mark, although not prior to my conversation with Deputy Secretary Ram of the Dusseldorf, in which she confirmed her damaging comments which she made to Judge Goehler-Schlicht.

Will testify that prior to preparing this report, I have reviewed a copy of the 9.19.02 letter, which Linda Rundell sent to the National BLM police headquarters.

Will testify that a report like this accusing Mark of violence against a government employee, and a felony crime, is more than enough grounds for any family judge who learned of this, whether in open court or through another source, to not allow Mark access to his child.

Will testify to the effects upon any party in the German family court system accused as Mark was accused, and the weight which German family judges attach to such allegations, particularly those accusations coming from as foreign government with the power and influence of the United States of America. .

■ Jutta Fröhlich-Tumbrink  ■ Tel. 06163.8257
■ Gumpersberger Str. 23    ■ Fax. 01805.06034310961
■ 64732 Bad König           ■ frotum@t-online.de

Presently I am involved with 41 active cases. Individual case names and numbers cannot be disclosed under the rules governing the German family courts.

Qualifications as expert:

Each time I appear in court, I do so as an expert because of my training and experience, and because I represent the child.

Anticipated Testimony:

Will testify that I have worked with Mark Wayson continuously since January of 1997 in his efforts to gain access to his daughter. My role has included numerous translations, communication with Mark's and opposing party's attorneys, communicating with agencies and officials involved, and providing legal advice regarding procedures, particularly from 2000 to 2004, when Mark was representing himself pro se in the German court system.

Will testify that since he lives in Alaska, and has only a basic understanding of the German language, Mark's official address for the German courts has been our family's address, listed above, and I have received all correspondence in the Hague and other cases which have been active, and are still active in Germany, when was representing himself, and have had complete access to all records and court actions both before and after to took on his own defense, and was represented by an attorney.

Will testify that Mark has done everything possible and required by law to meet legal and social requirements to gain access to his daughter within the German Justice system.

Will testify that I worked closely with Herr Weitzel in June of 2001, of the German Central Authority, who filed a Hague Treaty access petition, for Mark and his daughter, based upon a decision of the family court of first instance in Rio de Janeiro Brazil.

Will testify that sometime in approximately August 2001, I had contacts with Herr Weitzel of the German Central Authority which administers the Hague Access Treaty, and he reported that Hague Judge Birgit Niepmann had received and reviewed the Hague petition, and was prepared to order its implementation, giving Mark the legal access both he and his daughter are entitled to by law.

Will testify that Judge Niepmann then, in a completely unprecedented action, with no legal foundation whatsoever, refused to grant the access which the German Central Authority had authorized and petitioned for, and followed up with a decision in approximately July of 2002, that Mark had to wait four years before he was even allowed to petition the courts for access to his child.

- Jutta Fröhlich-Tumbrink
- Gumpersberger Str. 23
- 64732 Bad König
- Tel. 06163.6257
- Fax. 01805.06034310961
- frotum@t-online.de

Will testify that it is my professional opinion that, based upon Mark's more than ten years in the Brazilian and German legal system trying to get access to his daughter, the patience and dedication he has exhibited in the German system, his perfect record complying with every German court order and directive, and the meticulous and exacting examination which has been made by courts and authorities investigating and reviewing every open accusation which has been made against Mark, it is only a secret letter like this one from Ms. Rundell, or one carrying similar or more serious charges, which has caused the family court system in Germany to deny Mark access to his daughter.

*Jutta Fröhlich-Tumbrink*

Jutta Fröhlich-Tumbrink
-Guardian Ad Litem-

- Jutta Fröhlich-Tumbrink
- Gumpersberger Str. 23
- 64732 Bad König
- Tel. 06163.6257
- Fax. 01805.06034310961
- frotum@t-online.de