Mark N. Wayson
C/o Wickwire
2775 Hanson Road
Fairbanks, AK 99709
markonwayson@yahoo.com



IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| MARK N, WAYSON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| Vs. | ) |
| | ) |
| LINDA RUNDELL and the | ) |
| UNITED STATES OF AMERICA | ) |
| | ) |
| Defendants. | ) |
| | ) 4:06-Cv 1 (JWS) |

**MEMORANDUM IN SUPPORT OF MOTION TO COMPEL DISCOVERY**

Because this is a Bivens case, Plaintiff is aware that there is some requirement to

pretend as though Ms. Lindquist is acting only as Ms. Rundell's private Attorney when

she is actually using all resources of the U.S. Attorney's office which are available to her

as a government attorney, and therefore Ms. Rundell is actually being defended by the

United States.

Wayson v. Rundell, 4:06 Cv 1 (JWS)
Support memo Motion to Compel 10-31-07

One effect of this hybrid defense is to make the discovery process unfair to Plaintiff, and provide the Defendant with protections she does not need since the same ones which are available to any Defendant under the federal discovery rules are adequate to protect her rights. Since Ms. Lindquist is a U.S. Attorney, she can/may conceal anything which she chooses to conceal or withhold from Plaintiff in the role of an assistant U.S. Attorney, if she believes that it might either implicate her client or others criminally as federal employees, or that it might be used to establish Rundell's civil liability, and/or damages to Plaintiff, in Rundell's capacity as a government employee.

The effect has been to tilt the playing field even more to Plaintiff's disadvantage and to increase Plaintiff's Discovery costs, as well as making depositions less probative and revealing, such as for example, the 9-11-07 Rundell deposition, which would have been more productive had Plaintiff had the investigating officer's report which had been requested in a Production Request, but which were denied by Ms. Lindquist, with a claim that documents requested were not in Rundell's possession. No effort has been made by Defendant to access documents which Rundell has access to. This also limits Plaintiff's ability to completely answer Defendant's Motion for Summary Judgment and other pleadings from Defendant.

Wayson v. Rundell, 4:06 Cv 1 (JWS)
Support memo Motion to Compel 10-31-07

Linda Rundell was assigned to investigate the 4-5-02 complaint which Plaintiff filed with the Dept. of Interior Inspector General.

(Attachment #1. D.O. I., O.I.G. 4-5-02 Wayson complaint.

In **Wayson v. Schneider,** AUSA Daniel Cooper advised Plaintiff that there were "two letters" written by Pamela Stuart, dealing with the investigation of the complaint which Plaintiff filed with the Dept. of the Interior Inspector General, and which was assigned to Linda Rundell to investigate, and AUSA Cooper informed Plaintiff that he would produce copies of the Stuart letters, but never did.

(Attachment #, 2, 4-27-07 Wayson Affidavit, pages 2-3, paragraph 5 )

These letters are even more relevant to Plaintiff now because at least from Rundell's deposition of 9-11-07 until her Declaration of 10-15-07, Pamela Stuart became the designated investigating officer of the Schneider investigation in 2002, although on 9-27-04 in her deposition, Rundell swore repeatedly that the investigating officer was 'someone' from the BLM National Law enforcement Office.

Plaintiff deposed Ms. Rundell 9-27-04, and in response to Rundell's first reference to the BLM national Law Enforcement Office, which was,

"...whoever from the National law Enforcement Office looked into the incident for me."
Plaintiff asked Rundell if Pamela Stuart had any role in the inquiry, and Rundell made it clear that that Pamela Stuart had no part in the investigation. However, Rundell testified

that Stuart had been the chief BLM Law Enforcement Officer in Alaska at the time of the investigation, and was then the chief Law Enforcement officer, working with Rundell in Santa Fe New Mexico at the time of the 9-27-04 deposition, and that Stuart had followed Rundell down to Santa Fe approximately three months after Rundell transferred there to become the BLM State director in New Mexico.

