```
 1              IN THE UNITED STATES DISTRICT COURT

 2                    FOR THE STATE OF ALASKA

 3  MARK N. WAYSON                    )
                                      )
 4            Plaintiff,              )
                                      )
 5  vs.                               )
                                      )
 6  LINDA RUNDELL and the             )
    UNITED STATES OF AMERICA,         )
 7                                    )
              Defendants.             )
 8  _____)
    Case No.  4:06-CV 1 (JWS)
 9
           TELEPHONIC DEPOSITION OF LINDA RUNDELL
10                    September 11, 2007

11  APPEARANCES:

12       FOR THE PLAINTIFF:       MR. MARK WAYSON
                                  In propria persona
13                                c/o Wickwire
                                  2775 Hanson Road
14                                Fairbanks, Alaska 99709
                                  (907) 474-0068
15
         FOR THE DEFENDANT
16       (Telephonically):        MS. SUSAN LINDQUIST
                                  222 W. Seventh, #9, Room 253
17                                Anchorage, Alaska 99513
                                  (907) 271-3378
18

19                        *  *  *  *

20

21

22

23

24

25
```

LIZ D'AMOUR & ASSOCIATES, INC.
330 Wendell Street, Suite A
Fairbanks, Alaska 99701
(907) 452-3678

Attachment # 11

1          investigation?
2    A     I beg your pardon?
3    Q     Who was it who asked Ms. Stewart to do the
4          investigation?
5    A     I don't recall.
6    Q     Could you refer, please, to the letter which was faxed
7          to you yesterday? It's dated August 5th, 2002. Is
8          that the letter which assigned you this investigation?
9    A     I haven't located it yet.
10   Q     Okay. Have you found that letter?
11   A     I have not located it yet.
12              MS. LINDQUIST: Linda, I just re-e-mailed that
13   exhibit to you, that letter.
14   A     Okay.
15              MS. LINDQUIST: I e-mailed it to you yesterday,
16   also.
17   A     Okay. So it wasn't the fax?
18              MS. LINDQUIST: I thought she e-mailed it, but
19   I e-mailed it to you.
20   A     All right. Let me go see if I can find it.
21         (Pause)
22   A     You said you e-mailed it yesterday?
23              MS. LINDQUIST: Okay. I had my secretary
24   convey it to you and I e-mailed this just now again. I
25   received it in PDF format, so I assumed, but do not know

|    |   |                                                                          |
|----|---|--------------------------------------------------------------------------|
| 1  |   | assigned?                                                                |
| 2  | A | Yes.                                                                     |
| 3  | Q | Okay.  Are you telling me now that -- that you answered                  |
| 4  |   | at six different instances -- you indicated in six                       |
| 5  |   | different instances in this deposition that it was                       |
| 6  |   | somebody from the National Law Enforcement and not Pam                   |
| 7  |   | Stewart who was involved?                                                |
| 8  | A | Not at all.  Those are your words.                                       |
| 9  | Q | Okay.  Do you want me to go through each instance again                  |
| 10 |   | where you indicated this in your deposition?  I've done                  |
| 11 |   | several already.                                                         |
| 12 | A | No, that's not necessary.  If you go back -- if the                      |
| 13 |   | court reporter would be so kind as to go back to your                    |
| 14 |   | earlier question about Pam Stewart, you asked if she                     |
| 15 |   | was a special agent in Alaska, to which I said, yes.                     |
| 16 | Q | Uh-huh.  And when I asked you would she have any role                    |
| 17 |   | in this, in the inquiry, and you said, I don't know                      |
| 18 |   | that she was on board at that time.                                      |
| 19 | A | And that is a true statement.                                            |
| 20 | Q | Well, when did you suddenly remember that she was the                    |
| 21 |   | one that done the inquiry?                                               |
| 22 | A | When I was presented years later with these materials.                   |
| 23 | Q | Which materials are those?  The ones that accompanied                    |
| 24 |   | the deposition?                                                          |
| 25 | A | Yes, the materials -- it's a memo that was sent to me                    |

