## AFFIDAVIT OF HEATHER ANN COATS

I, Heather Ann Coats, state as follows;

1. I was an employee of the Bureau of Land Management's Alaska State Office in Anchorage, Alaska from 1980 until 1999. I held the position of Adjudicator in the Division of Conveyances from 1988 until 1999.

2. In approximately 1994, I volunteered for co-lateral duty as an Equal Employment Opportunity Counselor, as part of the program that BLM as a Federal agency is required to operate in order to enforce the various Federal civil rights laws and to address employee complaints of discrimination and retaliation by other agency employees including supervisors, managers, and administrators.

3. I completed an on-site mandatory two-week training course as an EEO counselor. This course was taught by the Alaska State Office EEO Division Chief and focused on the various civil rights laws and procedures the agency was required by law to implement and was very specific regarding the various steps and levels of complaint filing including the requirements of complainant confidentiality.

*Attachment #4*

4. On the final day of the training course, the BLM Alaska State Director, Tom Allen, and the Assistant State Director, Sally Wisely, appeared in the classroom for the graduation ceremony of the course, but no other employees were allowed to attend the ceremony.

5. State Director Tom Allen addressed me and the other counselors, and stated that regardless of the strict confidentiality requirements of the complaint filing process, he expected us instead to "make sure that no complaints ever left the Alaska State Office" and that we were to notify him personally and immediately of any complaint voiced to us by any employee even prior to that complaint being officially filed at our office. Tom Allen's statement to us was clearly intended to impress upon us that we were not to follow our training but to act as his eyes and ears in our offices and to give him immediate knowledge of employee complaints of discriminatory or retaliatory issues in order to allow him to quash those complaints immediately by whatever means he would choose.

6. Sally Wisely did not speak, but sat next to Tom Allen, nodding her head in agreement with him as he openly instructed us not to protect BLM employees who complained, and made it very clear that our positions as EEO counselors were little more than window dressing, and we were not to follow the procedures mandated by law.

7. While employed as an adjudicator at BLM Alaska I did refuse to engage in falsifying records, or other illegal activity, and at least once while in employed in the

CIRI Section, Division of Conveyances, BLM Alaska, I was specifically assigned but refused to participate in the illegal transfer of excess federal lands to the CIRI Corporation. I am also aware of other "shady" dealings including one transfer of Federal lands to an applicant who owned and operated a lodge on those lands. Despite the applicant's failure to meet legal requirements for transfer of those lands, he had successfully lobbied the Alaska Congressional delegation to pressure BLM to make the transfer illegally. This transfer was eventually done by another BLM Alaska adjudicator in my section who refused to sign the transfer document. Our Section Chief also refused to sign the transfer document. It is my belief that the actual conveyance Decision as well as the land transfer document (Deed) was signed by the State Director. (Tom Allen)

8. While at BLM I also observed wholesale waste, I saw many employees assigned to busy work or no work at all, I observed records falsification, as well as violations of the law regarding illegal transfers of federal land, based upon political interference, but there was never an environment available where I could successfully stop such violations while in my position at BLM.

9. Nevertheless, in defiance of Mr. Allen's illegal instructions, I chose to act as mandated by law and within the established guidelines of the program the many times I was contacted by any BLM employee who wished to file a complaint or grievance. Rather than following the instructions given by Director Allen, I always followed the law as an EEO counselor.

10. In approximately 1995, I began to experience verbal abuse, harassment, and physical intimidation by my own supervisor, Terry Hassett. I voiced my concerns to Mr. Hassett, then to his immediate supervisor, and eventually to the EEO Division Chief at the BLM Alaska State Office. I was informed that Mr. Hassett was formally disciplined with a letter of reprimand. However, Mr. Hassett never relented in his abusive behavior towards me. I had to tile an official Complaint of discrimination with the BLM Alaska State Office EEO office.

11. My official Complaint was then forwarded to the EEOC for review and eventually in the summer of 1999, the BLM attorneys acknowledged the harm done to me and offered a settlement, which I accepted. I then left BLM.

12. In the summer of 1999 I moved to Seattle, and coincidently was hired and accepted a GS-11 Paralegal Specialist position at the EEOC Seattle District Office. Several years into my career at that office I learned that the BLM complaint I had filed in 1995 against Terry Hassett had been assigned to that specific EEOC office in early 1999 for review and settlement processing. I also later learned that within one week of my employment at EEOC, the management had "passed around and read" my old BLM complaint file, called the BLM attorneys in Alaska for additional information, and had been informed that I should be monitored as a potential problem employee.

13. That explained to me why shortly after I began work at EEOC some inexplicable events occurred, which I initially did not understand for a long time. With good job

4

performance evaluations, I was nevertheless summarily reduced in grade. Others more junior and less experienced than I were promoted. I was denied leave because I was deemed as 'critical' to the office functioning, despite the fact that I had been demoted. I was denied training opportunities. I was removed from the retirement system, which cost me thousands of dollars, and I lost a large amount of accrued leave time.

14. Based upon the fact that I was initially hired as GS-11 with EEOC, and with my full benefits, I am certain that it was retaliation by the BLM which caused my harassment and status changes at EEOC, because as I later learned, these actions against me followed a background check by EEOC in Seattle with my previous BLM employers in Alaska. My success in Alaska with a BLM complaint had created a high profile both in Anchorage and Washington D.C., and caused embarrassment for the Anchorage BLM State office.

15. Eventually I became so ill with a condition which doctors determined was directly related to the stress I was under at my job, that I was forced to take a medical leave of absence from EEOC. My disability was denied and I was forced in 2002 to retain an attorney and again to begin litigating for my rights.

16. My complaint remains unresolved. However, during hearings in 2003 over EEOC's refusal to grant my disability, Seattle EEOC attorney Ed Hill made it clear in his testimony that the Anchorage office of the BLM had retaliated against me during my background portion of my hiring at EEOC. Since I had always received 'above average'

or 'superior' performance ratings while at BLM, the only reason that BLM had to retaliate against me, was because I had dared to speak out against them.

Date: Oct 22, 2007

_____
Heather Ann Coats

State of Washington

County of Kitsap

I certify that I know or have satisfactory evidence that Heather A. Coats, is the person who appeared before me, and said person acknowledged that (he/she) signed this instrument and acknowledged it to be (his/her) free and voluntary act for the uses and purposes mentioned in the instrument.

Dated: 10/22/2007

(Signature)

Notary Public (Seal or stamp)
State of Washington
KATI B DIEHL
My Appointment Expires Jul 1, 2010

Notary
Title
My appointment expires 07.01.2010

6