# AFFIDAVIT

My name is Stanley E. Leaphart. I was the Executive Director of the Citizens' Advisory Commission on Federal Areas (CACFA), from February, 1984 until June 30, 1999.

A significant portion of my job involved helping citizens work their way through the complex and changing regulations which the Bureau of Land Management and the National Park Service promulgate to regulate and control the use of federal public lands in Alaska. A primary concern of the CACFA was access to privately owned properties within conservation system units. CACFA worked vigorously over the years to prevent federal land management agencies from cutting off access to both public lands and private lands throughout the state.

Most of my contacts with Mark Wayson concerned access to his property at Diamond Alaska, located inside what is now Denali National park and Preserve. My work with him in this area began shortly after I began work as the Executive Director. Despite the Alaska National Interest Lands Conservation Act (ANILCA) Title XI requirements that the U.S. Department of the Interior, through the National Park Service, 'shall' grant inholders access to their property he still had no access when the commission ceased operation in June, 1999. To my knowledge, he still has none.

In the fall of 1996 Mark Wayson brought to my attention a problem he was having with the BLM. He copied me with correspondence he exchanged with BLM over this matter.

Mr. Wayson had objected in writing on August 26, 1996, to Alaska BLM Director Tom Allen, as to the constitutionality of the implementation of new BLM regulations regarding the use of his federal mining claims. In that letter Mr. Wayson stated his intent to 'retaliate' personally against BLM employees implementing those regulations, based upon his understanding of an attached Wall Street Journal Article, dated July 31, 1996, regarding another mining case, which reported that individual Dept. of the Interior employees could be held personally liable if they did not obey the law. Mr. Wayson's letter also requested the names and addresses of BLM employees.

Mr. Wayson was not the only one objecting to the BLM regulations at the time. In a September 19, 1996 article in the Anchorage Daily News Senator Ted Stevens urged Alaskans to risk arrest in defying "arrogant" federal bureaucrats who were denying them access to federal lands. He also said that anger and tempers were so high in Alaska, that we were near a revolt. Senator Stevens' comments were called a "call to arms" by Assistant Secretary of the Interior, George Frampton. However, Mr. Frampton stated that he thought Senator Stevens' statements were "probably more a figure of rhetoric than a threat".

BLM Deputy Director Sally Wisely responded to Mr. Wayson, threatening Mr. Wayson

*Attachment # 5*

with civil and criminal charges if he did not fill out the form he objected to, stating that his threat to 'retaliate personally' could constitute both federal and criminal offenses, and she refused to give the addresses of BLM employees. Mr. Wayson was unable to resolve this real or feigned misunderstanding that his stated threat to 'retaliate personally' was anything but a legal, civil retaliation, such as that mentioned in the Wall Street Journal article.

In trying to resolve the misunderstanding, I arranged a meeting on December 10, 1996, between Mr. Wayson, and Shelly Jacobsen, and Keith Woodworth of the BLM. This meeting was video-taped. Both BLM employees made it clear that Mr. Wayson represented no threat to them or BLM employees, and that they would convey this to their superiors. They were unable, however, to do anything about Ms. Wisely's threats to Mr. Wayson.

Mr. Wayson again wrote Tom Allen requesting an investigation of Sally Wisely's threats. Mr. Allen responded January 9, 1997 to Mr. Wayson and stated in a letter to him that Mr. Wayson's statements constituted "explicit threats to harm and endanger BLM personnel." Further, he said he would not investigate Mr. Wayson's claims against Sally Wisely.

In a letter of February 5, 1997, part of a series of communications with both Mr. Wayson and Tom Allen, I reminded Mr. Allen that the previous week in Juneau when I had questioned him about his 'explicit threats to harm' language, he had stated that neither he nor his staff felt threatened by Mr. Wayson. Nevertheless, Tom Allen refused to remove or correct the language which is in his January 9, 1997 letter.

One of my concerns which I expressed in writing to Director Allen, was that such language as 'explicit threats to harm and endanger BLM personnel' could elevate the potential for confrontation in any future contacts with BLM personnel. This concern would be heightened if such a fear of Mr. Wayson, which Mr. Allen himself told me did not exist, was spread to state regulators and other government and private personnel. This was the reason I even asked Mr. Wayson to write another letter to Mr. Allen on February 5.

Mr. Wayson wrote the letter to Mr. Allen I requested which I then reviewed and suggested changes and specific language, and Mr. Wayson made all the changes which I suggested. Even this did not get Mr. Allen to change his letter of January 9, 1997.

In late January, 1997, both Mr. Wayson and I requested assistance from Senator Frank Murkowski regarding these false statements in the record by Mr. Allen. In a letter dated February 13, 1997, from Senator Frank Murkowski to Mr. Wayson which was copied to my office, the Senator states that Mr. Allen of BLM was, "purely interested in working with you in a positive professional manner." Mr. Allen never changed nor retracted his letter.

In dealing with the Department of the Interior for seventeen years, I detected a pattern by

its agencies to act above the law. It was also my experience that its agencies work closely together sometimes, sharing both information and facilities. Certainly his future efforts to secure access to his property within Denali Park and Preserve would be seriously hampered if NPS learned that there was an official finding that Mark Wayson had forcibly assaulted a BLM employee.

The statements in this affidavit are made based upon my recollection of events and a review of the relevant correspondence that occurred more than 10 years ago. To the best of my knowledge, these statements regarding my involvement in these events are true and accurate.

_____
Stanley E. Leaphart

On this ____ day of August, 2007 before me, the undersigned, a Notary Public in and for the State of Alaska, personally appeared Stanley E. Leaphart, known to me to be the identical person who executed the foregoing instrument and who acknowledged to me that he signed the same freely and voluntarily, with full knowledge of its contents.

    IN WITNESS THEREOF, I have hereunto set my hand and affixed my official seal the day and year above written.

[NOTARY SEAL]

_____
Notary Public in and for the State of Alaska
My commission expires: 10-22-07