```
 1                   UNITED STATES DISTRICT COURT
 2                    FOR THE DISTRICT OF ALASKA
 3
    MARK N. WAYSON,              )
 4                               )
                                 )
 5                    Plaintiff, )
                                 )
 6  vs.                          )
                                 )
 7  ROBERT SCHNEIDER and the     )
    UNITED STATES OF AMERICA,    )
 8                               )
                    Defendants.  )
 9  _____)
    Case No. F03-0035 CV (JWS)
10
                    DEPOSITION OF CAROL HAMMOND
11                     September 21, 2004

12  APPEARANCES:

13          FOR THE PLAINTIFF:    MR. MARK N. WAYSON
                                  In Propria Persona
14                                2775 Hanson Road
                                    Suite 1
15                                Fairbanks, Alaska 99709
                                  (907)  474-0068
16
            FOR THE DEFENDANT:    MR. DANIEL R. COOPER, JR.
17                                Assistant U. S. Attorney
                                  U. S. Department of Justice
18                                U. S. Attorney's Office
                                  222 West Seventh Avenue, #9
19                                  Room 253
                                  Anchorage, Alaska  99513
20                                (907)  271-5071

21                         *  *  *  *

22

23

24

25
```

LIZ D'AMOUR & ASSOCIATES, INC.
330 Wendell Street, Suite A
Fairbanks, Alaska 99701
(907) 452-3678

*Attachment 7*

1   was going on the site when I asked you to stop work on
2   the site?
3 A   We were constructing a berm.
4 Q   So there was heavy equipment moving across my mining
5   claims?
6   MR. COOPER: Well, I'm going to object to the
7 characterization. You have not established through this
8 witness, or any other witness, for that fact, that those claims
9 were valid state mining claims on the date and time in
10 question.
11   MR. WAYSON: Your objection is noted.
12   MR. COOPER: Can you answer the question,
13 taking into particular account his construction of the phrase
14 "across my mining claims"? Can you answer that question?
15 A   There was heavy equipment moving from the berm site to
16   the area where we were getting gravel. We were using a
17   scraper, and the scraper was coming back and forth with
18   loads of grave. And then there was a D-9, I believe,
19   that Paul Manuel was using to spread the gravel loads
20   out at the berm site. So we had two pieces of heavy
21   equipment moving at the construction site.
22 Q   Were you aware that I had mining claims in the area?
23 A   In the area, yes.
24 Q   So you.....
25 A   That one time -- Shelly had told me that at one time

```
 1  Q      Just to be clear, you testified that you had an
 2         understanding that there were abandoned or.....
 3  A      Yeah, null and void.
 4  Q      Null and void federal mining claims, and I'm asking you
 5         could you have been wrong about that at the time?  I'm
 6         trying to put you in a frame of mind.
 7         MR. COOPER:  Once again, I mean.....
 8  A      I could not have been wrong, because I wasn't the one
 9         who determined whether they were null and void.  I was
10         told by the person who was responsible for checking
11         land status that it was BLM land without any active
12         mining claims.  So I wasn't wrong.  Maybe Shelly was
13         wrong, but I was not wrong.
14  Q      Perhaps I can phrase it a little differently.  If you
15         had a mining claim that you believed was valid, and you
16         came onto this mining claim to discover that a
17         contractor under the protection of the government or at
18         the direction of the government was doing work on that
19         claim, could you become angry?
20  A      Yes.
21  Q      So would that be considered to be reasonable, to be
22         reasonable to be angry?
23  A      Yes.
24  Q      And you testified here today that I didn't make any
25         threats to you; is that correct?
```

| | | |
|---|---|---|
| 1 | A | No direct threats, that's correct. |
| 2 | Q | And you said that you felt that my tone of voice and my |
| 3 | | demeanor, according to your Contract Diary, you found |
| 4 | | those threatening; is that correct? |
| 5 | A | Yes. |
| 6 | Q | Can you describe for us what particular aspects of my |
| 7 | | demeanor was threatening, you felt were threatening? |
| 8 | | MR. COOPER:  Other than what she's already |
| 9 | | testified to? |
| 10 | | MR. WAYSON:  She testified to..... |
| 11 | Q | Am I to understand that pacing back and forth, was this |
| 12 | | threatening or irrational?  I thought that was |
| 13 | | irrational behavior? |
| 14 | | MR. COOPER:  Go ahead and answer the question |
| 15 | | if you can, Ms. Hammond. |
| 16 | A | What it was about your behavior that was -- made me |
| 17 | | feel uncomfortable, threatened, intimidated, was |
| 18 | | everything from your choice of words to how you said |
| 19 | | them, to how you were like -- the way you pulled up, |
| 20 | | slammed on the brakes, and immediately started saying |
| 21 | | that we're trespassing, the -- the whole -- from the |
| 22 | | minute you were on-site was a confrontational feeling. |
| 23 | Q | Is it your testimony that the first thing I told you |
| 24 | | was that you were trespassing? |
| 25 | A | No.  the first thing you said is you asked who I was. |

103

| | | |
|---|---|---|
| 1 | A | It helped -- reading what I wrote helps me remember, |
| 2 | | but I can't remember more than what I wrote. |
| 3 | Q | Now, you've testified that Mr. Wayson's appearance |
| 4 | | there upset you, intimidated you. Were you scared? |
| 5 | | Can I use the word "scared"? |
| 6 | A | Yeah. |
| 7 | Q | Do you still have some of those feelings about |
| 8 | | Mr. Wayson? Does he still in any way frighten you or |
| 9 | | make you apprehensive? Do you feel intimidated? |
| 10 | A | Only in the sense that -- that here it is three years |
| 11 | | later, and we're still talking about this incident. To |
| 12 | | me it's past history, and I don't really -- I really |
| 13 | | don't feel like it should be something that's worth us |
| 14 | | sitting here spending all day talking about at this |
| 15 | | point. And so the fact that we are disturbs me a |
| 16 | | ~~little bit.~~ |
| 17 | Q | Well, when you say it disturbs you, what kind of an |
| 18 | | effect does that have? |
| 19 | A | I guess I feel a little worried. I guess I feel like I |
| 20 | | would not want to meet Mr. Wayson out on the street |
| 21 | | somewhere. I don't want to have anything to do with |
| 22 | | him. |
| 23 | Q | Well, you understand that Mr. Wayson has a complaint, |
| 24 | | and he's proceeding to litigation to resolve that |
| 25 | | complaint, and he has a constitutional right to do so? |

**LIZ D'AMOUR & ASSOCIATES, INC.**
*330 Wendell Street, Suite A*
*Fairbanks, Alaska 99701*
*(907) 452-3678*