TIMOTHY M. BURGESS
United States Attorney

DANIEL R. COOPER, JR.
Assistant U.S. Attorney
Federal Building & U.S. Courthouse
222 West 7th Avenue, #9, Room 253
Anchorage, Alaska 99513-7567
(907) 271-5071
daniel.cooper@usdoj.gov



FILED
MAR 0 7 2005
UNITED STATES DISTRICT COURT
DISTRICT OF ALASKA
By_____ Deputy

COPY

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| MARK N. WAYSON, ) | Case No. F03-0035 CV (JWS) |
| Plaintiff, ) | |
| ) | MOTION FOR SUMMARY |
| v. ) | JUDGMENT |
| ) | (Rule 56, F.R.Civ.P.) |
| UNITED STATES OF AMERICA, ) | |
| Defendant. ) | |

The United States of America and Robert W. Schneider move, pursuant to

Rule 56, F.R.Civ.P., for summary judgment on Count I of the complaint. This

motion is based upon the points and authorities set forth herein and the documents

attached as exhibits.

*Attachment 21*

three statements were that he, Mr. Schneider, needed to provide a place where Ms. Hammond felt safe to work, that he knew of another confrontation between Mr. Wayson and BLM employees, and that at one time, a previous BLM State Director had considered Mr. Wayson a threat. There is no reasonable interpretation that could turn any of those three statements into a false or demeaning statement

### C. Mr. Wayson has not suffered any damages.

Mr. Wayson can point to no damages for the alleged misconduct of Mr. Schneider. The party seeking damages bears the burden of proof of such damages. Alaska Airlines, Inc. v. Sweat, 584 P.2d 544, 549 (Alaska 1978). Since he can not specify or identify (much less quantify) his damages, it follows that Mr. Wayson can not prove them.

Mr. Wayson lost no income from mining operations. The project began in September, 2001, and Mr. Wayson filed his mining plan with the State for his mining operation sin 2002. Thus, he apparently felt free to go upon the

---

reveals its lack of merit when the opinion-holder discloses the factual basis for the idea"; readers are free to accept or reject the author's opinion based on their own independent evaluation of the facts. A statement of opinion of this sort doesn't "imply a false assertion of fact," Milkovich, 497 U.S. at 19, 110 S.Ct. at 2706, and is thus entitled to full constitutional protection." Standing Committee on Discipline of U.S. Dist. Court for Cent. Dist. of California v. Yagman, 55 F.3d 1430, 1439 - 40 (9th Cir. 1995). (Internal citations omitted).

21

*But Schneider would do the same.*

conclusion that he is entitled to use deadly force to protect the intrusion by BLM on his putative mining claims,[21] what matters is Mr. Wayson undertook to inform the BLM that he is willing to use deadly force against those who come on his claims in his sole discretion.

In the context of the above, Mr. Schneider's conduct was reasonable in light of all the facts known to him. But more importantly, when he spoke to Mr. Kennedy, Mr. Schneider disclosed all three reasons why he considered Mr. Wayson a potential threat. As such, Mr. Schneider's statements are not actionable.[22] None of the three reasons was false nor demeaning. In essence, the

---

[21] See, generally, the discussion in Jurco v. State, 825 P.2d 909 (Alaska App. 1992) and the statutes discussed therein. Contrary to Mr. Wayson's assertions, he is not entitled to use deadly force against BLM officers in the performance of their duties on his putative mining claims, even if he believes that what they are doing is wrong. Indeed, to do so could constitute a federal offense. 18 U.S.C. § 111(a). The putative mining claims are not Mr. Wayson's residence, nor does he have an exclusive right to be there. Since he had no valid State mining claims, he could not lawfully exclude any person from that location.

[22] "A statement of opinion based on fully disclosed facts can be punished only if the stated facts are themselves false and demeaning. Lewis, 710 F.2d at 555-56; Restatement (Second) of Torts § 566, cmt. c ("A simple expression of opinion based on disclosed ... nondefamatory facts is not itself sufficient for an action of defamation, no matter how unjustified and unreasonable the opinion may be or how derogatory it is."). The rationale behind this rule is straightforward: When the facts underlying a statement of opinion are disclosed, readers will understand they are getting the author's interpretation of the facts presented; they are therefore unlikely to construe the statement as insinuating the existence of additional, undisclosed facts. ... Moreover, "an opinion which is unfounded

20

B.   Mr. Schneider's statement is not actionable as a common law tort.

Mr. Schneider fully disclosed to Mr. Kennedy the reasons for his concerns about Ms. Hammond safety. (Schneider Depo., p. 29, l.17 - p. 31, l.1). He stated the reasons were threefold: the effect Mr. Wayson's conduct has on Ms. Hammond on September 15, an encounter between Mr. Wayson and another BLM employee, Lon Kelly, in 1999, and correspondence between Mr. Wayson and former BLM state director Tom Allen in which Mr. Allen had refused Mr. Wayson's request to get the names and addresses of BLM employees in Alaska because Mr. Allen considered Mr. Wayson to be a threat to those employees.

That correspondence from Mr. Wayson to Mr. Allen also contained the following language:

> As you would surely do, I intend to defend with any means necessary, up to and including the use of deadly force, the taking of, or intrusion into the property and dwellings included, against anyone. And as you know, my constitution permits me, and I suppose even encourages me, to take such actions against my government when they begin running amok.

(Schneider Depo., Exhibit 8, p. 2, letter dated August 26, 1996 from Mark Wayson to Tom Allen). The language clearly states the intent by Mr. Wayson to use whatever means Mr. Wayson deems appropriate, even deadly force, in his dealings with BLM employees. It doesn't matter that Mr. Wayson is legally wrong in his

19