Mark N. Wayson
C/o Wickwire
2775 Hanson Road
Fairbanks, AK 99709
markonwayson@yahoo.com



RECEIVED

NOV 0 5 2007

CLERK, U.S. DISTRICT COURT
FAIRBANKS, AK

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| MARK N, WAYSON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| Vs. | ) |
| | ) |
| LINDA RUNDELL and the | ) |
| UNITED STATES OF AMERICA | ) |
| | ) |
| Defendants. | ) |
| _____ | )    4:06-Cv 1 (JWS) |

**MEMORANDUM IN SUPPORT OF MOTION SUBMIT VIDEO-TAPES IN
OPPOSITION TO DEFENDANT'S SUMMARY JUDGMENT MOTION**

Plaintiff requests three videotapes (converted to DVD's) be accepted by the court as

part of Plaintiff's Opposition to Defendant's Motion for Summary Judgment.

The first tape is of a meeting 12-10-96, held at Alaska Dept. of Natural Resources in

Fairbanks, at the office of Stan Leaphart, then Executive Director of the Citizen's

Advisory Commission on federal Areas, (CACFA) and attended by Shelly Jacobsen,

Wayson v. Rundell, 4:06 Cv 1 (JWS)
Memo to support video submit 10-31-07

who was the project manager for the BLM 98 Mile Steese Hwy. Project, and Keith Woodworth, who had worked on this project beginning at least as early as 1995.

Ms. Lindquist indicated 10-31-07, that she would object to the court seeing the tapes, and her objection to the 12-10-96 tape should be disregarded by the court because on page 15 of her Motion, Ms. Lindquist has referred to "...many sources which publicly revealed that BLM employees felt that Wayson was threatening. The sources include a 1996 BLM letter,..." and this 12-10-96 tape debunks completely any use of this "1996 BLM letter" as a source of threats against BLMer's, as the meeting videotaped was held to rectify any BLM misunderstandings regarding the letter, and seeing the tape would convince the court that the Defendant in this case is still misrepresenting this protest letter, which is now more than eleven years old, as evidence of threats against BLM employees.

The Defendant's objections to the tape are made because Defendant relies on this letter as the one and only 'source' for BLM's progressively damaging actions against Plaintiff, including being used in this case to back up Rundells finding of a criminal act by Plaintiff.

Up to and including AUSA Cooper's characterization of this letter in his successful Motion for Summary Judgment in the **Wayson v. Schneider** case, that Wayson's intent to use deadly force, plucked our of context from this letter, means that Wayson claims a right to use deadly force upon anyone who even ventures onto his claims, has made this

letter the lynchpin of all of the government's fabrications, and remains as such according
to Ms. Lindquist's Motion for Summary Judgment pleading in this case. The record
reflects that neither Rundell or the government have identified one single non-federal
source among the 'many sources' which Ms. Lindquist claims on p. 15 of her Motion,
"...publicly revealed that BLM employees felt that Wayson was threatening,"


This 12-10-96 meeting was held to resolve the feigned misunderstanding by BLM,
that Plaintiff's protest letter of 8-26-96, which Defendant cites in her Motion for
Summary Judgment, as a factor in Defendant's decision to make the finding that Plaintiff
had forcibly committed a crime against Carol Hammond. The tape is about one hour
long. For the court's information, what took place at this video-taped meeting is
summarized in the attached affidavit from Stan Leaphart.
Attachment # 1. Affidavit of Stan Leaphart, August 2007


The second videotape is submitted to show the court similar damages involved in
Plaintiff's loss of access. This videotape was made 7-9-97, and is of Ranger Lee and
Keith Woodworth of BLM, serving a summons upon miner Don Glassburn, for allegedly
blocking a road across his mining claims, which a group of BLM employees wanted to
use to access other mining claims, in order to study bird calls.


Plaintiff was a defense witness in this case against Mr. Glassburn, and also acted as an
intermediary for the U.S. Attorney in this case, the following winter, to convey a

settlement offer to defendant Don Glassburn, which was refused. (Glassburn was later acquitted.)

The maximum alternative penalty threatened upon Glassburn for not accepting the offer was one year in jail and a fine of $100,000.00, which illustrates the importance and value of Plaintiff's which the law places upon the access to Plaintiff's claims which was destroyed by BLM's project, by using the extent of the penalty which a miner can be penalized for closing a road to BLM bird watchers, as a means to measure what access is worth to Plaintiff as a miner.

Ms; Lindquist's objection is probably because this Glassburn incident, mirrors too closely, aspects of what happened to Plaintiff in 2001, with respect to how BLM acts above the law and outside of accepted procedures. In the 1997 tape, Ranger Lee can be observed actually shoving the summons into Don Glassburn's clothing; an act which would constitute an assault offense in any case, but an offense which the Anchorage U.S. Attorney would only prosecute, should it take place in the reverse, with a citizen serving a summons upon a fed by shoving the item into his or her clothing.

In 2001, it was Wayson who asked BLM to stop their project on Wayson's claims because there was a dispute, and under BLM policy, it could not be settled by BLM since they were one of the operators in the dispute. Wayson made no threats. Wayson agreed to wait and settle it in town. BLM, however, made threats to Plaintiff, and summoned an

armed BLM federal officer to settle an operator's dispute over claim ownership, in BLM's favor when BLM was one of the operator's in the dispute, and it was later determined that BLM was on Wayson's state mining claims..

Ms. Lindquist also will object because it shows how BLM vigorously applies their enforcement policies to keep access open when BLM bird watchers are delayed, in comparison to the fact that no response to this day has come from Plaintiff's complaint's of BLM destroying his mining access in 2001, albeit, Plaintiff anticipates Ms. Lindquist will respond with the tired old line that, 'each case is carefully reviewed, and prosecutor's decisions are not subject to any review, and Mr. Wayson has no standing, etc..'.

The third tape is the 9-15-07 is the short tape of part of the contact which Plaintiff had with Carol Hammond, and which was accepted by the court for review in **Wayson v. Schneider.**

The government's objections are easy to predict regarding this tape since this court has already reviewed the tape,

Defendant is not prejudiced in any way by the court viewing these three tapes. The government has had copies of all three since 2004, which were produced in **Wayson v. Schneider** and Ms. Lindquist was advised of this fact during initial rule 26 discovery in this case.

Wayson v. Rundell, 4:06 Cv 1 (JWS)
Memo to support video submit 10-31-07

Dated: October 31, 2007

_____

Mark N. Wayson, pro se

**CERTIFICATE OF SERVICE**
The undersigned hereby certifies
that on this _5_ day of _NOV_,
2007, a  copy of the foregoing was
served by mail on: AUSA Susan  Lindquist

Office of U.S. Attorney
222 W. 7ᵗʰ Ave., #9, Rm. 253
Anchorage, Alaska 99513

_____
Mark N. Wayson

Wayson v. Rundell, 4:06 Cv 1 (JWS)
Memo to support video submit 10-31-07