NELSON P. COHEN
Acting United States Attorney

SUSAN J. LINDQUIST
Assistant U.S. Attorney
Federal Building & U.S. Courthouse
222 West 7th Avenue, #9, Room 253
Anchorage, Alaska  99513-7567
Phone: (907) 271-5071
Fax: (907) 271-2344
susan.lindquist@usdoj.gov

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| MARK N. WAYSON, | ) Case No.  4:06-cv-1-JWS |
| | ) |
| Plaintiff, | ) **RUNDELL'S REPLY IN** |
| v. | ) **RESPONSE TO THE** |
| | ) **OPPOSITION TO HER MOTION** |
| LINDA RUNDELL | ) **FOR SUMMARY JUDGMENT** |
| | ) |
| Defendant. | ) |

The Defendant, Linda Rundell, in her personal capacity, through counsel replies to Mark Wayson's ("Wayson's") response in opposition to her motion for summary judgment.  Wayson failed to address every argument in the Motion and therefore his claim that Rundell violated constitutional right to travel should be dismissed.

I.  RUNDELL DID NOT VIOLATE WAYSON'S RIGHT TO USE HIS PROPERTY.

Wayson only claims that he has not used his property because he has been litigating in Germany. Dkt. 73 at 24. As a matter of law, Rundell's memorandum did not impede his ability to use his land.

II. RUNDELL DID NOT VIOLATE WAYSON'S FREEDOM OF SPEECH.

A first amendment violation claim can be made on the basis of both chilling speech and retaliation. To prevail on a First Amendment clam that action chilled speech, Wayson must provide evidence showing that Rundell "deterred or chilled [Wayson's] political speech and such deterrence was a substantial or motivating factor in [Rundell's] conduct." See *Sloman v. Tadlock,* 21 F.3d 1462, 1469 (9th Cir.1994). Wayson did not rebut his own deposition testimony that he could not list instances when Rundell chilled his speech. He did not rebut Rundell's statement that she did not know him when she signed the memorandum and she did not intend for it to affect his speech. She did not even send the memorandum to him, indicating that she did not intend for Wayson to see it. Under the circumstances, Wayson cannot show that deterrence of Wayson's speech was a motivating factor for Rundell's memorandum.

Wayson is really arguing that Rundell's memorandum violated his first amendment rights because it was written to retaliate against him for speaking against BLM regulations in 1996. Dkt 73 at 3, 4, 13, 21 & 29. Wayson urges the court to view Rundell's memorandum in light of the 1996 interactions between Wayson and Wisely, Allen, Schneider and AUSA Cooper. Dkt 73 at 4.

For a first amendment retaliation claim against an ordinary citizen, the plaintiff citizen must show that "(1) they were engaged in constitutionally protected activity, (2) the defendants' actions caused them to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity, and (3) the defendants' adverse actions were substantially motivated against the plaintiffs' exercise of constitutionally protected conduct." *Rayford v. Omura*, 400 F. Supp.2d 1223, 1230 (Hawaii 2005).

Wayson identifies his letters to BLM Director Allen in 1996 as the constitutionally protected speech which triggered retaliation. Dkt 73 at 2-3. He argues that Rundell's 2002 memorandum was just part of the series of actions against him by BLM which were intended to "retaliate against or punish Plaintiff for speaking out in protest against unconstitutional regulations." Dkt 73 at 3. However, there is no evidence that Rundell ever knew about the 1996 letter, let alone retaliated against Wayson six years later.

Rundell does not dispute that Wayson's 1996 letter was protected speech. Wayson, however, fails to prove the other two prongs: that Rundell's conduct caused him to suffer an injury that would chill a person of ordinary firmness from continuing to engage in speaking against government regulations; and that Rundell's adverse act of writing the memorandum was substantially motivated against Wayson's exercise of constitutionally protected conduct.

As to the second prong, Wayson has identified an injury that he finds substantial - which is to have a law enforcement record that he forcibly committed a crime against a BLM employee. Dkt. 73 at 11, 14, 25. In addition he alleges that by keeping the memorandum in private law enforcement files, Rundell interfered with Wayson's ability to petition his government because people who knew about the memorandum would not wish to work with a criminal. Dkt 73 at 21.

Wayson's injury is based on his exaggerated interpretation of the memorandum. Wayson's conduct was a factor in deciding whether Robert Schneider incorrectly asked a ranger to go to the project site. The memorandum stated that it is a crime to intimidate a federal employee. It then stated a fact, that Ms. Hammond was intimidated by Wayson. This is a true fact as verified by her diaries and deposition. Dkt 69 at Ex. H. The memorandum stopped short of a

conclusion, such as therefore, Wayson committed a crime. Instead the memorandum shifted its focus to Robert Schneider and concluded that he acted reasonably by sending a trooper to relieve Hammond's intimidation, whether it was real or perceived. The memorandum stopped short of accusing Wayson of committing a crime. Moreover, Rundell did nothing to charge Wayson with a crime. Wayson was not injured by an internal memorandum in which he is not charged with a crime. The reason the memorandum was stored in law enforcement and Office of Inspector General ("OIG") files is that Wayson made his request for a criminal investigation about Schneider's actions to OIG. Thus, law enforcement made the request for an investigation and it got the memorandum in response. Most importantly, Wayson should not be harmed by the filed memorandum because it is not filed under Wayson's name; it is filed under Schneider's name. Dkt. 69 at Exs. K at 1; L at 2. Thus, there was no law enforcement file under Wayson's name which contains the memorandum. There is no evidence that government people did not want to work with him on his issues because they thought he was a criminal.

