Mark N. Wayson
C/o Wickwire
2775 Hanson Road
Fairbanks, AK 99709
markonwayson@yahoo.com

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

RECEIVED
NOV 26 2007
CLERK, U.S. DISTRICT COURT
ANCHORAGE, A.K.

| | |
|---|---|
| MARK N, WAYSON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| Vs. | ) |
| | ) |
| LINDA RUNDELL and the | ) |
| UNITED STATES OF AMERICA | ) |
| | ) |
| Defendants. | ) |
| | ) 4:06-Cv 1 (JWS) |

**REPLY TO OPPOSITION TO MOTION TO COMPEL**

Ms. Lindquist complains that Plaintiff did not meet the requirement of Fed. R. Civ. P. 37 and did not confer with her or notify her of the intent to file the Motion to Compel.

Plaintiff does not intend to burden the court unnecessarily, but believed that this required effort had been met in Plaintiff's Motion to Compel submitted to the

Wayson v. Rundell, 4:06 Cv 1 (JWS)
Reply to Opp to Mot to compel 11-26-07
1

court 4-27-07, because that motion requested that the court compel Rundell to produce some of the same materials requested in the 10-31-07 Motion to Compel.

Plaintiff filed the 10-31-07 Motion to Compel upon learning through Defendant's Motion for Summary Judgment that Ms. Lindquist had not produced the 2-17-07 Pamela Stuart Declaration which she had when she answered in "Wayson's 3rd Request for Production," saying,

"Ms. Rundell does not have any documents responsive to this request."
Attachment # 1   3-26-07 Rundell's Response to Wayson's 3rd Request For Production

It is Ms. Lindquist who has caused the court the extra involvement by not obeying the rules of Discovery in her failure to produce the Declaration from Pamela Stuart, dated 2-17-07.
Attachment #2, 2-27-07  Pamela Stuart Declaration

Had Ms. Lindquist followed the rules of Discovery herself and produced this Pamela Stuart Declaration, Plaintiff would have deposed Robert Schneider, and deposed Ranger Lee and Linda Rundell more extensively regarding this Declaration, as well as possibly other witnesses.

Ms Lindquist is playing a very dishonest game, and violating both the intent and the function of Discovery with avoiding Discovery by claiming that

documents requested are, "not in Ms. Rundell's possession."   As a state Director, Rundell has access to virtually any record at BLM.  Therefore, is Ms. Lindquist instructing Ms. Rundell not to obtain materials which are requested so that she can then state the documents are not in Rundell's possession?   Ms. Rundell had and used the full powers and resources of the State Directors position when she committed the violation against Plaintiff.  She should be required to use the same powers to obtain the records requested and not be allowed to hide behind the claim that they are in her attorney's possession, or the U.S. Attorney's possession,  or not in Rundell's 'personal' possession, in order not to produce documents requested.

Ms. Lindquist claims that she filed a final witness list.  This is not appear to be correct.

The court's scheduling and planning order states,
5) On or before August 3, 2007, each party shall serve and file a final revised witness list which unless otherwise specifically stated, must include experts as well as lay witnesses.  Only those witnesses so disclosed will be permitted to testify at trial.

Plaintiff has not been served by either regular mail or by e-mail with Rundell's final witness list.  Exhibit D of Rundell's Opposition is merely another copy of her Rule 26 witness list, which has not been re-served upon Plaintiff since February.   Plaintiff

Wayson v. Rundell, 4:06 Cv 1 (JWS)
Reply to Opp to Mot to compel 11-26-07

3

presumed when not served, that Rundell had decided not to call any witnesses, and Plaintiff was therefore left with no opportunity to depose Rundell witnesses.

Ms Lindquist attempts to mislead the court in her opposition regarding the Touhy Request. She writes on page 2, "Although he sent the request to Rundell, the request was forwarded to the proper BLM official in Alaska."

This is not correct. Plaintiff sent the Touhy Request to the proper official and Lindquist knows that. She appears to be suggesting an error by Plaintiff as cause for the continuing delay in BLM responding to the Touhy Request, and giving their permission, to depose Stuart, well after the close of Discovery. (Plaintiff has not received Ms. Lindquist's Opposition by mail, and is answering this Opposition on November 25, from the e-mailed version, and is 350 miles from Fairbanks, and must fly out of Anchorage to Germany 11-26-07 re: a hearing 11-30 in Gummersbach relating to Plaintiff's access to his child. Therefore Plaintiff does not have access to most of his records which are stored in Fairbanks.)

