Mark N. Wayson
C/o Wickwire
2775 Hanson Road
Fairbanks, AK 99709
markonwayson@yahoo.com

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| MARK N, WAYSON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| Vs. | ) |
| | ) |
| LINDA RUNDELL and the | ) |
| UNITED STATES OF AMERICA | ) |
| | ) |
| Defendants. | ) |
| | ) 4:06-Cv 1 (JWS) |

*CLERK, U.S. DISTRICT COURT FAIRBANKS, AK — RECEIVED JAN 7 2008*

## REPLY TO RUNDELL'S OPPOSITION TO MOTION TO STRIKE DEFENDANT'S WITNESS LIST

Plaintiff urges the court to not allow Defendant to present witnesses at trial because Defendant's submission of her Opposition to Plaintiff's Motion to Strike Defendant's Witness List has exceeded the Time Limits for filing and serving her Opposition under (e), Time Limits, of Local Rule 7.1, Motion Practice.

Plaintiff mailed first class a copy of the Motion to Strike Defendant's Witness List on 12-10-07, at 3:31 p.m. at the same time the filing to the court was mailed.

Attachment # 1.   12-10-07 Post Office Receipt

The Court received the filing of the Motion to Strike Defendant's Witness List on 12-12-07.

Attachment #2,   1st page of 12-10-07 Motion to Strike, with 12-12-07 Court stamp

Mailed to the same street address, it can be presumed that Defendant received service the same day, 12-12-07, as the Motion to Strike arrived at District court, but by allowing for the three day mailing provision to extend the fifteen day limit to eighteen days, Defendant's time to respond to the Motion began tolling 12-13-07.

Fifteen days from 12-13-07 is 12-28-07, and Defendant did not prepare, file, or serve the Opposition to the Motion until 1-2-08, which is five days after it was due, nor did she request any extension, and Plaintiff was available during this time for Ms. Lindquist to request Plaintiff's non-opposition to an extension of time.

The important link connecting Ms. Stuart, Ms. Evans, and Mr. Assmus as witnesses, remains the documents produced or reviewed by Pamela Stuart during her investigation of Robert Schneider, and these documents which can not now be located at Alaska BLM Headquarters, Office of the Dept.of Interior Inspector General, BLM Law Enforcement

Wayson v. Rundell, 4:06 Cv 1 (JWS)
Reply to Opp. to Strike 01-05-08

Headquarters, or the US. Attorney's office would nevertheless have flowed to Greg Assmus of BLM Law Enforcement Headquarters and Sandra Evans, in the Department of the Interior Inspector General's Office, and Plaintiff is prejudiced without these documents in deposing Stuart, Evans or Assmus, particularly when the disappearance of the Stuart documents involves Spoliation of Evidence by the U.S. Attorney's Office.

It is doubtful that Ms. Lindquist's failure to serve Plaintiff with her final witness list was 'inadvertent' as she claims, because it is in the government's interest for as much time to pass as possible, in order to increase the likelihood of transfers, retirements and promotions of the government's witnesses in this case, and thus to make them disappear or be somehow unavailable like Ms. Stuart has become, and therefore the failure to serve Plaintiff with the Final Witness List should be viewed by the court as simply another ploy in Rundells' defense involving the series of numerous criminal acts and administrative misconduct by, and/or overseen by, the Anchorage U.S. Attorney's office, which have been committed officially in carrying out the civil defense of criminal conduct by Robert Schneider and Linda Rundell, and other government employees acting with them, in their task Obstruct Justice in order to shut up Mark Wayson, who has dared to object to their violations of the constitution.

Ms. Lindquist's suggestion that Plaintiff,... "could have used administrative remedies available to him to dispute the response." (from Ms. Evans') ignores first the fact that while misleading in some respects, the Declaration (Exhibit L, Defendant's Motion

Summary Judgment) from Ms. Evans acknowledges that Plaintiff began 04-16-03, pursuing the so-called administrative remedies Ms. Lindquist refers to in her Opposition to Striking the Witness List, and the administrative remedies are therefore really only 'effective' if they are intended to go on forever, with never any results ensuing from the administrative remedies.

