Mark N. Wayson
C/o Wickwire
2775 Hanson Road
Fairbanks, AK 99709
markonwayson@yahoo.com

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| MARK N, WAYSON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| Vs. | ) |
| | ) |
| LINDA RUNDELL and the | ) |
| UNITED STATES OF AMERICA | ) |
| | ) |
| Defendants. | ) |
| | ) 4:06-Cv 1 (JWS) |

## **MEMORANDUM IN SUPPORT OF MOTION TO IMPOSE SANCTIONS**

The spoliation of the evidence, and specifically the Pamela Stuart correspondence by AUSA Cooper which has been in the possession of the Anchorage U.S. Attorney, since 2003 or 2004 when obtained in their original form from BLM, but which have now vanished, is the basis for the Plaintiff's Motion for Sanctions under the accepted maxim of law which holds that when dealing with the destruction of evidence the greatest disadvantage is to be presumed against the destroyer.

Wayson v. Rundell, 4:06 Cv 1 (JWS)
Memo for Mot to impose sanctions 3-6-08

To summarize, according to AUSA Cooper's Declaration and comments to Plaintiff, Pamela Stuart prepared at least two letters in connection with her investigation of Plaintiff's 4-05-02 complaint against BLM's Robert Schneider, and a memorandum for Ms. Rundell, who at the time was Schneider's supervisor, and these letters or documents were sent in their original form as part of a Stuart file to AUSA Cooper of the Anchorage U.S. Attorney's office when he was defending in the Schneider case.

AUSA Cooper acknowledged the existence of these letters, acknowledged they were in his control as an assistant U.S. Attorney, but withheld or destroyed them in the Schneider case in order to claim there was only a "scintilla of evidence" of constitutional rights violations against Plaintiff by Schneider in his Motion for Summary Judgment, and the spoliation of this evidence by the U.S. Attorney was crucial to the success by AUSA Cooper in convincing this court to dismiss the Schneider case.

This same evidence is no less crucial in the Rundell case, despite Ms. Lindquist's ever changing self-determined status between her role as Rundell's private attorney when she tries to distance Rundell from any document Rundell is not holding in her hands, and her role as an assistant U.S. Attorney who knows where Ms. Stuart is and who continues to try to distance her client from actions which her client took to silence Plaintiff and create a false criminal record which has and will continue to disadvantage the Plaintiff in the use of his property and in trying to exercise his constitutional rights.

There has been a pattern of altering, withholding, and destroying evidence in both this and the Schneider case which has been carried out by the U.S. Attorney, BLM law enforcement, and other BLM officials, and this misconduct which can only be remedied in part by the requested sanctions.

The U.S. Attorney has repeatedly produced the 9-19-02 Memorandum in both the Schneider case and this Rundell case but the Stuart letters, referred to as the "correspondence" from her which AUSA Cooper admitted was included in the original Stuart file he received from BLM, has now disappeared once it reached the U.S. Attorney's office.

Attachment #1.    10-11-07 AUSA Cooper Declaration

Defendant has not produced in either the Schneider or Rundell case any evidence to support a finding that Plaintiff forcibly committed a crime against Carol Hammond, and therefore it is even more compelling that the court rule that the Stuart letters which have disappeared, contained written evidence of violations of Plaintiff's constitutional rights.

Plaintiff followed up AUSA Lindquist's 'offer' to produce Pamela Stuart for deposition with a Touhy Request to BLM for the missing letters/document written by Stuart, despite previous unsuccessful FOIA and civil court process attempts to obtain the Stuart letters/document which have now spanned nearly five years, and finally after more than four months delay in the BLM response, Plaintiff followed up with a letter 2-23-08

Wayson v. Rundell, 4:06 Cv 1 (JWS)
Memo for Mot to impose sanctions 3-6-08

to BLM Solicitor Joseph Darnell, outlining for him where the documents might be, and announcing that Plaintiff would seek sanctions if they were not produced

Attachment #2:  2-23-08 Wayson-Lindquist & Wayson-Darnell Letters re: sanctions

BLM's Solicitor Joseph Darnell responded that BLM does not have the Stuart file in any records keeping facility and that BLM would not respond further to attempts by Plaintiff to obtain the records, but Darnell's letter appears to confirm AUSA Cooper's story that the originals were turned over to AUSA Cooper in the Schneider case.

