Mark N. Wayson
C/o Wickwire
2775 Hanson Road
Fairbanks, AK 99709
markonwayson@yahoo.com

RECEIVED
CLERK, U.S. DISTRICT COURT
FAIRBANKS, AK
APR 1 8 2008

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| MARK N, WAYSON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| Vs. | ) |
| | ) |
| LINDA RUNDELL and the | ) |
| UNITED STATES OF AMERICA | ) |
| | ) |
| Defendants. | ) |
| ———————————————— | )    4:06-Cv 1 (JWS) |

## RESPONSE TO RUNDELL'S OPPOSITION TO THE MOTION TO IMPOSE

## SANCTIONS

In response to Defendant's Opposition to sanctions, Plaintiff first requests that the

court not declare that Plaintiff's request for sanctions is moot because of the Court's

03-24-08  Denial of Plaintiff's Motion to Compel Discovery at docket 71, regarding

discovery of the Stuart correspondence.

Wayson v. Rundell, 4:06 Cv 1 (JWS)
Response to Opp. to Sanctions 4-17-08

Plaintiff has previously failed to take into consideration the number of cases which might be open before this court, and has relied upon generally referring to previous attachments and exhibits, without learning of the importance of, and subsequently using the docket numbering system, when referring to previously submitted documents.

This error was procedural in the manner for which the Motion presented, rather than substantive as to whether Plaintiff has the right to the documents, and should not affect the use of the Stuart correspondence as it pertains to Plaintiff's Request Sanctions against Defendant and the U.S. Attorney at docket # 92.

The Stuart documents referred to in the Motion for Sanctions, are critical to establishing that Rundell's intent was to silence Plaintiff, and these documents, by SAIC Stuart, the police officer Rundell at some point claims did the investigation and drafted the 09-19-02 memorandum which Rundell signed, would go, if they could be located, toward showing that Plaintiff's constitutional rights were violated by Rundell's 09-19-02 memorandum.

In order to get around the impact upon those documents which the court's order of 03-24-08 at docket # 95 might have, Plaintiff wishes to again point out that despite Plaintiff's apparent failure to provide a formal certification of the efforts made to obtain the Stuart documents, both the defendant and her counsel had control of those Stuart documents, and that numerous good faith efforts have been made by Plaintiff to obtain them from Rundell and her counsel.

Wayson v. Rundell, 4:06 Cv 1 (JWS)
Response to Opp. to Sanctions 4-17-08

2

Plaintiff was incapable of traveling to Fairbanks until 04-13-08 following ACL
ligament replacement, and fracture related knee surgery on 03-25-08 which was the
reason for Plaintiff's 03-24-08 Motion for an extension of time to respond to this
Opposition to Sanctions, and the extension requested was granted by the court 03-28-08
at docket #99, and therefore Plaintiff did not have the opportunity to file within five days,
a motion for reconsideration of the court's Denial of Plaintiff's Motion to Compel, dated
03-24-08 at docket # 95.

Nevertheless, while Plaintiff's time has run out for a Motion for Re-Consideration,
Plaintiff here points out the following in the context of asking the court to consider the
Stuart documents as relevant grounds for the sanctions requested, despite the courts 03-
24-08 Denial of the Motion to Compel Discovery of the documents, and within the
context that AUSA Cooper declared 10-11.07 that the Stuart documents have
disappeared.

It was AUSA Cooper who produced thousands of pages of documents in the
Schneider case, but withheld documents from the investigating officer, and knowing
Rundell had lied in her 09-24-04 deposition that SAIC Stuart was not involved 'in any
way' in the case, Cooper did not produce the Stuart documents which he had and even
participated with Plaintiff in FOIA trying to locate the investigating officer(s) at the BLM
National Law Enforcement Headquarters which Cooper knew was pointless because he
knew that Stuart had done the investigation since he had her correspondence. .

Wayson v. Rundell, 4:06 Cv 1 (JWS)
Response to Opp. to Sanctions 4-17-08

As much as Ms. Lindquist might want to, it is impossible to separate conduct by the U.S. Attorney's office in the Schneider case, as grounds for Plaintiff's request for sanctions in this case.

Plaintiff is somewhat puzzled by the court's finding that Plaintiff's Motion to Compel discovery was not 'timely', because when Defendant filed her Motion for Summary Judgment at docket # 69, on 10-18-07, it included a Declaration(exhibit N) from Defendant Linda Rundell, which no longer named Pamela Stuart as the investigating officer, referring instead to "another employee" as having done the investigation.

Defendant also offered to re-open discovery in her 'Opposition to Wayson's Motion to Strike the Defendant's Witness List' at docket #87, even after Plaintiff's Motion to Compel Discovery was filed, albeit she only offered up Ms. Evans for deposition.