Attachment #3, 9-27-04 Rundell Deposition Page 10, lines 17-25, page 11, lines 1-20.

  To summarize, according to Rundell, the investigation of Plaintiff's 4-5-02 complaint was that it was,

1. Sent by the BLM National Law Office to Rundell for an administrative Inquiry.

Attachment # 4, 8-5-02 BLM Law Enforcement-Rundell assignment lette)

2. Since it involved a law enforcement matter, Rundell sent it back to the BLM National Law Enforcement Office for an investigation. Rundell made her second reference to the National Office when she testified,

"I turned it over to the National Law Enforcement Office, and they conducted their investigation into the matter."

See Attachment # 3, Page 12, lines 9-11

3. As referred to, above on page 10 of her deposition, Rundell then consulted with whoever in the BLM National Office she had consulted before making her findings noted in her 9-19-02 memorandum

Attachment #5 9-19-02 Rundell to Chief National Law Enforcement Office Memo.

4.. BLM law enforcement then closed the case and sent it back to D.O.I., O.I.G., based not upon any investigation which Ms. Rundell claims took place at the national Office, but upon Rundell's memorandum.

Attachment # 6, 10-2-02 Chief Nat'l Law Enforcement office to O.I.G. case closure.

Rundells' third reference in her 9-27-04 deposition to the BLM National Law Enforcement Office's involvement in the case came when plaintiff asked where he could find a record of the investigation,

Rundell: "Most likely if there is, it would be in the Boise office of the national Law enforcement Office."

See Attachment #3 Page 12, lines 16-17

Rundell's fourth reference came when Plaintiff inquired in the 9-27-04 deposition if she had followed the procedure for this administrative inquiry involving a law enforcement matter.

Rundell: "Yes, I contacted the National Office of Law Enforcement."

See Attachment #3, Page 14, lines 22-23

Trying to learn more about where to find the report, Plaintiff asked in the 9-27-04 deposition,

Wayson: "So you are unaware of – if there was an investigative report in addition to this by this by National Law enforcement Office, you're not aware of it?"

Rundell: "I am not."

Wayson: Would they have talked to you about it before you wrote the September 19 letter"

Rundell: "Yes."

Wayson: "Do you know if they did talk to you about it?"

Rundell: "I believe so."

See Attachment #3, Page 15, lines 4-14

In trying to find out what procedures may have been used in the purported investigation by the National Law Enforcement Office, Plaintiff asked in the 9-27-04 deposition,

Wayson: "Well, you referred to that, indeed, there are some procedures. Is there any place I can obtain these procedures?

Rundell: "I would suggest that you put your request to the national Law Enforcement Office."

See Attachment #3, Page 33, lines 20-25

Rundell made her seventh reference to the National Law Enforcement Office's involvement in the Schneider investigation in the 9-27-04 deposition when asked,,

Wayson: "Ms. Rundell, to try and track down who may have taken part in this inquiry for you here in Alaska, do you remember if it was an Alaskan officer or if it was somebody from the national Bureau?"

Rundell: "The typical policy is if we are conducting an inquiry or investigation about someone within our state, is that someone from out of state would conduct that inquiry or investigation."

See Attachment #3, Page 36, lines 20-25, page 37, lines 1-2

This was the testimony in 2004. Now it has changed. With her Motion for Summary Judgment, Ms. Lindquist included a number of exhibits. One of these indicates that the BLM National Law Enforcement Office answered a 2-9-07 request from Ms. Lindquist, as a government lawyer, for a copy of the Schneider investigation report. Attachment #7, BLM Internal Affairs Chief, Greg Assmus Declaration, 5-9-07

Apparently once Plaintiff filed **Wayson v. Rundell,** Ms. Lindquist at some point, read the 9-27-04 Rundell deposition and decided she had better have a look at the BLM National Law Enforcement Office file, but when she got a response to her 2-7-07 request for the investigative file, Lindquist learned that her client's repeated claims that the BLM National Law Enforcement Office had done the Schneider investigation were not true.