|    |   |                                                                      |
|----|---|----------------------------------------------------------------------|
| 1  |   | and the report statements from Ms. Hammond and                       |
| 2  |   | Mister -- Officer Lee.                                               |
| 3  | Q | Okay.  Then you had those prior to the deposition where              |
| 4  |   | you testified that she didn't -- she wasn't on board at              |
| 5  |   | the time.  But now you're saying that that is what                   |
| 6  |   | prompted you then to know that she was the                           |
| 7  |   | investigating officer?                                               |
| 8  | A | No.  When the question was asked, I could not recall                 |
| 9  |   | when Ms. Stewart reported to Alaska.  I still don't                  |
| 10 |   | know what day she reported to Alaska.                                |
| 11 | Q | I'm not asking you that, Ms. Rundell.  You just                      |
| 12 |   | testified that when you got the materials with the                   |
| 13 |   | deposition, it suddenly reminded you that she was the                |
| 14 |   | investigating officer.  Is that correct?                             |
| 15 | A | At some point, when this suit had been filed by you, I               |
| 16 |   | received a copy from whoever was handling the case.                  |
| 17 | Q | Was that Daniel Cooper?                                              |
| 18 | A | It may have been.  It may have been someone prior to                 |
| 19 |   | him, that included the memo.  And in trying to recall                |
| 20 |   | these events, I became aware that, yes, Pam Stewart was              |
| 21 |   | the one who was asked to review this.                                |
| 22 | Q | And that you had asked her?                                          |
| 23 | A | I don't know that I asked her or if she had been asked               |
| 24 |   | by the Chief of National Law Enforcement.                            |
| 25 | Q | Okay.  Ms. Rundell, you testified here today that when               |

|    |   |                                                                                      |
|----|---|--------------------------------------------------------------------------------------|
| 1  |   | you received this packet, you reminded -- you were                                   |
| 2  |   | reminded that it was Pamela Stewart who had done the                                 |
| 3  |   | investigation. You also testified that this came prior                               |
| 4  |   | to this deposition taken in September 27, 2004. So why                               |
| 5  |   | then, in the deposition did you not admit that she had                               |
| 6  |   | taken part in the investigation?                                                     |
| 7  | A | I believe what I just told you was that at some point                                |
| 8  |   | after this suit had been filed, I had been -- that I                                 |
| 9  |   | received copies of these materials. I don't know when                                |
| 10 |   | that was.                                                                            |
| 11 | Q | Did you -- were you coached by Mr. Cooper prior to that                              |
| 12 |   | deposition about what you could say or not say?                                      |
| 13 | A | I was not.                                                                           |
| 14 | Q | Okay. Now, I've asked you already, but I want to                                     |
| 15 |   | clarify. You've not made any attempt to get copies of                                |
| 16 |   | Ms. Stewart's report, if there was one, or any report                                |
| 17 |   | from the National Law Enforcement Office?                                            |
| 18 | A | That is correct.                                                                     |
| 19 | Q | Okay. Do you have an affirmative duty to do so?                                      |
| 20 | A | No.                                                                                  |
| 21 | Q | Okay. Now, you indicated in that deposition that there                               |
| 22 |   | was a videotape made. Is that correct?                                               |
| 23 | A | That's correct.                                                                      |
| 24 | Q | Okay. Did you ever review the videotape?                                             |
| 25 | A | I did not.                                                                           |

```
 1            aware of that?
 2   A        I do not understand your question.
 3   Q        Well, the question is, if, for example, that a
 4            permanent record is not considered hearsay, it can be
 5            used in a -- in a proceeding, another proceeding and
 6            it's regarded as factual?
 7   A        If you say so.
 8   Q        I didn't know if you were aware of that or not.
 9                 MS. LINDQUIST:  Objection; calls for a legal
10   conclusion.
11                 MR. WAYSON:  If she's not aware of it, fine.  I
12   just wanted to know if she was aware of it.
13   A        No.
14   Q        Okay.  Do you know where Pamela Stewart is now?
15   A        She is retired from the Bureau of Land Management.  I
16            believe she resides in the Phoenix area.
17   Q        When is the last time you had any contact with her?
18   A        Right after she retired.
19   Q        So you don't maintain contact now or.....
20   A        No, I do not.
21   Q        Okay.
22   A        I do wish to make one clarification with regards to
23            Pamela Stewart.
24   Q        Sure.
25   A        That is that earlier, when we were talking about
```