      Wayson also cannot show that Rundell was motivated to retaliated against Wayson in 2002 for Wayson's 1996 Allen letter. Rundell was an associate state director from December 1999 until December of 2002. Dkt 69, Ex. J at 2. Rundell

was not involved in the history between BLM and Wayson which he described. Dkt 73 at 2-11. She was not involved in the 1996 events regarding Director Allen or the Wayson-Hammond encounter until two years after the event. She did not even know Wayson when she signed the memorandum. Dkt 69, Ex. N. The memorandum was not prompted by any current event in Alaska between Wayson and BLM. The memorandum was prompted by Wayson's inquiry to OIG, which was conveyed to Rundell through the Chief Law Enforcement Officer. Absent Wayson's request, there would have been no memorandum. Rundell simply had no experiences with Wayson to trigger any adverse action.

III.     RUNDELL DID NOT HIDE HER WITNESSES.

Wayson accuses government counsel of presenting declarations from witnesses Aasmus Evans and Stuart, which she does not intend to produce at trial. Dkt 73 at 23-24. These witnesses are on the witness list filed at Dkt. 63 and may be produced at trial.

IV.     RUNDELL HAS THE RIGHT TO QUALIFIED IMMUNITY.

Rundell, as acting state director, delegated an investigation to Pamela Stuart, a law enforcement agent in her district. Stuart wrote a memoranda and Rundell signed it. Hammond's diary alone provides ample evidence of the encounter between Wayson and Hammond and ample reason for BLM to ask for

security at the remote site. Rundell had the right and responsibility to sign an internal memoranda about an action within her district. She could also conclude that Wayson's conduct intimidated Hammond and conclude that under those circumstances it was proper to send a trooper.

Wayson faults Rundell for not addressing the email he had attached to his inquiry. Dkt 73 at 26. He did not attach it to his opposition. Nor does it matter, as Wayson does not have a constitutional right to have a thorough, rigorous investigation. Wayson already stated that he has no right to have the government investigate anything at his request. Dkt 32 at 2. If Stuart interpreted his inquiry to address the Hammond-Wayson encounter and did not interpret the inquiry as addressing the email, there is no constitutional violation. Moreover, the fact that the email was not addressed in the memorandum could not have injured him, as Rundell made no comment.

Wayson also faults Rundell for not doing the investigation according to policy. Dkt 73 at 27. Again, it is irrelevant whether the investigation was bad, mediocre, or good. Wayson's constitutional rights were not violated by the manner in which Rundell delegated the investigation to Stuart or the manner in which Stuart conducted the investigation.

Rundell did not violate Wayson's constitutional rights. But in the event that

the court finds any violation, Rundell has a right to qualified immunity because all she did was respond to an internal inquiry. She exercised her discretion to delegate the investigation to Stuart, a local law enforcement officer, and after that was done, Rundell signed the memorandum. Moreover, Hammond's diary supports Rundell's assessment of the Hammond-Wayson encounter.

## CONCLUSION

Wayson does not have a constitutional right to be free of defamation, unless it is associated with a tangible benefit, like federal employment. He lacks standing to accuse Rundell of committing a crime and to claim a Constitutional right to an investigation. He did not oppose the allegation that the memorandum prevented him from traveling. The Rundell memorandum neither chilled his speech nor retaliated against him for speech he made six years before the memorandum issued. Wayson did not allege a single incident when the memorandum prevented him from speaking or from using his property. He failed to present any evidence that Rundell retaliated against him for his exercise of his free speech in his 1996 letter to Allen. The court should grant Rundell summary judgment. There are no genuine issues of material fact.

In the alternative, Rundell is entitled to qualified immunity. As the Acting State Director, she was in charge of law enforcement for the BLM. It was not

apparently lawless for her to respond to the National Law Enforcement Officer's request for an investigation. She had not only the right, but the duty to determine whether her management employee reacted correctly to an unpleasant encounter between a BLM employee and Wayson. Rundell claimed that Wayson intimidated federal officer and that intimidating an officer is a violation of 18 U.S.C. 111. Rundell stopped short of accusing Wayson of a crime, and she took no steps to charge him. As a director, she had discretion to act independently in her assigned areas of authority, which included managing employees and law enforcement on BLM property. She did not knowingly violate a constitutional right when she expressed her opinion about Wayson's interaction with her employee who was working on a spoil erosion project. She did not retaliate against him for speech that occurred six years prior to her memorandum by a person she never met. She is entitled to qualified immunity.

Respectfully submitted this 19th day of November, 2007.

        NELSON P. COHEN
        United States Attorney

        s/ Susan J. Lindquist
        222 West 7th Ave., #9, Rm. 253
        Anchorage, AK 99513-7567
        Phone: (907) 271-3378
        Fax: (907) 271-2344
        E-mail: susan.lindquist@usdoj.gov
        AK #9008053

**CERTIFICATE OF SERVICE**

I hereby certify that on November 19, 2007,
a copy of the foregoing RUNDELL'S **REPLY IN RESPONSE**
**TO THE OPPOSITION TO HER MOTION FOR SUMMARY JUDGMENT**
was served by email on 11-19-2007 and by U.S. mail to:

Mark N. Wayson
c/o Wickwire
2775 Hanson Road
Fairbanks, AK 99709

by regular U. S. mail. On 11-20-2007

s/ Susan J. Lindquist