Nevertheless, attached is a copy of an e-mail exchange in which Lindquist acknowledges that Plaintiff filed the Touhy Request properly on 9-13-07 more than two months ago. The Alaska Director was Faxed a copy on 9-13-07 or 9-14-07, and copies of that Fax, as well as a copy of the FAX to the New Mexico State Director, can be made available to the court upon Plaintiff' return from Germany if more proof is necessary that

2. Are we to believe that copies of these letters and/or the original never made it to the official keeper of the records, Greg Assmus? Greg Assmus, who has provided a disclosure (Defendant's exhibit C of Opposition) of what is in the file, does not provide those letters in his disclosure.

3. Are we to believe that copies of the Stuart letters never made it to the Office of the Inspector General, or should we conjecture that the letters obviously are in the files there as they would be expected to be, coming from the investigating officer if in fact Stuart was the investigating officer? And/or is this the reason that the false Declaration was obtained from Sandra Evans? (Exhibit L of Defendant's Summary Judgment.) Is the reason that Sandra Evans violated the FOIA laws that she wanted to keep the Stuart letters from Plaintiff?

4. Are we also to believe AUSA Cooper's Declaration (Exhibit A of Defendant's Opposition to Compel) that while he recalls having correspondence from Pamela Stuart, he can not find it in the file? Cooper appears to be trying to mislead us regarding this 'failure' with his statement that the "normal practice" is to return the physical evidence in the case to the agency. He goes on to say that this 'appears' to have been done in this case, but that he cannot find a specific transmittal letter to Special Agent Stuart. But copies of Pamela Stuart's letters would not be physical evidence. Letters are documentary evidence. So why would he look for a 'letter of transmittal to SAIC Stuart?' Ms. Lindquist is caught on tape in (Plaintiff believes) the Ranger Lee deposition commenting upon the staggering size of the **Wayson v. Schneider** file. So copies of documents from agencies in that case have NOT been returned to the state and federal

Plaintiff filed the Touhy Request .

Attachment # 3   9-14-07 – 9-17-07  Wayson-Lindquist E-mail exchange

The Touhy response from BLM, , (exhibit B of Defendant's Opposition to Motion to Compel) is dated 11-21-07, the same date as Ms. Lindquist's Opposition to the Motion to Compel.

The stated intent of Plaintiff's Touhy Request for Pamela Stuart was to obtain the two missing letters from Stuart which the "Acting State Alaska Director Dugan" specifically acknowledges in Exhibit B, but then Dugan carefully avoids revealing anything about where they might exist, or if BLM will make them available. Is Ms. Dugan awaiting her instructions from the U.S. attorney as to how to answer this one?

Ms. Lindquist then appears to be asking us to believe more than is credible, and which raises some questions which themselves are revealing.

1. Lindquist claims that BLM asked the U.S. Attorney' office for a copy of their own records. This would suggest that when the letters were sent to AUSA Cooper in **Wayson v. Schneider**, the original was sent and no copy was kept, although there is not any logical, legal or administrative duty to send the original. This raises the question; did AUSA Cooper insist upon getting the original Stuart letters from BLM? And if so, why?

agencies, and it is doubtful that they ever are, and it brings up the question of why would AUSA Cooper send only those letters back to the BLM if he did?.

Plaintiff believes that AUSA Cooper has hidden, destroyed, or transferred the letters from Pamela Stuart to another party, because those letters implicate someone in the Anchorage U.S. Attorney's office in the Obstruction of Justice by Linda Rundell and/ or others in that same crime.

AUSA Cooper could have had a very strong motive to conceal any involvement by the U.S. Attorney. Within a few weeks of **Wayson v. Schneider** being filed and which Cooper was assigned to litigate, AUSA Daniel R. Cooper was arrested for beating up his wife in front of her children. Further, this beating of the mother was reportedly caused, according to Cooper's own defense attorney, by Cooper's anger or frustration which Cooper developed in whatever interaction Cooper had with the child who has mental health and behavioral problems.
Attachment # 4  4-14-06 Underlying Facts Statement by Alaska Court of Appeals

So how did a man who beats a mother in front of, and because of, a child with mental health problems, keep his job involving public trust at the U.S. Attorney's office?