Plaintiff urges the court to acknowledge that the nearly five year passage of time, the unanswered appeal which the Evans Declaration does not acknowledge in her Declaration, coupled with the efforts by Plaintiff which Ms. Evans does acknowledge in her Declaration, more than establishes that Plaintiff had exhausted all administrative remedies to obtain the relevant documents.

The Declaration Ms. Evans prepared (Exhibit L in Defendant's Summary Motion) is well within the parameters of a false report under federal criminal statutes, since Ms. Evans was the recipient of Plaintiff's FOIA Appeal letter, which was acknowledged on 6-3-04 (Attachment #13, Plaintiff's opposition to Summary Motion) and her Declaration clearly misleads the court by not mentioning the Appeal, and it is unlikely that Ms. Evans would have sworn to the Declaration without reassurance that she would not be prosecuted for doing so.

Plaintiff is prejudiced by allowing Defendant to have witnesses like Evans who were not noticed to Plaintiff, because Ms. Lindquist, notwithstanding her bogus claims that she

is acting as Rundells "private attorney," can and apparently has, as an AUSA, relay assurances of immunity from criminal prosecution to Ms. Evans, in exchange for perjury and or a false Declaration solicited on Ms. Rundell's behalf.   .

In paragraph (2) of her Declaration, Ms. Evans 'swears',

"My official duties include the review of audit and investigation reports for public disclosure, under the purview of the FOIA or Privacy Act; preparing responses to the requester and ensuring that each response is accurate and complete; and coordinating with other bureaus and offices within the Department that could have information responsive to the request."

which carefully avoids any mention of the administrative Appeal filed by Plaintiff (Attachment 13 of Plaintiff's Opposition to Summary Motion) or of Ms. Evans violation of the FOIA, and these two omissions in her Declaration qualify her Declaration as a criminally falsified document, as well as illustrating the invalidity of Evans' claim of efforts toward "ensuring that each response is accurate and complete,...."

It is unlikely that Ms. Evans would risk prosecution without assurances from Ms. Lindquist, who could have easily told Ms. Evans,

"Hey, don't worry. This judge himself can't do anything to you himself in our system. The Dept. of Justice would have to bring charges. We won't. My boss will cover for you. Happens all the time. He's stonewalling now on a criminal complaint against a different judge who helped us out on this case, by keeping Wayson's complaint against this other judge, 'under advisement,.' And our entire defense of Rundell is based upon a false report prepared in 1996, which involved participation in the deception by no less than six other interior officials.   Welcome aboard! As long as you are an Interior Dept. fed lying for another high-ranking fed, you have nothing to worry about and the Dept. of Justice will make sure you aren't prosecuted."

Wayson v. Rundell, 4:06 Cv 1 (JWS)
Reply to Opp. to Strike 01-05-08

The above projected conversation is not intended to be insulting, but is a very realistic possibility of the version of reassurance what Ms. Lindquist must have provided before Ms. Evans would have agreed to prepare her false Declaration and is consistent with other U.S. Attorney misconduct in both the Schneider and Rundell cases.

The court should consider Plaintiff's requested correct Declarations, sent to Ms. Evans, (Attachment 14 of Opposition to Summary Judgment) by FAX, as well as to her boss, 10-29-07, as demonstrating not only a continuing but obviously futile 'administrative' effort which Ms. Lindquist still claims exists, and more importantly the non-response from both Ms. Evans and the Inspector General reflects their actual commitment to the accuracy which they claim concerns them.

The mission of the Dept. of Justice goes beyond just defending feds, and the U.S. Attorney in Anchorage is designated as the highest Law Enforcement officer in the state of Alaska., and Plaintiff is even more prejudiced when not served in a timely manner with a list of witnesses, particularly when some or all have been given stated or implied immunity from prosecution in return for false or incomplete testimony to be used to defend Ms. Rundell.

Ms. Lindquist has an obligation to the court, upon receiving the proof provided in Plaintiff's Opposition, to notify the court that the Declaration from Ms. Evans which Lindquist submitted as exhibit L in her Motion for Summary Judgment is false, and

Lindquist's non-response for over two months, should be viewed by the court as evidence of Lindquist's participation in soliciting the false Declaration from Evans.  .