Attachment # 3:  2-29-08  Darnell-Wayson Letter

Lindquist's 2-29-08 e-mail response to Plaintiff's notice of intent to seek sanctions was to claim that neither she nor her client have the responsibility to produce the documents, and she goes on to state that BLM had obtained the Cooper Declaration, although the Cooper Declaration was first produced in Lindquist's Motion for Summary Judgment, and BLM is not a defendant in the Rundell case, causing doubt upon Ms. Lindquist's version, first as to why BLM would have requested such a Declaration from Cooper for their own records which are required to be filed in a number of places, and second, why Cooper would have produced such a Declaration for BLM?.

Attachment #4:  2-29-08  Lindquist-Wayson e-mail

The disappearance of the Stuart file(s) from the U.S. Attorney's office does not appear accidental, and one reason is that AUSA Cooper apparently had not just one, but he had two 'original' Stuart files in his possession which disappeared under his care.

During the Schneider litigation, AUSA Cooper produced two different originals of the 9-19-02 memorandum by Rundell.

One has Bates numbers 'BLM000016 and BLM00017 with Ms. Rundell's signature block, ."/s/ **Linda S.C. Rundell  Acting"** at the foot of the memorandum, but it is unsigned.
Attachment # 5:  9-19-02 Rundell memo with Bates numbers BLM0000000603 & 604

The second is a signed copy without the signature block, and without Bates numbers, which was produced by AUSA Cooper in response to Plaintiff's Production Request.
Attachment # 6: 9-19-02 Rundell memo without Bates numbers

These are not copies of the same original, for while exact in content, they appear to be copies of different original documents because the stamped date on each, has been placed in a different location below the correspondence codes in the upper right hand corner of the first page of each copy.

Wayson v. Rundell; 4:06 Cv 1 (JWS)
Memo for Mot to impose sanctions  3-6-08

Not only have both originals disappeared, but all the places where they might be found under the BLM and DOJ filing policies and requirements no longer have copies of either, according to BLM, and this could hardly be an accident.

It remains unknown exactly when the Stuart file(s) went missing, but before the files went missing, Ms. Lindquist nevertheless managed to obtain a copy of the 9-19-02 memorandum from the Stuart file(s) which she produced with new Bates numbers to Plaintiff in her Rule 26 Production for the Rundell case.
Attachment # 7:  9-19-02 Rundell memo with Bates numbers BLM000016 & 17

Another strong indication that this clean sweep by the U.S. Attorney of all copies of the Stuart letters/documents was not accidental, is to be found in Ms. Lindquist's own comments during a 9-11-07 deposition, describing the Schneider file as still being "a million miles long," and one must question therefore how the Schmidt case file remains so large and yet the Stuart file(s) are gone from that Schmidt case file which was still being maintained in the U.S. Attorney office, as of 9-11-07.    .

Ms. Lindquist's has already acknowledged by e-mail  her access to the Schneider files as noted on page 11, paragraph 3, of Plaintiff's **REPLY TO RUNDELL'S OPPOSITION TO MOTION TO STRIKE DEFENDANT'S WITNESS LIST** pleading where Lindquist's wrote that she would  check there for documents she needed

from the Schneider case file after requesting the Schneider Bates numbers from Plaintiff.

Lindquist's flip-flop on again, off again, claim again that she is a private attorney is merely another act in the charade she has tried to maintain of being a private attorney for Rundell when it is convenient to do so, and of being an assistant U.S. attorney able to resource the files in her office and all other government resources when it becomes convenient for her to do that.

Ms. Lindquist's claim that Defendant Rundell cannot access the files since she is being sued personally is also not true since Rundell as a Defendant is required to make a good faith effort, and her job description as a state director provides her access to virtually any file at BLM which is relevant to her job, and the Stuart file is relevant, and in her 9-11-07 deposition Rundell stated that she has made no attempt to obtain investigative reports from either Stuart or the National BLM law enforcement Office, and had no duty to do so.

Attachment #8:  9-11-07 Rundell deposition page 24, lines 14-20

Instead of urging her client, Defendant Rundell, to make a good faith effort to produce copies of documents Rundell could obtain with a phone call, (if they have not all been destroyed by now) Ms. Lindquist defends Rundell's refusal to do so on the basis that the documents requested are not in Rundell's personal possession, a tactic which makes a mockery of the civil judicial system itself, and particularly Discovery if such duplicity is

to be permitted, since every defendant in every case could claim that no matter what was being sought, the document was not in his or her 'personal possession.'