There is no question that the Stuart documents exist(ed) and that they are/were in the control of both the U.S. Attorney and Ms. Rundell.

AUSA Daniel Cooper's Declaration of 10-11-07 at exhibit 'A' of Defendant's 'Response in Opposition to the Motion to Compel' at docket #81, acknowledges that the U.S. Attorney had the Stuart letters, and that they have now disappeared.

Lindquist acknowledges the Schneider case remains in the U.S. Attorney's office, and has previously acknowledged her access to the Schneider case as a U.S. Attorney, in her e-mail of 08-29-07 which is Attachment #9 of Plaintiff's Reply to Opposition to Motion to Strike Defendant's Witness List, found at docket # 88.

This 08-29-07 e-mail reflects that when given Bates numbers from the Schneider case by Plaintiff to help Lindquist locate documents which she wanted to review before the Punches (Garis) deposition, Ms. Lindquist wrote,

"I'll retrieve them."

Ms. Lindquist has acted as an assistant U.S. attorney often and consistently enough in mounting her defense of Rundell, for the court to determine that she is not acting as a private attorney for Rundell, had access to the Stuart documents in her capacity as a member of the U.S. Attorney's office, and is defending Rundell as a U.S. Attorney.

Therefore, according to Moore's Federal Practice, Lindquist's control of the Stuart documents should be considered to be within the party's control under Rule 34.

But Independently of Lindquist, Rundell, as a party, has/had control of the Stuart documents.

Wayson v. Rundell, 4:06 Cv 1 (JWS)
Response to Opp. to Sanctions 4-17-08
5

This being a Bivens case does not free Rundell from the General Provisions governing Discovery, and under Rule 34 (a) Ms. Rundell must produce all documents, and electronically stored information which are in her possession, custody or control.

The Stuart Documents are in Ms. Rundell's control as indicated by her State Director Position description which AUSA Lindquist submitted as 'Exhibit F' in her Motion for Summary Judgment at docket # 69, and which says, under II. **DUTIES AND RESPONSIBILITIES** in this position description at Exhibit F, of the BLM state Director, that Ms. Rundell,

"serves as the direct, on-site extension of the Director, Bureau of Land Management, in the accomplishment of his/her broad management responsibilities."

This gives Ms. Rundell more than sufficient control of the Stuart documents since one of her 'management responsibilities' was carrying out a criminal investigation of a complaint by Mark Wayson against her subordinate, Robert Schneider, and Ms. Rundell has both the responsibility and the capacity to produce these documents from anywhere they might be in any BLM office or archives, and would logically have done so if the Stuart documents in any way indicated Stuart's investigation was fair or legitimate, or that that Plaintiff was afforded even a shred of due process before Ms. Rundell made a permanent record that Plaintiff had forcibly committed a crime against a BLM employee.

Control has been defined to include the legal right to obtain the documents requested upon demand, and as the 'direct on-site extension of the Director of the Bureau of Land

Management,' Ms. Rundell clearly has the legal right to demand the Stuart documents

thereby placing them in her control for the purposes of discovery, regardless of whether

Ms. Lindquist defends her as a 'private attorney' or as a U.S. Attorney.


   It is also logical that Ms. Rundell would NOT request the Stuart documents if those

documents indicate an intent to violate Plaintiff's rights, and Plaintiff therefore argues

again that it is appropriate for the court to impose the sanction that the missing Stuart

documents do establish that Rundell violated Plaintiff's constitutional rights to free

speech and due process.


   While Plaintiff may have failed to file a formal certification of good faith efforts to

obtain the Stuart documents along with the Motion to Compel Discovery, at docket #71,

both the Motion to Compel, and the Memorandum in Support of the Motion to Compel

Discovery along with Attachments at docket #72, chronicle repeated efforts by Plaintiff

to obtain the Stuart documents.


   These include among attachments at docket #72,  Attachment #2, the 4-27-07 affidavit

by Plaintiff stating that these Stuart documents had been promised to Plaintiff by AUSA

Daniel Cooper, and Attachment #9, the copy of Lindquist's 3-26-07 response to

Plaintiff's Request for Production #9, asking for a,

"Copy of all notes, e-mails, reports, documents, and other communications and records,
which Pamela Stuart, Senior Agent in Charge, reviewed or produced herself, in her
investigation of the Plaintiff's complaint, and in drafting the 9-19-02 memorandum for
Ms. Rundell."

Wayson v. Rundell, 4:06 Cv 1 (JWS)
Response to Opp. to Sanctions 4-17-08

Plaintiff's memorandum in Support of the Motion to Compel chronicles telephone calls

made trying to contact Pamela Stuart and Attachment # 13, includes copies of returned

letters from Plaintiff to Stuart which were sent to arrange a deposition of Ms.