Therefore Lindquist contacted Pamela Stuart who agreed to provide a Declaration, and did so just eighteen days after Lindquist made her request to the BLM National Law Enforcement Office. In her Declaration, it is Stuart who now claims she did the investigation into whether Robert Schneider, "…violated Title 18, a criminal statute." Attachment # 8, 2-27-07 SAIC Pamela Stuart Declaration

Plaintiff requests that the court order Lindquist to provide Plaintiff a copy of the Schneider investigation which she received pursuant to her 2-9-07 request to the National BLM law enforcement Office, and any and all documents which were produced to her by the BLM national Law enforcement Office, because presumably rather than as Rundell's

Wayson v. Rundell, 4:06 Cv 1 (JWS)
Support memo Motion to Compel 10-31-07

7

private lawyer, AUSA Lindquist cloaked herself as a 'government lawyer' when she responded to Plaintiff's Production request, with the reply that these documents were not in Rundell's Possession, and therefore determined she did not have to produce them to Plaintiff.

Attachment #9, 3-26-07 Lindquist Response to Plaintiff 3rd Production Request, #11

It can be presumed that some mention of Stuart is in the BLM Schneider investigation file exists, because AUSA Lindquist listed Pamela Stuart on her Rule 26 Witness list, the very same day, 2-9-07, as the day of her inquiry to the National BLM Law Enforcement Office.

Presumably also, the files from the National Law Enforcement Office would contain any documents produced or examined by Stuart, and could well include the "two letters" which AUSA Cooper promised Plaintiff in 2004, and which were denied in Lindquist's 3-26-07 Production Request Response.

See Attachment 9, Production request # 9

But in the event these two letters are not among documents which AUSA Lindquist obtained from the BLM national Law Enforcement Office, Plaintiff requests that the court specifically order that AUSA Lindquist to obtain those two letters from AUSA Cooper who promised them to Plaintiff in Discovery conducted during **Wayson v. Schneider,** and/or from retired SAIC Pamela Stuart.

Wayson v. Rundell, 4:06 Cv 1 (JWS)
Support memo Motion to Compel 10-31-07

8

Once she had obtained the 2-27-07 Declaration from retired SAIC Pamela Stuart, (Attachment # 8) Lindquist ran into a problem which she had not anticipated. It was decided that in Stuart's Declaration, she would swear that she had spoken with 'Mr. Schneider and Ranger Lee.' She can't remember what was said, and can't remember what other documents she reviewed while doing the investigation, but she does remember that she spoke to Schneider and Lee.

Aware that Plaintiff had named Schneider as a witness by Plaintiff in the **Wayson v. Rundell** case, presumably Ms. Lindquist at some point later dragged out the Schneider deposition from the previous case only to learn that he was locked in to basically saying that no one talked to him about any offense which he was accused of in the 4-5-02 D.O.I., O.I.G., complaint from Wayson which was assigned to Rundell to investigate. Unless some sudden recollection by Schneider is hastily formulated, his previous sworn testimony makes him useless to corroborate Stuart's Declaration.

That left Ranger Lee, and Lindquist perhaps felt that, even without Schneider, Ranger Lee might be enough to make the Stuart Declaration credible, because he had been the officer who responded out to 98 mile Steese on 9-15-01.

Wayson v. Rundell, 4:06 Cv 1 (JWS)
Support memo Motion to Compel 10-31-07

Unfortunately for AUSA Lindquist, on the afternoon of 9-11-07, Ranger Ed Lee, the only other source who Pamela Stuart Declaration names, testified that he had not spoken with Pamela Stuart regarding the Schneider case.   AUSA Lindquist asked;

Lindquist: "And do you have any recollection of Pam Stuart talking to you about this incident in September.?"

Ranger Lee:   "No I don't. But she was the special agent in charge; that's possible, but I don't remember a conversation with her."

Attachment # 10,   Lee 9-11-07 deposition, Page 81, lines 13-25& page 82, line 1

But Ranger Lee's testimony, created an even bigger problem for Lindquist and Rundell.  Pamela Stuart's Declaration claims that she is the one who wrote the 9-19-02 memorandum, with the finding that Wayson had forcibly committed the crime against Hammond.