Case 4:06-cv-00001-JWS   Document 72-12   Filed 11/05/2007   Page 7 of 9

52

|     |   |                                                                      |
|-----|---|----------------------------------------------------------------------|
| 1   |   | whether or not I knew it was the agent conducting the                |
| 2   |   | inquiry during the deposition, I did not. And it was                 |
| 3   |   | at some point after that that I was made aware of the                |
| 4   |   | fact that it was, in fact, Pamela Stewart who conducted              |
| 5   |   | that.                                                                |
| 6   | Q | Okay. Are you -- were you aware at -- that up until                  |
| 7   |   | the time he was convicted, that Mr. Griles was                       |
| 8   |   | receiving $284,000 a year from the same company or the               |
| 9   |   | lobbying outfit for the same company that got the                    |
| 10  |   | majority of the leases at Otera Mesa?                                |
| 11  | A | I am not aware of anything like that.                                |
| 12  | Q | Are you receiving any monies as a consultant for oil                 |
| 13  |   | companies?                                                           |
| 14  | A | Certainly not.                                                       |
| 15  | Q | Have you ever received any?                                          |
| 16  | A | No.                                                                  |
| 17  | Q | Is it against the regulations in BLM?                                |
| 18  | A | Certainly.                                                           |
| 19  | Q | Is it against the regulations in the Department of the               |
| 20  |   | Interior?                                                            |
| 21  | A | I'm not -- I'm not an expert on what their regulations               |
| 22  |   | are. I would presume that you cannot do that.                        |
| 23  | Q | Okay. Let's see here. About how many criminal cases a                |
| 24  |   | year do you have down in New Mexico?                                 |
| 25  | A | I do not know.                                                       |

LIZ D'AMOUR & ASSOCIATES, INC.
330 Wendell Street, Suite A
Fairbanks, Alaska 99701
(907) 452-3678

```
 1              if they had any conversations with anybody else or
 2              whatever else might have transpired.
 3                   MR. WAYSON:  Can I look back on my things to do
 4   list?
 5                   COURT REPORTER:  Your notice?
 6                   MR. WAYSON:  No, no.  I was -- last question; I
 7   lost a question.  That's all right.  Okay.  Do you have any
 8   questions, Ms. Lindquist?
 9                   MS. LINDQUIST:  Are you done?
10                   MR. WAYSON:  Yes, I am.
11                        LINDA RUNDELL
12   testified as follows on:
13                        CROSS EXAMINATION
14   BY MS. LINDQUIST:
15   Q      You were asked about finding whether -- finding about
16          who did the investigation that resulted in the
17          September memorandum which you signed.  And at one
18          point, you found out that Pam Stewart did that
19          investigation.  Is that correct?
20   A      Yes.
21   Q      And how did you find that out?
22   A      I'm not sure if it was verbally or through mail, but I
23          believe that at some point after the deposition, that
24          you notified me that the agent who had conducted the
25          inquiry was Ms. Stewart.
```

```
 1  Q    Yeah.  And this information was given after the current
 2       lawsuit filed against you, correct?  And this was after
 3       the case against Robert Schneider brought by Mr. Wayson
 4       had been dismissed.
 5  A    I believe so, yes.
 6  Q    I just want to clarify that you did not personally
 7       draft the memorandum that you signed?
 8  A    That's correct.
 9            MS. LINDQUIST:  No further questions.
10                        LINDA RUNDELL
11  testified as follows on:
12                     REDIRECT EXAMINATION
13  BY MR. WAYSON:
14  Q    Ms. Rundell, when -- didn't draft the memorandum, but
15       are you, as the signee, responsible for the memo and
16       its contents?
17  A    Yes.
18  Q    I didn't ask this earlier, but do you know when
19       Ms. Hammond died?
20  A    I -- I think it was sometime within the last year.  I'm
21       not positive.
22  Q    And do you know the cause of death?
23  A    I believe she had a brain tumor.
24            MR. WAYSON:  Okay.  Thank you.  Do you have
25  anything else, Ms. Lindquist?
```