U.S. Attorney Burgess had to have been aware of this beating by Cooper.

Wayson v. Rundell, 4:06 Cv 1 (JWS)
Reply to Opp to Mot to compel 11-26-07

On November 28, 2003, a master issued a long-term domestic violence protective order to prevent AUSA Cooper from assaulting, stalking, or harassing Cynthia Hora or her two children.

In February of 2004, AUSA Cooper pleaded guilty to the charges of domestic violence in front of minor children. .

On April 28, 2004, AUSA Cooper was arrested again, this time for violating the protective order issued November 28, 2003, put in place to protect the mother.

As of September 29, 2006, this protective order was still in effect, and Cynthia Hora has apparently felt compelled to move out of state for her own safety. Attachment #5  9-29-06, 'Facts and Proceedings' Alaska Supreme Court Opinion,

Was there a quid pro quo agreement between Burgess and Cooper which allowed Cooper to keep his job?   Whether it was Burgess himself, or someone else in the office who collaborated with Rundell in making her finding against Plaintiff, it would be a mess which had to be cleaned up, and there is growing indication that this occurred. Was the favor to Cooper of allowing him to continue working, returned by Cooper who did whatever was necessary to clean up the collaboration with Rundell mess ?

Could  such an agreement d explain why AUSA Mark Rosenbaum, accepted August 15, 2003, a complaint by Plaintiff of a criminal act committed by Robert Schneider, and agreed to have it investigated, but then never did ?

Wayson v. Rundell, 4:06 Cv 1 (JWS)
Reply to Opp to Mot to compel 11-26-07

8

A DUI conviction of Mark Rosenbaum, in 2004, coincided and reportedly was the reason for Rosenbaum's extended leave ending in "retirement" from the U.S. Attorney's office. DUI is far less serious than what Cooper was convicted of, and again raises the question of how he could have possibly remained in the position he has without some kind of deal between he and Burgess. If the U.S. Attorney continues to defend the absolute nonsense that rangers were sent to 98 mile Steese Hwy. in 2001, to protect Carol Hammond from Wayson, how many armed guards were/are necessary to protect female employees working in the U.S. Attorney office in case Cooper flips out and attacks some woman working there?

Was an agreement the reason for Burgess' refusal to ever respond to repeated Plaintiff's requests for, and the offer of evidence relevant to a criminal investigation of Schneider and Rundell?

Was it also responsible for Burgess's failure to act properly to what was identified as a conflict of interest in his office, namely that Rosenbaum had accepted a criminal complaint for investigation of Schneider from Wayson in August of 2002, and in approximately early November of 2003, Burgess certified Schneider's conduct and removed the case into federal court in order to provide a government civil defense of Schneider against Wayson?

Wayson v. Rundell, 4:06 Cv 1 (JWS)
Reply to Opp to Mot to compel 11-26-07

Such an agreement could explain why all traces of the certification of Schneider by Burgess disappeared from the U.S. Attorney's office, and could explain the wholesale misconduct committed by Burgess's civil chief, S. Lane Tucker, during the Burgess deposition in **Wayson v. Schneider**, and her 'ordering' her boss to leave the deposition, and Burgess meekly complying with such an improper instruction from his subordinate.

Cooper is an experienced prosecutor. Did he risk contempt of court in his motion for Summary Judgment in the Schneider case by trying to influence the court with the false claim that Plaintiff is a madman who presents a continuing danger to all who set foot on his mining claims, without doing so over a safety net of assurance that Burgess would never bring sanctions against him for anything which he did in the Schneider case?

Is Burgess's certification of Rundell after he was a judge connected to protecting Rundell who in turn protected Schneider with a cover-up?

Is U.S. Attorney Cohen's decision to continue to hold "under advisement" his decision to investigate/prosecute Judge Burgess related to the involvement/actions of others in the U.S. Attorney's office in the Schneider or Rundell cases?