Upon being deposed in the Schneider case, U.S. Attorney Burgess repeatedly responded that he did not remember seeing or receiving various documents which would establish the conflict of interest the office had in that case, and therefore, in addition to Faxing Ms. Evans, and Inspector General Devaney with the information of the deception in the Evans Declaration, Plaintiff also obtained a confirmation from Ms. Del Vecchio that the Inspector General had received the letters and Plaintiff's requested correct Declaration from Ms. Evans, faxed to them 10-29-07.
Attachment # 3  11-01-07 Del Vecchio confirmation of Wayson-Evans-Devaney FAX

Regarding Ms. Stuart whose documents link her with the Evans and Assmus  Ms. Stuart herself remains hidden and Ms. Lindquist knows that she is hidden, because even the witness list which Ms. Lindquist finally e-mailed Plaintiff 11-26-07, still lists Stuart's address as P.O. Box 6271, Phoenix Arizona 65005. (actual zip code is 85005) , but this hasn't been an address where she could be contacted at least since August 2007.

Ms. Lindquist also must know where Ms. Stuart is hidden, because now that the Declaration Lindquist obtained from Stuart last February has been made effectively useless by conflicting sworn testimony from both BLM's Ranger Lee and BLM's Regional Director Schneider, she is going to have to dictate another Declaration for Ms.

Stuart to swear to and sign, in the event Plaintiff is somehow able to locate Stuart and get her served prior to trial.

On 12-20-07, less than one month after this e-mail from Ms. Lindquist finally providing her Final Witness List, the Capital Station post Office in Phoenix Arizona, hosting Ms. Stuart post office box 6271, returned two letters to Plaintiff which had been sent to Stuart by Plaintiff, 8-16-07, and 9-14-07.

Both letters are stamped with "Return to Sender/Box closed/Unable to Forward/Return to Sender"

Attachment 4,   8-16-07 & 9-14-07  Wayson letters to Pamela Stuart.

Plaintiff had also sent Ms. Stuart a certified letter with restricted delivery on 8-28-07, also attempting to make contact with her in order to arrange a deposition, but this letter was returned "unclaimed" with attempts to deliver apparently having been made on "9-12-07, 9-17, and 9-27," and presumably, a notice was left in Ms. Stuart's post office box, prior to 9-12-07 as soon as the letter arrived in Phoenix after the mailing 8-28-07.

Attachment #5,  08-28-07 'unclaimed' certified  Wayson-Stuart letter

Following weeklong attempts to ascertain when Ms. Stuart's box had been closed, Plaintiff received an e-mail on 01-03-08 that Ms. Stuart's post office box had been closed "several months ago."

Attachment #6,  01-03-08 Maria Almada – Wayson e-mail

However, Ms. Stuart's post office box was not closed when Plaintiff mailed the letter of 8-16-07, the certified letter of 8-28-07, and the letter of 9-14-07, because the certified restricted delivery letter was returned "unclaimed" rather than as a result of post office box #6231 being closed, and therefore Ms. Stuart was either ignoring the letters from 'Mark Wayson' on her own, or pursuant to instructions from Defendant or her counsel, or she simply did not ever go to pick up her mail until the box was closed, but in either case, the chronology of mailings to Ms. Stuart and returns, shows that Ms. Lindquist did not provide a viable address for Ms. Stuart at least since August of 2007, and the box was apparently officially closed when Lindquist provided her final Witness List on 11-26-07.

The Post office rules however, permit a "...government agency in the performance of its duties." to obtain all the personal information which Ms. Stuart provided on her post office box application, including her physical address.

Attachment #7, post office Box application form

Therefore Ms. Lindquist, who has repeatedly flipped-flopped back and forth between being a U.S. Attorney and Ms. Rundell's 'private attorney,' can/has as a US Attorney, easily obtain the contact information for Stuart on file at the post office in Phoenix.

Ms. Lindquist's offers to 'allow' Plaintiff to depose Stuart, Evans, and/or Ranger Assmus, are all equally meaningless without the relevant Stuart documents.

Not providing documents is a pattern of behavior by the U.S. Attorney in this case, just as she was careful NOT to provide Plaintiff with Ranger Lee's patrol Log, or the 331 pages of personal information which Ranger Lee had collected on the Plaintiff in violation of the 1974 Privacy Act, until AFTER Plaintiff had deposed Ranger Lee, and Plaintiff submits further that the only reason these Lee documents were produced at all was because AUSA Steven Cooper, who acts consistently with the reputation he has as an honest U.S. Attorney, was sitting with Ranger Lee in Fairbanks during the deposition, and AUSA Steve Cooper was informed by Ranger Lee, after an initial denial under oath, that he did have the files, and AUSA Steve Cooper will not be party to the wholesale range of criminal activity which the U.S. Attorney has improperly ignored, participated in, and/or facilitated in defending the Schneider and Rundell cases. .