There is no logical reason for the Stuart documents disappearing from so many places, and the court is therefore requested to establish that the missing Stuart letters contain evidence that describe or illustrate the intent of BLM was to violate Plaintiff's constitutional rights.

Defendant should not be permitted to distance herself from the sanctions requested here in the Rundell case simply because it was AUSA Cooper who last reportedly had the Stuart file in the Schneider case, because Stuart has now become the designated investigator of the complaint against Robert Schneider in this Rundell case.

Rundell knew 9-27-04 during her deposition for the Schneider case that her SAIC Pamela Stuart had been the investigating officer for the Schneider case, but Rundell lied by repeatedly claiming it was someone else from the National BLM Office when asked specifically whether Stuart had any part in the investigation.

At the time of the 9-27-04 deposition Stuart was working alongside Rundell in New Mexico in the same configuration the two had when both were assigned to Alaska, and it defies any logic to suggest that Rundell did not confer with AUSA Cooper who was

defending the case, and with SAIC Stuart before the 9-27-04 deposition to go over details
of the Schneider investigation, and particularly the documents Rundell described in her 9-
11-07 deposition for the Rundell case, as having been provided to her before her 9-27-
04, deposition in the Schneider case.

But we know now that Cooper had the Stuart letters and he must have realized by the
9-27-04 deposition in the Schneider case, that the investigation had been done by Stuart,
and since he could not afford to produce the Stuart letters to Plaintiff which would reveal
a BLM agenda of violating plaintiff's rights in order to shut him up, Cooper therefore
encouraged or allowed Rundell to lie in her 9-27-04 deposition and to say that someone
in the national Office had done the investigation in order to deflect attention away from
the damaging Stuart letters, and to send the Plaintiff off on a long fruitless search into the
BLM bureaucracy to try to determine who had done the Schneider investigation, when
Cooper knew all along that it was Stuart who had done it.

With the Schneider case dismissed, and with both Stuart and her letters/documents
missing, it made sense to both Defendant Rundell and the U.S. Attorney in the Rundell
case to designate Stuart as the investigating officer of Plaintiff's complaint against
Schneider.

Pamela Stuart is actually now the perfect designee as investigator since her letters/documents have disappeared, and she herself has retired and has disappeared somewhere in Southwest America so she cannot be deposed.

Stuart may remain missing for trial, and Lindquist, according to her Final witness List, is going to rely upon Greg Assmus to testify that he "processed this investigation and closed this case."

Attachment #9:  Rundell's Final Witness List

SAIC Greg Assmus has not yet responded to a FAX sent 10-28-07, at 1144 hrs. requesting clarification of his 5-09-07 Declaration for Ms. Lindquist, which is incorrect, incomplete and misleading (Copy of clarifications requested from Assmus is Attachment #12 of Plaintiff's **OPPOSITION TO MOTION FOR SUMMARY JUDGMENT AND QUALIFIED IMMUNITY.** ) but in over four months Assmus, a law enforcement officer, has not responded to Plaintiff, but Plaintiff and this court may be waiting in vain for any Assmus response if his BLM law enforcement duties in this and the Schneider case are/were limited to waiting poised to declare whatever Ms. Lindquist or Mr. Cooper instruct him to declare.

The clearly erroneous 5-16-07 Declaration by Dept of the Interior, Office of Inspector General Information Disclosure Specialist Sandra Evans, (Exhibit L, of Defendant's

Wayson v. Rundell, 4:06 Cv 1 (JWS)
Memo for Mot to impose sanctions  3-6-08

10

Motion for Summary Judgment.) relates indirectly to Plaintiff's Request for Sanctions of establishment and preclusion, because not only should the D.O.I. O.I.G have retained and disclosed the missing Stuart documents, but also because on 10-29-07, at 1229 hrs. Plaintiff faxed and sent a letter and revised Declaration to Ms. Evans, pointing out the errors and how her 5-16-07 Declaration misleads the court, and requesting a response from her. (This was Attachment # 13 in the same Opposition Motion cited above.)

Evans, a BLM public official like Assmus, has not responded, and she too may be limited to waiting for further instructions from Lindquist as to what she should say.

During the 9-11-07 deposition in the Rundell case, Plaintiff made it abundantly clear several times that Rundell was being questioned about her previous testimony in the 9-27-04 deposition and she showed no misunderstanding of this, and her answers were consistent with the line of questioning about statements she had made at the 9-27-04 deposition.