Stuart and reflect Lindquist's less than correct information as to where Ms. Stuart can be

located, and Attachment #15 is a Touhy Request, dated 9-13-07, which in the first

paragraph, requests,

(a) I wish to Duces Tecum notice former BLM Special Agent in Charge for Alaska,
Pamela Stuart for deposition. I am requesting she bring with her the documents produced
in any investigation, or produced by her, which were used to establish in 2002 that I had
violated a criminal statute on 9-15-01 at 98 mile Steese Hwy during a contact with BLM
engineer Carole Hammond. Records requested include 'two letter's' written by SAIC
Pamela Stuart which AUSA Daniel Cooper stated did exist and would produce in the
**Wayson v. Schneider** case. They were never produced.

This 9-13-07 Touhy Request was not answered until 01-24-08, well after the closure

of Discovery, and the excuse which BLM Solicitor Joseph Darnell offered for the delay

was not plausible under the circumstances.


In the **FACTS** section of Lindquist's Opposition to Sanctions, Ms. Lindquist refers to

a 'February 23, 2008' letter from the Plaintiff to BLM solicitor Joseph Darnell requesting

the Stuart documents, docket # 92-4, (?) and Darnell's answer on February 29, 2008 that

the Stuart documents could not be found, Docket # 92-5 (?)


Plaintiff identifies the 02-23-08 letter to Joseph Darnell as 'Attachment #2 to docket

#92, and in this letter to Joseph Darnell Plaintiff references six locations including the

Wayson v. Rundell, 4:06 Cv 1 (JWS)
Response to Opp. to Sanctions 4-17-08

Fairbanks regional office, the BLM National law enforcement office, the Anchorage BLM state office, the archives for the Anchorage office, the national Archives which are located at Sand Point Idaho, and Robert Schneider's files, as locations where the law enforcement Stuart documents might or should be in BLM's files.

In his reply, identified as Attachment #3, found at Docket # 92, BLM solicitor Darnell does not dispute any of the locations at BLM where the documents should be filed, but without offering either an explanation or expressing any concern for their disappearance, Darnell indicates that the law enforcement records requested have disappeared, and that he will make no further efforts to locate them.

This confirmation that law enforcement records have not only disappeared from the U.S. Attorney's office, but up to at least six other locations at BLM should not be considered as merely coincidental, and such disappearances point so strongly at further misconduct that the sanctions requested should be granted by the court.

If BLM and the U.S. Attorney do not know where the documents are, how can BLM or the U.S. Attorney claim they were not transmitted to the Dusseldorf Consulate along with Rundell's 09-19-02 memorandum, and were subsequently the source of warnings transmitted to Appeals court judge Goehler-Schlicht from Deputy Consulate Marion Ram which affect Plaintiff's daughter?

If they cannot be located, how can BLM and/or the U.S. attorney claim the Stuart documents are not a blueprint for violating Plaintiff's constitutional rights, and therefore how can AUSA Lindquist object to the court imposing the sanctions requested?

There is no stronger indication of spoliation of evidence than the disappearance of an investigating officer's report from so many different locations.

Plaintiff does plead guilty to seeking the court's order to acquire any record of communication between the U.S. Attorney's Office and Linda Rundell's New Mexico BLM office on 09-11-07, during Rundell's deposition, before making an effort to acquire the communications from the party.

Plaintiff did so because the level of misconduct by the U.S. Attorney, and their clients at the Dept. of Interior, disrupts and delays Plaintiff's attempts to bring this case before a jury, and the U.S. Attorney has consistently ignored Plaintiff's complaints regarding misconduct by his office except to convey through Lindquist that Plaintiff's most serious complaints of Obstruction of Justice, and Impersonating a federal officer, are 'under advisement.'

Plaintiff's failure to first try to obtain such communications before petitioning the court through a Motion to Compel should trigger only a denial of these U.S. Attorney-

Rundell deposition communications, since Plaintiff did make good faith efforts to obtain

the Stuart documents, and for the court to not allow them as grounds for the sanctions

requested, would be to endorse AUSA Coopers, BLM's, and AUSA Lindquist's violation

of discovery rules in withholding them.

   If Plaintiff somehow failed to request the Stuart documents  properly leading to the

court's denial of Plaintiff's Motion to Compel their discovery, this should not result in

automatically making moot, their use in this request for sanctions.

   The tactic of defending both Schneider and Rundell has been to justify the clients'

misconduct by portraying Plaintiff as dangerous and threatening, and this tactic would

have been substantially neutralized by the production of the investigating officer's

correspondence revealing that the attacks upon Plaintiff were actually part of an agenda

to violate his rights.

   Sanctions serve as an effective means to preserve and protect the integrity of the

process, and to move it toward a resolution by a jury which could be a finder of fact,

since so many remain in dispute.