However, Ranger Lee testified that he had closed out the report he made in response to the call from Carol Hammond 9-15-01 at the latest by 10-7-01, and had closed the case when he wrote the report, and it was his understanding that the SAIC reviewed his reports before sending them to the National Office.   Further, he testified that Carol Hammond reported no crime to him on 9-15-01, and that he listed a criminal offense on the report only because he is restricted as to how to categorize his calls. .

Attachment 10, Page 38, lines 1-25, & page 39, lines 15-23, page 50, lines 2-5 &15-25.

Ranger Lee had not yet been deposed however, when Rundell was deposed in the morning of 9-11-07, Neither she nor AUSA Lindquist could have anticipated that Lee's testimony would further destroy the credibility of Stuart's Declaration.

Ms. Rundell provided three separate versions in the 9-11-07 deposition, as to how she suddenly came to realize that it was not the BLM National law Enforcement Office, but SAIC Pamela Stuart, who conducted the Schneider investigation.

First Rundell testified that she suddenly remembered that Pamela Stuart had done the investigation when she was presented with the "materials" for the deposition taken years later, and Rundell refers to "statements from Ms. Hammond and Mister—Officer Lee," as being the 'materials' she is referring to..
Attachment # 11, 9-11-07 Rundell deposition page 22, lines 20-25, page 23, lines 1-10

The record reflects that those were in the 'materials' which were provided Rundell prior to her 9-27-04 deposition when she testified seven times that it had been the BLM National Law Enforcement Office which had done the investigation, but these materials were not presented to Ms. Rundell before the 9-11-07 deposition, thereby making her ensuing explanation that she had received the materials but didn't know when that was, actually a confirmation that she gave false testimony given 9-27-04.
See Attachment 11, page 23 line 25, page 24, lines 1-10,

Later in the deposition, Ms. Rundell spontaneously offered a clarification, stating simply that it was some time after the deposition when she was made aware of the fact that Pamela Stuart had done the investigation. Absent from this explanation was any mention of the 'materials' which she testified had made her remember that Pamela Stuart was the investigating officer.
See Attachment 11, page 51, lines 22-25, & page 52, lines 1-5.

The third version of what led to Rundell's realization that Stuart had been the investigating officer, came from AUSA Lindquist's cross examination, in which Rundell testified that it was Lindquist who had told her that the investigating officer was Pamela Stuart.
See Attachment 11, page 59, lines 15-25, & page 60, 1-5

By 10-15-07, regardless of the sequence in which Rundell and Lindquist realized that neither Schneider and Lee could be used to support the 2-27-07 Pamela Stuart Declaration, it was decided to designate someone else as the 'investigating officer' for the Schneider criminal investigation, and Rundell presented new sworn testimony in the form of a Declaration, 34 days after her 9-11-07, and three days before Lindquist's Motion for Summary Judgment, swearing in the latest version that she had asked an "employee" to conduct the investigation .
Attachment #12, 10-15-07 Rundell Declaration, paragraph 3

Regardless of the fact that retired SAIC Stuart has now been replaced by an unknown 'employee' as the investigating officer in the Schneider case, Plaintiff nevertheless requests that the court re-open Discovery, and order the U.S. Attorney to produce Pamela A. Stuart to be deposed in Fairbanks Alaska as soon as possible, because given the 'recollections' which have taken place so far regarding her role in the case, SAIC Pamela Stuart may surface again as the investigating officer in the Schneider investigation, and this time, claim that she had based the findings she made upon conversations with Carol Hammond..

Lindquist is relying both on Carol Hammond's field diary and deposition, neither of which refers to SAIC Stuart's involvement, but Plaintiff anticipates that she could argue that any mention by Hammond of conversations with Hammond which SAIC Stuart may now recall, should be accepted by the court, because Hammond had probably not mentioned them because of confusion caused by the brain tumor which eventually killed her.