Plaintiff wrote U.S. Attorney again 11-18-07, three days prior to receiving this opposition, in a continuing attempt to find out what 'under advisement' means, and why

the Stuart letters are being concealed by the U.S. Attorney's office. Another non-response is anticipated.

Attachment # 6   11-18-07 Wayson-Cohen letter with attachments

On page 3 of her opposition, Ms. Lindquist writes that BLM is searching their records, and it is anticipated that BLM will respond when the local search is completed. Plaintiff reminds the court that this is the same song Cooper was singing over three years ago regarding these letters. Any offer to allow a deposition of Stuart is meaningless until these letters are produced.

Regarding producing Stuart for deposition in Fairbanks Alaska, if the court finds that the United States cannot be compelled to produce this witness, Plaintiff requests that Ms. Lindquist be required to do so out of her own pocket as Ms. Rundell's private attorney. Lindquist withheld the Declaration from 2-27-07, and continues to waffle around about where the letters are. Lindquist is the reason for the delays, and ordering her to produce Stuart in Fairbanks where the Plaintiff can monitor communications between she and Lindquist is an appropriate sanction to apply.

Plaintiff continues his request for the court to order copies of communications between the U.S. Attorney's office and Ms. Rundell on the date of the Rundell deposition, which was 9-11-07. Ms. Lindquist's explanation does not provide a logical

explanation for why Ms. Rundell provided three separate accounts of what prompted her recollection that Stuart was the investigating officer in the Schneider case.

Comparing Ms. Rundell's sworn deposition of 9-27-04, with her sworn deposition of 9-11-07, and her sworn Declaration of 10-15-07, provide more than enough evidence of perjury and/or Obstruction of Justice if the U.S. Attorney chose to investigate or prosecute her for these crimes. Prosecutorial discretion and prosecutorial misconduct in both the Schneider and Rundell cases, have become indistinguishable. Therefore Ms. Lindquist's assertion that nothing was transmitted during Ms. Rundell's 9-11-07 deposition is not sufficient.

Whether she has had to sign this document or not, the U.S. Attorney's office in November of 2006, instituted a new compliance form which refers to AUSA's being bound by rules, laws and privileges, including executive privilege, when disclosing information. Plaintiff does not know whether the permission is required to disclose certain information to the courts is required as well as to parties, or whether the Stuart letters are in this restricted information category because of executive privilege. Attachment #7, Form OARM-9 Nov 2006

Ms. Lindquist refers to 'Wayson's conjecture' that Rundell was being coached during her deposition. Whether called conjecture or common sense, the fact that Ms.

Rundell had to be reminded by her attorney that it was Stuart who had conducted the investigation, and Ms. Lindquist was able to make this reminder after she had obtained the Declaration from Stuart and/or reviewed the two letters from Stuart before AUSA Cooper could no long find them, is itself significant. Telling a client a fact, is not the same as telling her something to refresh her memory, particularly when her memory three years previous involved the BLM National Law enforcement Office doing the investigation, a 'fact' she referred to or emphasized seven different times. On the heels of her previous two explanations in her 9-11-07 deposition of what caused Rundell to recall it was Stuart who did the investigation, it is simply not plausible without some coaching that under the very short testimony in response to Ms. Lindquist's questioning, Rundell suddenly arrived at the recollection that it was Lindquist who told her that Stuart had done the investigation in the Schneider case. Under these circumstances it is appropriate to compel the U.S. Attorney to produce the communications requested for 9-11-07.

It is also common sense to speculate that Ms. Lindquist may be withholding information from Plaintiff under the new emphasis of the Government Attorney Ethical Obligations form, attached. Plaintiff can only speculate what those privileges might be, or whether U.S. Attorney's are now also bound by this new rule, to withhold information from the courts as well.

Dated: November 26, 2007

_____

Mark N. Wayson, pro se

**CERTIFICATE OF SERVICE**
The undersigned hereby certifies that on this _26_ day of _Nov_, 2007, a copy of the foregoing was delivered to AUSA Susan Lindquist's office.

Office of U.S. Attorney
222 W. 7th Ave., #9, Rm. 253
Anchorage, Alaska 99513

_____
Mark N. Wayson

Wayson v. Rundell, 4:06 Cv 1 (JWS)
Reply to Opp to Mot to compel 11-26-07

14