The U.S. Attorney's office has a vested interest particularly in Pamela Stuart's documents remaining hidden, since they could expose Timothy Burgess, then U.S. Attorney, or someone he supervised, as participating in the Obstruction of Justice committed by Linda Rundell, since Ms. Rundell was shrewd enough to mention during her August 2004 deposition in **Wayson v. Schneider** that the U.S. Attorney and/or Joe Darnell, the BLM solicitor, were involved in her decision to make the finding that Plaintiff had forcibly committed a crime against Carol Hammond.

Ms. Lindquist cannot distance herself from the Spoliation of evidence, specifically the disappearance of the Stuart documents, which in this and/or the Schneider case were

destroyed or concealed by her colleague, AUSA Daniel R. Cooper, and Cooper knew of the relevance and importance of the documents he concealed, to Plaintiff's claims against Ms. Rundell, and the court should not overlook their importance to the Plaintiff at time of any deposition of Stuart Evans or Assmus.

Ms. Lindquist had been made aware of the importance of the Stuart documents in a written request 03-15-06 from Plaintiff describing the disappearance of records in the Schneider case, and requesting that Lindquist be sure that records were not destroyed. Plaintiff wrote,

"All police records disappeared and Mr. Burgess had no recollection of anything."

and Plaintiff later wrote in this same letter,

"Therefore I want to submit this request now before I have to travel 3-22-06, and ask you to be sure that no records are destroyed under any records control policy you might have in the U.S. Attorney's office."

Attachment #8, 03-15-06 Wayson-Lindquist letter

Ms. Lindquist indicated that she herself had accessed this still viable Schneider file on at least one occasion during the Rundell case because when responding to Plaintiff having provided Schneider Bates numbers for documents Lindquist was looking for, Lindquist replied,

"I'll retrieve them."

Attachment #9, 08-29-07 Wayson-Lindquist e-mail exchange.

Ms. Lindquist is well aware that the Schneider files in the U.S. Attorney's office are fairly extensive, because when Plaintiff again directed Ms. Lindquist to the Schneider file in response to one of her objections during the Lee deposition, Lindquist replied,

"Mister,---come on, that file is a million miles long."

which clearly indicates that the file was still in existence in the U.S. Attorney's office on 9-11-07.

Attachment # 10, 9-11-07 Lee Deposition, page 74,, lines 19-25, page 75, lines 1-15

Ms. Lindquist had another warnings that nothing should be destroyed in the Schneider file in the 01-25-06 FAX to U.S. Attorney Timothy Burgess requesting that he,

"Please save all notes and records of any investigation and/or review which led to this Rundell certification. I intend to ask for a review of this Rundell certification with the court."

which was sent to Burgess before Plaintiff learned that Timothy Burgess had been confirmed as a federal judge 12-21-05, and this Burgess FAX was therefore enclosed with the 03-15-06 letter to Lindquist because Timothy Burgess was already a federal judge when he made the certification, and therefore could claim somehow not to be responsible for communications made to him at the US. Attorney's office.

Attachment #11, 01-25-06 Wayson-Burgess FAX

There was a letter from Plaintiff naming Rundell as a suspect and providing still another notice not to destroy any police records sent to U.S. Attorney Timothy Burgess on 07-12-05, before he had even nominated by the President of the United States to be a

federal judge, and while unanswered, the letter went to the Anchorage U.S. Attorney and outlines concerns about missing police reports, which Plaintiff later learned, were generated by SAIC Pamela Stuart, when Rundell changed her sworn testimony from her deposition 09-27-04, when she repeatedly made it clear that Pamela Stuart was NOT involved in the Schneider investigation.

Attachment 12, 7-12-05 Wayson-U.S. Attorney Burgess letter.

How then, in light of all these indications of the importance of the Stuart documents to the Rundell case, and just one month after Lindquist herself described the Schneider file as a "million miles long" did Lindquist petition or accept without question the Declaration from her colleague, AUSA Daniel Cooper, who she know was twice arrested and once convicted, during the very period he was defending the Schneider case, if Linquist was not herself participating in the Spoliation of this evidence?