Nevertheless during this questioning on 9-11-07, by Plaintiff, Rundell apparently forgot her previous false testimony given 9-27-04 regarding who had done the Schneider investigation, and she testified 9-11-07 that she had been reminded that it was actually Stuart who had done the investigation, when given a series of documents BEFORE the 9-27-04 deposition.

Wayson v. Rundell, 4:06 Cv 1 (JWS)
Memo for Mot to impose sanctions 3-6-08

What Rundell said in the 9-11-07 deposition was that what had made her recall that it was Stuart who had done the investigation, reveals that she knew she was testifying falsely at the 9-27-04 deposition in the Schneider case, when she said otherwise.

It was Rundell in the 9-11-07 deposition who first cited the documents provided her before the 9-27-04 deposition, as the event which had triggered her recollection that Stuart had done the Schneider investigation, and she even elaborates to cite several of the documents which were provided to her before the 9-27-04 deposition.

Q. "Well, when did you suddenly remember that she was the one who had done the inquiry?

A. "When I was presented years later with these materials."

Q. "Which materials are those?  The ones that accompanied the deposition?"

A. " Yes, the materials --- it's the memo that was sent to me and the report statements from Ms. Hammond and Mister –Officer Lee."

Attachment #8 9-11-07 Rundell Deposition p22, lines 20-25 & page 23, lines 1-2

Ms Rundell went on to clarify that it was receiving the documents, that triggered her recollection of Stuart being the investigating officer in the Schneider case, forgetting  on 9-11-07 that she had denied Stuart's involvement in that deposition on 9-27-04.

Q. "I'm not asking you that Ms. Rundell.  You just testified that when you got the materials with the deposition, it suddenly reminded you that she was the investigating officer.  Is that correct?

A. "At some point, when this suit had been filed by you , I received a copy from whoever was handling the case.

Q. "Was that Daniel Cooper?"

A. "It may have been. It may have been someone prior to him, that included the memo. And in trying to recall these events, I became aware that yes, Pam Stewart was the one who was asked to review this."

Attachment #8: 9-11-07 Rundell Deposition page 23, lines 11-21

Ms. Lindquist, in Anchorage in the U.S. Attorney's office, then realized or was informed that Rundell, in New Mexico, had testified effectively that she had perjured herself in the deposition of 9-27-04.

Ms. Lindquist's efforts to rehabilitate Rundell as a witness went far beyond an effort to refresh her memory, and crossed the line into suborning perjury from Rundell.

There was no attempt to refresh Rundell's memory as to how she had testified earlier in the deposition regarding when or which of the documents had triggered Rundell's memory, and instead Lindquist simply presented an entirely new scenario as to what had refreshed her memory, makint it after the 9-27-04 deposition and Rundell agreed to it.

Lindquist's entire cross examination of her client is recorded in the few lines below, from a 60 page deposition.

### CROSS EXAMINATION

BY MS. LINDQUIST:

Q. "You were asked about finding - - finding about who did the investigation that resulted in the September memorandum which you signed. And at one point you found out that Pam Stewart did that investigation. Is that correct?

A. "Yes."

Q. "And how did you find that out?

A " I'm not sure if it was verbally or through mail, but I believe that at some point after the deposition, that you notified me that the agent who had conducted the inquiry was Ms. Stewart.

Q. "Yeah. And this information was given after the current lawsuit filed against you, correct? And this was after the case against Robert Schneider brought by Mr. Wayson had been dismissed.

A. "I believe so, yes."

Q. "I just want to clarify that you did not personally draft the memorandum that you signed ?"

A. "That's correct."
        MS. LINDQUIST: No further questions.

Attachment # 8: 9-11-07 Rundell Deposition,  page 59, lines 13-25 & page 60, lines 1-9 .
.

   This sudden brand new recollection of what triggered the recollection of Stuart, which

Rundell agreed to, could never have taken place without some communication between

Lindquist or someone in her office in Anchorage to Rundell in New Mexico, and Plaintiff

with the court reporter in Fairbanks would never have been aware of such a

communication.


   Rundell suddenly coming up with a completely new recollection is not consistent in

any way with her previous testimony that her memory was prodded when she got

documents before the 9-27-04.