   Plaintiff reminds the court that in the Schneider case, the court made a ruling that

there Plaintiff's August 26, 1996  letter to BLM Director Tom Allen complaining of

constitutional violations by BLM, was adequately resolved to BLM's satisfaction that no

threats against BLM employees were intended by Plaintiff's letter.

Yet AUSA Cooper, who was at the time in possession of the Stuart documents,

ignored this ruling by the court regarding this August 26, 1996 letter, and instead used the

letter as a pillar of his Motion for Summary Judgment, and even added to the effects of

both Schneider's and Rundell's accusations against Plaintiff with his own embellishment

of the August 26, 1996 letter by writing,

"...what matters is Mr. Wayson undertook to inform the BLM that he is willing to use
deadly force against those who come on his claims in his sole discretion"

What should matter is that the U.S. Attorney made an important piece of evidence, the

Stuart documents, disappear and sanctions for this breach of public trust are the first step

toward bringing this case back within the rules of procedure.

What should also matter is the ruling by the court regarding this letter, but Lindquist,

in her Motion for Summary Judgment makes it clear that despite any court ruling, facts

involved, the August 26, 1996 letter, complaining of BLM constitutional violations, the

U.S. Attorney will continue to use it as 'proof' of threats by the Plaintiff.

For despite her claim that the Schneider case is closed, Ms. Lindquist found time in

her defense of Rundell to re-open **Wayson v. Schneider** far enough to fall in love with

the same August 26, 1996 letter already ruled upon by this court, and she too, like

colleague Cooper, ignored this court's ruling in order to also make the letter one of the

pillars of her Motion for Summary Judgment, in casting Plaintiff as a threatening person.

Wherein prosecutorial discretion is normally ill-suited to judicial review, the courts do

have the responsibility to protect individuals from prosecutorial conduct which violates

constitutional rights, and. the U.S. Attorney and BLM have simply gone too far.

Sanctions are a means of doing so, particularly when the government appears to be so

cavalier about rulings and obeying the rules of procedure.

In her Opposition to sanctions, Ms. Lindquist writes, "Moreover, there is no known

duty for the government to retain documents in a closed case."

She is wrong because there is a duty requiring the U.S. Attorney to archive cases

which Ms. Lindquist can access through the administrative DOJ regulations, but there is

no known authority for the U.S. Attorney to strip the Schneider case of only certain

documents while it remains in the office, and to not make copies of those documents

before the case is archived.

Therefore it is Ms. Lindquist's duty to provide the court with any authority

authorizing the U.S. Attorney to make compromising documents disappear from cases in

Wayson v. Rundell, 4:06 Cv 1 (JWS)
Response to Opp. to Sanctions 4-17-08

their own and/or the offices and archives of those they defend at the Dept. of the Interior.

It is significant that in her Opposition Ms. Lindquist does not deny that there was communication between the U.S. Attorney's office and Ms. Rundell during the Rundell deposition on 09-11-07, although Plaintiff has to anticipate that Lindquist will argue that it is not her client's fault if she received communication instructing her to change her testimony during the deposition, and Lindquist will argue that 'deception' can be denied since her client was the beneficiary rather than the initiator of improper communication during deposition.

The 09-11-07 deposition testimony Rundell provided, and which is found in Plaintiff's Memorandum in Support of Motion for Sanctions, at Attachment # 8 of docket # 93, speaks for itself, and reflects that Rundell was not "prompted" as Lindquist contends, but agreed to a new version of events, her third, which had no connection whatsoever to her testimony a few minutes earlier, namely that receiving documents had triggered the recollection of Stuart's involvement in the case, rather than someone from the National law enforcement Office who conducted the investigation into the complaint which Plaintiff had filed against Robert Schneider.

In light of the disappearance of the Stuart documents, it was probably useless for Plaintiff to petition the court to compel the U.S. Attorney to produce communications

between their office and Ms. Rundell's office in New Mexico on 9-11-07 during the

Rundell deposition, because by now, if not already destroyed, any improper

communications soon would be destroyed following a court order to produce them, and

BLM solicitor Darnell could be relied upon to tidy up things at the other end in Rundell's

office.

The Schneider case was closed by this court, but the closure is irrelevant to ordering

the U.S.Attorney to pay Plaintiff's costs for the Schneider case, and it remains a

legitimate sanction to do so, now that Cooper has admitted that he had the Stuart

documents but did not produce them during Discovery in the Schneider case.

Dated: April 17, 2008

Mark N. Wayson, pro se

**CERTIFICATE OF SERVICE**
The undersigned hereby certifies
that on this _18_ day of _April_,
2008, a copy of the foregoing was
served by mail on: AUSA Susan Lindquist

Office of U.S. Attorney
222 W. 7th Ave., #9, Rm. 253
Anchorage, Alaska 99513

Mark N. Wayson

Wayson v. Rundell, 4:06 Cv 1 (JWS)
Response to Opp. to Sanctions 4-17-08