Plaintiff requests that the court order that the U.S. Attorney's office produce retired SAIC Pamela Stuart for a deposition, because AUSA Lindquist, has made what could be interpreted as an effort to hide Ms. Stuart from Plaintiff. On 8-15-07, Plaintiff began calling and leaving messages for Ms. Stuart at her Phoenix number, without any response. Plaintiff sent a letter to Ms. Stuart 8-16-07, and a second letter 8-28-07,

Wayson v. Rundell, 4:06 Cv 1 (JWS)
Support memo Motion to Compel 10-31-07

restricted delivery, but neither generated a response, and the registered letter was returned unclaimed.

Attachment # 13, copies of letters sent to SAIC Stuart to set up depositions

E-mail messages between Plaintiff and Ms. Lindquist reflect that Lindquist completely controlled the time , place and conditions under which the depositions of three of the four witnesses would take place, and the fourth, Stuart could not be found. In Ms. Garis' (Punches) case she went far beyond what is normal, and made several inquiries regarding exactly why Plaintiff wanted to depose Ms. Garis, and threatened not to produce her. The e-mail record also reflects that Plaintiff, in contrast, accommodated every single request made by AUSA Lindquist for information re: Garis, and accepted without delay, the times, place, and conditions, for the depositions of Ranger Lee, Linda Rundell, and Evalyn Garis.

Attachment 14 Wayson-Lindquist e-mail exchanges re: depositions 8-15-07 - 9-17-07

Plaintiff's e-mail notifying of intent to depose Ms. Stuart was sent 8-15-07 once it was evident that there would be no discovery forthcoming. AUSA Lindquist had a family emergency, requiring her absence until 8-27-07, directing me to AUSA Cooper first for assistance, and then AUSA Guarino after 8-20-07.

AUSA Cooper is a witness in this case, and Plaintiff therefore contacted AUSA Guarino, who was not able to help set up witness depositions.

On 8-27-07 AUSA Lindquist returned, and communications began re: depositions.

On Friday, 9-14-07, Plaintiff e-mailed copy of the Touhy Request for deposing Pamela Stuart, and faxed and mailed it to the appropriate officials.
Attachment #15, 9-13-07 Touhy Request to depose Pamela Stuart.

On Monday 9-17-07, AUSA Lindquist notified Plaintiff,
"…we do not produce her. You are on your own. .She is not our employee."
See Attachment #14, 9-17-07 Lindquist e-mail.

Plaintiff re-contacted AUSA Lindquist on 9-25-07, requesting any alternate numbers or an e-mail address, where Plaintiff could contact Stuart for a deposition, and explained that efforts had been underway to contact Stuart since 8-15-07.   Ms. Lindquist responded that she had done all she was "required" to do by giving a phone number and address, and would do no more.
Attachment # 16, 9-25-26-07 Wayson-Lindquist e-mail exchange

Wayson v. Rundell, 4:06 Cv 1 (JWS)
Support memo Motion to Compel 10-31-07

Plaintiff recognizes that in this instance Ms. Lindquist may have done all that is technically required, but in considering the request to produce Stuart, the court is requested to consider Lindquist's 9-26-07 refusal to provide some alternate means for Plaintiff to contact Stuart, in context with her refusal to provide the Stuart Declaration in response to a Production request, Lindquist's vigorous management of BLM employees regarding plaintiff's contacts with them, and Plaintiff's Discovery cooperation with Lindquist, particularly with respect to responding to multiple inquiries from Lindquist regarding why Ms. Garis was to be deposed by Plaintiff, which Plaintiff was not 'required' to answer under the rules, and to consider Lindquist's knowledge that her client, Linda Rundell, has misled Plaintiff repeatedly under oath in the 9-27-04 deposition, regarding retired SAIC Pamela Stuart's role in the Schneider criminal investigation, before the court decides whether to order the government to produce retired SAIC Pamela Stuart now for deposition by Plaintiff.