Attachment # 13   10-11-07 AUSA Daniel Cooper Declaration

Why didn't Lindquist immediately advise U.S. Attorney Nathan Cohen that their office was involved in Spoliation of Evidence,..........or did she?

Even a village idiot would have realized that something was wrong about this 'million mile long' Schneider file, missing only the Stuart documents, and presumably would have contacted the U.S. Attorney with this revelation.

Wayson v. Rundell, 4:06 Cv 1 (JWS)
Reply to Opp. to Strike 01-05-08

And certainly Ms. Lindquist, if not an active participant in the Spoliation of the evidence, would question and report the simultaneous unavailability of the Stuart documents, not only from the U.S. Attorney's files, Inspector General's and BLM Law Enforcement offices, but even from the Anchorage BLM office where Ms. Stuart had been stationed when she did her investigation of Schneider.

Plaintiff requests the court to closely examine this Daniel Cooper Declaration (attachment # 13 here) wherein he swears to have examined the "remaining physical records" of the same file which was a 'million miles long' just a month earlier in Lindquist's estimation, and this raises the question exactly when did Cooper destroy or conceal the Stuart documents, and did he do it on his own, or under someone else's supervision?

Are we to believe that Cooper at some point began what he describes as,

"Our normal practice is to return evidence in the case after the litigation is completed. That appears to have been done with the physical evidence in this case, although I do not find a specific transmittal letter to Special Agent Stuart.",......." ?

So he is trying to imply that Xerox copies are 'physical' evidence, and are we to believe, as his Declaration suggests, that Cooper went to the file, pulled out the Xeroxed copies of Stuart's letters, memo, and/or documents, and wrote to Ms. Stuart that he was returning the Xerox copies, but that now even that letter of transmittal has disappeared?

And we to believe, that Cooper then stopped what he describes as "our normal practice" and left all other Xeroxes in the 'million miles long' Schneider file which Lindquist described on 9-11-07?

Is the disappearance of the Stuart documents from the files of the Inspector general and BLM Law enforcement Headquarters connected to Cooper also?

Did AUSA Daniel Cooper do this on his own, or was the Spoliation of the Stuart evidence, the 'favor' he 'exchanged' with his superior(s) in return for someone letting him keep his job after his conviction in 2004 for such a serious crime?

Plaintiff urges the court to adhere to the Planning and Scheduling order issued, and not permit any of the government's witnesses to testify at trial since Plaintiff was never received notice when required, and only long after the close of discovery, which prejudiced the Plaintiff not only while taking the Lee and Rundell depositions, but also prejudiced Plaintiff's Opposition to Defendant's Motion for Summary Judgment.

Failing this, the court should strike Defendant's witness List because Defendant's Opposition was not filed in a timely manner.

In the alternative should the court rule that Defendant will be allowed to call witnesses to trial, Plaintiff requests that the government bear all expenses associated with the depositions of Pamela Stuart, Sandra Evans, and Greg Assmus, that Plaintiff be provided

with all of the Stuart documents as well as a complete copy of all notes and documents, recorded or written, relating to or produced during the Inspector General's investigation of Robert Schneider, or during the BLM law Enforcement investigation of Robert Schneider which led to Linda Rundell's finding of criminal activity by Plaintiff, and that the U.S. Attorney have the responsibility to locate these documents under whatever name or number they are filed under in each agency, and that Plaintiff have possession of the documents at least ten days before the depositions of Stuart, Evans and Assmus, and that the depositions be held in Fairbanks Alaska, with the responsibility for any and all expenses to do so, being born by the U.S. Attorney's office.

.Dated: January 5, 2008

_____
Mark N. Wayson, pro se

CERTIFICATE OF SERVICE
The undersigned hereby certifies
that on this 7 day of JAN ,
2008, a copy of the foregoing was
mailed to AUSA Susan Lindquist's
office
Office of U.S. Attorney
222 W. 7th Ave., #9, Rm. 253
Anchorage, Alaska 99513

_____
Mark N. Wayson

Wayson v. Rundell, 4:06 Cv 1 (JWS)
Reply to Opp. to Strike 01-05-08

16