But Rundell's sudden change in memory is consistent with Ms. Lindquist, or someone familiar with the 9-27-04 Rundell deposition, sitting alongside Ms. Lindquist assisting her during the 9-11-07 Rundell deposition, realizing that their client had gone completely off script, and the time taken up by Plaintiff's questioning between pages 22- is consistent with the time required by someone in the Anchorage U.S. Attorney's Office to compose and maybe write out the brand new version, and communicate it to someone in the New Mexico BLM office, so Rundell could be prepared to acknowledge it when Lindquist read it to her at pages 59-60.

It is tactics such as this which are the basis for Plaintiff's request for sanctions precluding the U.S. Attorney from presenting evidence to defend against the court establishing that the missing Stuart letters are evidence that BLM violated Plaintiff's rights, because Plaintiff must anticipate that someone will be assigned from the BLM or the U.S. Attorney's office to fabricate or re-construct some letter(s) by Stuart which will be represented as having been located on some coffee table in some office, but which won't be the actual letters sought.

There is a pattern of deception and misconduct which has flowed continuously from BLM and the U.S. Attorney's offices since Plaintiff filed the Schneider case in October 2003, and Plaintiff reminds the court again of the memo from BLM Ranger Lee

describing how he had altered a document so that Schneider's counsel won't have access
to it, making it therefore inaccessible to Plaintiff.

Attachment # 10 (date?) Ranger Lee – Robert Schneider handwritten note

Plaintiff stresses again the amazement experienced when, while deposing Ms. Punches
for this case, regarding her falsifying the memo and letter for the State Director, neither
Ms. Lindquist nor her BLM colleague Darnell, even raised an eyebrow at the admission
by Punches (Garis) that she had prepared a false record, and while that particular
falsification did not occur on Rundell's watch as BLM's Alaska State Director, Ms.
Lindquist's provides some of the best evidence in her Motion for summary Judgment of
the adverse effects upon Plaintiff that these false BLM records can have, when they are
re-cycled over and over.

On page 8, of **LINDA RUNDELL'S MOTION FOR SUMMARY JUDGMENT
AND FOR QUALIFIED IMMUNITY** Lindquist writes,

"But another possible source of the idea that Wayson is threatening is his own 1996 letter
to BLM director Tom Allen in which he requested the names and addresses of BLM
employees so that he could retaliate personally against them."

It is presumably unnecessary to again plod through an account here of the
unbelievably long process which Plaintiff underwent to establish that Plaintiff did not
threaten any BLM employees in 1996, or any other time, because this court resolved this
issue in the Schneider case.

AUSA Susan Lindquist and BLM solicitor Darnell sat through the Evvie Punches (Garis) deposition and never even batted an eye when Punches (Garis) acknowledged falsifying the letter which contained the false accusation that Wayson is "threatening" which Lindquist cited later in her Motion for summary Judgment.

Attachment # 11: 9-17-96 Evvie Punches memo

AUSA Lindquist, as a DOJ official, is apparently unconcerned about criminal activity of government officials, committed to protect other government officials, or violate the rights of a citizen.

Therefore, even though Lindquist knew it was falsified, she repeated the falsified claim from 13 years previous of Wayson being 'threatening,' to support her client's falsified document of 9-19-02, that Wayson had forcibly committed a crime against Carol Hammond.

Plaintiff would not be in court against Rundell today if the Stuart letters revealing evidence of constitutional violations had been available to the court at the time the court had to rule upon Cooper's Motion for Summary Judgment to dismiss the case against Schneider and the United /States, which was already calendared for trial.

Wayson v. Rundell, 4:06 Cv 1 (JWS)
Memo for Mot to impose sanctions 3-6-08

Had a trial not been cancelled by the dismissal of the case against Schneider, because of AUSA Cooper's Spoliation of Evidence in the Schneider case, it would not have been necessary to open a new case against Rundell.

Therefore, Plaintiff requests additional sanctions from the court requiring the Susan Lindquist of the U.S. Attorney to pay all of Plaintiff's costs from both the Schneider and Rundell cases.

March 6, 2008

Mark N. Wayson, pro se

**CERTIFICATE OF SERVICE**
The undersigned hereby certifies
that on this _6_ day of _MARCH_,
2008, a copy of the foregoing was
served by mail on: AUSA Susan Lindquist

Office of U.S. Attorney
222 W. 7th Ave., #9, Rm. 253
Anchorage, Alaska 99513

Mark N. Wayson

Wayson v. Rundell, 4:06 Cv 1 (JWS)
Memo for Mot to impose sanctions 3-6-08