Further, when considering the request to order the government to produce Stuart, the court is asked to consider that the Touhy request (Attachment #15) which Plaintiff was required to file with Defendant Rundell, has not been answered like the other two which were filed for Garis and Lee, and the Defendant has an interest in keeping Pamela Stuart from being deposed in light of her conflicting testimony describing Stuart's role in the Schneider investigation, has never been answered. The Touhy Request for Stuart had to

Wayson v. Rundell, 4:06 Cv 1 (JWS)
Support memo Motion to Compel 10-31-07

be sent to, and answered by Defendant Rundell because New Mexico is the post from which Stuart retired, and Rundell remains the State Director there, and without a response to the Touhy reques,t Plaintiff could not depose Stuart even if she could be located by Plaintiff.

Lindquist may argue that as Rundell's 'private lawyer' there is nothing she can do to compel her client as the BLM New Mexico State Director, to answer the Touhy request necessary to depose her client's former Special Agent in charge, which again illustrates the charade involved with this hybrid defense in a Bivens case, since it is also in AUSA Lindquist's interest, as Rundell's government lawyer, not to have her client provide access to Stuart whose testimony would conflict with that of Rundell and Lee and Schneider.

The court is also requested to consider that AUSA Lindquist withheld the Stuart Declaration from the Plaintiff until 10-18-07, when she filed her Motion for Summary Judgment, which disadvantaged Plaintiff both in the Rundell and Lee depositions, and can be regarded as an action by Lindquist toward concealing a witness, who apparently will never have to appear, but be able to 'testify' through her Declaration.

In considering this request to order the government to produce Stuart, Plaintiff also asks the court to also consider that the 9-11-07 Rundell deposition was arranged by

Wayson v. Rundell, 4:06 Cv 1 (JWS)
Support memo Motion to Compel 10-31-07

AUSA Lindquist with Rundell in her office in New Mexico, Lindquist in her office in Anchorage Alaska, and Plaintiff with the court recorder in Fairbanks Alaska, and during this deposition, AUSA Lindquist was e-mailing (and possibly faxing) Rundell while the deposition was being taken.

See Attachment #11, page 16, lines 12-13 & Line 24

Plaintiff's Motion requests that the court order the U.S. Attorney to produce all e-mails and faxes from anyone in the Anchorage U.S. Attorney's office, for 9-11-07, which were sent to Linda Rundell, and/or BLM New Mexico State Headquarters, because it is improper for counsel to communicate with a deponent in this manner, and because, as related above, the sequence of how Ms. Rundell's recollection changed so dramatically and illogically during the deposition regarding Stuart's role, from some 'materials' reminding her, to Lindquist informing her, suggests that, some reminder was sent to Rundell from Lindquist or someone in her office, by e-mail or Fax to during the deposition, to inform Rundell that it had been Ms. Lindquist who had informed her that Pamela Stuart was the investigating officer in the Schneider investigation of 2002, causing Rundell to change her testimony in the deposition.

Plaintiff requests that the government bear all expenses of locating Ms. Stuart, and her transportation and expenses for the trip to Fairbanks, because the government/Ms. Rundell's private attorney's efforts to circumvent and disobey the federal rules of

Wayson v. Rundell, 4:06 Cv 1 (JWS)
Support memo Motion to Compel 10-31-07

discovery, and the government's response in their 3-36-07 Response to Plaintiff's 3rd Request for Production, that Ms. Rundell had no documents, have served to conceal the witness, Pamela Stuart, AUSA Lindquist's dual roles of private attorney/U.S. Attorney notwithstanding.

Dated: October 31, 2007

_____
Mark N. Wayson, pro s

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on this 5 day of Nov, 2007, a copy of the foregoing was served by mail on: AUSA Susan Lindquist

Office of U.S. Attorney
222 W. 7th Ave., #9, Rm. 253
Anchorage, Alaska 99513

_____
Mark N. Wayson

Wayson v. Rundell, 4:06 Cv 1 (JWS)
Support memo Motion to Compel 10-31-07

19