UNITED STATES DISTRICT COURT

DISTRICT OF ALASKA

| | |
|---|---|
| MARK N. WAYSON, ) | |
| ) | |
| Plaintiff, ) | 4:06-cv-00001 JWS |
| ) | |
| vs. ) | ORDER AND OPINION |
| ) | |
| LINDA RUNDELL, ) | [Re: Motions at Docket Nos. 69, |
| ) | 85, and 92] |
| Defendant. ) | |
| ) | |

## I. MOTIONS PRESENTED

At docket 69, defendant Linda Rundell moves for summary judgment dismissing plaintiff's claims pursuant to Federal Rule of Civil Procedure 56. At docket 73, plaintiff Mark Wayson opposes the motion. Defendant replies at docket 79.

At docket 85, plaintiff moves to strike defendant's witness list. Defendant responds at docket 87. Plaintiff replies at docket 88. At docket 92, plaintiff moves the court to impose sanctions. Defendant responds at docket 94. Plaintiff replies at docket 100.

Neither party requested oral argument on any of the motions. Oral argument would not assist the court.

## II. BACKGROUND

Mark Wayson is the owner of two state mining claims located at 98 mile Steese Highway and the father of a minor daughter who presently resides in Germany. At various times beginning in 1996, Wayson objected to Bureau of Land Management

("BLM") regulations, contending that the regulations unreasonably restrict the use of the property and/or are unconstitutional. Linda Rundell served as the BLM associate state director in Alaska from December 1999 to December 2002, during which time she sometimes served as the acting state director in Alaska.

In a letter dated April 5, 2002, Mark Wayson requested Earl Devaney, Inspector General of the Department of the Interior, to investigate alleged "violations of Title 18 by Fairbanks BLM manager Bob Schneider," alleging that "Schneider is creating a dangerous provocative situation for me and other Alaskans."[1] In his letter, Wayson described a dispute he had with Carol Hammond, a BLM engineer, who was directing a project near Wayson's state mining claims. Wayson requested Hammond to stop the project, and she refused. At some point during the dispute, Hammond stated that she felt "threatened" by Wayson and called BLM rangers to the project site. In his letter to the Inspector General, Wayson states that Bob Schneider subsequently directed that "armed rangers" remain at the site until the project was completed.[2]

In a memorandum dated August 5, 2002, the Chief of the BLM National Law Enforcement Office referred Wayson's complaint to the "State Director, Alaska" to conduct an administrative inquiry into the allegations and provide the National Law Enforcement Office with a report of findings.[3] Linda Rundell, as the acting state director, requested Pamela Stuart, the Special Agent in Charge, to investigate Wayson's complaint that Bob Schneider violated Title 18.

Stuart subsequently drafted a memorandum for Rundell. The memorandum dated September 19, 2002, and signed by Linda Rundell, states in pertinent part:

> As a manager, Mr. Schneider has the right, responsibility, and legal obligation to ensure he is not exposing his employees to any undue harm. Title 18 United States Code 111 states in pertinent part, "whoever forcibly assaults, resists, opposes impedes, intimidates, or interferes with any person designated in section 1114 of this title (the BLM falls within this statute) while engaged in or on

---

[1] Doc. 69-4, exh. B at 1.

[2] *Id.*

[3] Doc. 69-18, exh. P.

account of the performance of official duties shall be fined under this title or imprisoned not more than one year, or both." Ms Hammond, while performing her official duties, was intimidated by Mr. Wayson. It is our opinion that Mr. Schneider acted reasonably and prudently when he requested the ranger to stand by the site until the work was completed, thereby relieving Ms. Hammond of the intimidation she felt, whether real or perceived.[4]

Rundell sent the memorandum to the Chief of Law Enforcement, and did not send it to anyone else.[5] Wayson learned about Rundell's finding in March 2004.[6]

On January 13, 2006, Wayson filed an amended complaint in Superior Court for the State of Alaska, Fourth Judicial District at Fairbanks, alleging that Rundell damaged Wayson's reputation and violated his constitutional rights by finding that Wayson "forcibly committed a crime against BLM employee Carol Hammond,"[7] and by obstructing the investigation of Wayson's complaint of misconduct by Bob Schneider, another BLM employee. Wayson's complaint specifically alleges that Rundell "made this finding for the purpose of concealing wrongdoing by her subordinate, Robert Schneider, and blocking and obstructing a proper investigation into whether he had violated the law ... in retaliation for [Wayson's] exercise of free speech rights under the First Amendment, U.S. Constitution."[8] Wayson alleges that as a result of Rundell's finding, he "has lost the use and value of his property and has had his free speech rights infringed."[9] Wayson's complaint also suggests that Rundell's finding was transmitted to other federal employees, who in turn transmitted the findings to the "21st Senat[e] of the Cologne Germany appeals court, [] thereby jeopardizing and causing the loss, in part, of Plaintiff's legal access to his daughter."[10]

---

[4]Doc. 69-3, exh. A at pp. 1-2.

[5]Doc. 69-16, exh. N.

[6]Amended Complaint at p. 2, exh. 1, doc. 4.

[7]*Id.*

[8]*Id.*

[9]Amended Complaint at p. 7, exh. 1, doc. 4.

[10]*Id.* at 9.

Wayson's complaint further alleges that:

9. Linda Rundell is not a law enforcement officer, and did not follow commonly accepted procedures for the administrative inquiry she conducted. She did not inform Mark Wayson of the criminal accusations against him, nor give him a chance to defend himself against these charges; she did not interview available witnesses, review available exculpatory evidence, or follow basic requirements of due process in reaching her finding that Mark Wayson committed a crime against Carol Hammond.

In January 2006, former United States Attorney Timothy Burgess certified that Rundell "was acting within the scope of her employment with the [BLM] at the time of the allegations in Plaintiff's Complaint."[11] Rundell removed this matter to federal court pursuant to 28 U.S.C. § 1442(a)(1) and 28 U.S.C. § 2679(d)(2).[12] In subsequent motion practice, Wayson clarified that his complaint solely asserts a *Bivens*[13] claim against Rundell in her individual capacity. Based on Wayson's representation, the court vacated the United States Attorney's certification that Rundell acted within the scope of her employment.[14] This court has federal question jurisdiction under 38 U.S.C. § 1331.

### III.  SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56(c) provides that summary judgment should be granted when there is no genuine issue as to any material fact and when the moving party is entitled to judgment as a matter of law. The moving party has the burden to show that material facts are not genuinely disputed.[15] To meet this burden, the moving party must point out the lack of evidence supporting the nonmoving party's claim, but need not produce evidence negating that claim.[16] Once the moving party meets its

---

[11] Notice of Removal at p. 2, doc. 1.

[12] Section 1442(a)(1) provides for removal of cases in which an officer of the United States is sued in his or her "individual capacity for any act under color of such office."

[13] *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971).

[14] Doc. 21.

[15] *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

[16] *Id.* at 325.

burden, the nonmoving party must demonstrate that a genuine issue of fact exists by presenting evidence indicating that certain facts are disputed so that a fact-finder must resolve the dispute at trial.[17] The court must view this evidence in the light most favorable to the nonmoving party.[18]

### IV. DISCUSSION

#### A. Motion for Summary Judgment

Wayson's complaint asserts a *Bivens* claim against Rundell. A *Bivens* suit is brought against a federal employee in his or her individual rather than official capacity.[19] The basis of a *Bivens* claim is some illegal or inappropriate conduct on the part of the federal official or agent, while acting under color of federal law, that violates a plaintiff's clearly established constitutional right.[20] Here, Wayson asserts that Rundell damaged Wayson's reputation and violated his constitutional rights by finding that Wayson committed a crime against Carol Hammand, a BLM employee, and by obstructing the investigation of Wayson's complaint of misconduct by Robert Schneider, another BLM employee.

Rundell argues that she is entitled to summary judgment on Wayson's *Bivens* claim on the grounds that as a matter of law Wayson failed to allege any violation of his constitutional rights. In the alternative, Rundell argues that she is entitled to qualified immunity. "Qualified immunity generally protects government officials in the course of performing the discretionary duties of their offices."[21] "The first step in evaluating a qualified immunity defense is to determine whether the plaintiff has shown that the action complained of constituted a violation of his or her constitutional rights."[22] If the

---

[17] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986).

[18] *Id.* at 255.

[19] *Balser v. Department of Justice, Office of U.S. Trustee*, 327 F.3d 903, 909 (9th Cir. 2003).

[20] *Id.*

[21] *Butler v. Elle*, 281 F.3d 1014, 1021 (9th Cir. 2002)

[22] *Id.*

court is satisfied that a constitutional violation occurred, "the second step is to determine: (1) whether the violated right was clearly established, and (2) whether a reasonable public official could have believed that the particular conduct at issue was lawful."[23]

Wayson's complaint appears to allege that Rundell violated his free speech, property, and due process rights. The court first considers Wayson's claim under the First Amendment. Wayson alleges that Rundell made her finding against him in retaliation for his exercise of free speech rights under the First Amendment. To make a prima facie case for retaliation, Wayson must demonstrate a genuine issue of material fact that Rundell engaged in state action that was "designed to retaliate against and chill political expression."[24] Such retaliation "strikes at the heart of the First Amendment."[25] Rundell's intent is an element of the claim.[26]

The theory behind Wayson's First Amendment claim appears to be that a letter that Wayson wrote in August 1996 to BLM State Director Tom Allen, protesting the constitutionality of BLM regulations, "triggered a series of actions against Plaintiff by BLM administrators, and government officials, including that committed by Defendant Rundell, and were intended to retaliate against or punish Plaintiff for speaking out in protest against unconstitutional regulations."[27] Wayson fails to provide any evidence that the "intent behind the memorandum by Linda Rundell [was] to silence Mark Wayson for daring to speak out against the BLM."[28] In fact, the record does not contain any evidence that Rundell knew about Wayson's 1996 letter to Allen, much less that her

---

[23] Id.

[24] Butler v. Elle, 281 F.3d 1014, 1028 (9th Cir. 2002) (quoting Gibson v. United States, 781 F.2d 1334, 1338 (9th Cir. 1986)).

[25] Id.

[26] Mendocino Environmental Center v. Mendocino County, 14 F.3d 457, 464 (9th Cir. 1994).

[27] Doc. 73 at p. 3.

[28] Doc. 73 at p. 13.

finding in 2002 was "designed to retaliate against Wayson for the opinions he expressed in the 1996 letter" or to chill his political expression.[29]  Rather, the undisputed evidence indicates that Rundell "did not intend the memorandum to affect Mr. Wayson at all," she "intended to make a decision about Mr. Schneider's actions."[30]  In addition, Pam Stuart, who drafted the memorandum for Rundell, states that in drafting the memorandum, she "focused on whether Mr. Schneider violated any law.  He did not.  I did not accuse Mr. Wayson of committing a crime.  I was not investigating Mr. Wayson."[31]

Because Wayson has failed to produce any evidence of intent to retaliate or chill, Wayson has failed to establish a prima facie claim under the First Amendment.  Insofar as Wayson's *Bivens* claim relies on the First Amendment, the court need not advance to the issue of qualified immunity because Wayson has failed to establish that there is any genuine issue of material fact suggesting that Rundell's finding was designed to retaliate against Wayson or to chill his free speech.

Wayson's complaint also alleges that Rundell damaged Wayson's reputation by finding that Wayson "forcibly committed a crime against BLM employee Carol Hammond."[32]  For the sake of argument, the court will assume that Rundell's finding that "Mr. Schneider acted reasonably and prudently when he requested the ranger to stand by the site until the work was completed, thereby relieving Ms. Hammond of the intimidation she felt, whether real or perceived,"[33] could be construed as a finding that Wayson committed a crime against Hammond.  "Imputing criminal behavior to an individual is generally considered defamatory per se," and is actionable in state court.[34]

---

[29]*Butler*, 281 F.3d at 1028 (quoting *Gibson v. United States*, 781 F.2d 1334, 1338 (9th Cir. 1986)).

[30]*Id.*

[31]Doc. 69-9, exh. G.

[32]Amended Complaint at p. 2, exh. 1, doc. 4.

[33]Doc. 69-3, exh. A at pp. 1-2.

[34]*Paul v. Davis*, 424 U.S. 693, 698 (1976).

It appears, however, that Wayson is arguing that Rundell's allegedly defamatory finding deprived him of due process rights under the Fourteenth Amendment.

Citing *Paul v. Davis*,[35] Rundell argues that she is entitled to summary judgment dismissing Wayson's claim because Wayson does not have a constitutional right to be free of defamation unless it is associated with a tangible benefit, like federal employment.  In *Paul*, the Supreme Court held that damage to reputation alone does not implicate any liberty or property interests sufficient to invoke the procedural protection of the Due Process Clause.  In his opposition brief, Wayson does not address Rundell's argument. However, in his complaint Wayson alleges that as a result of Rundell's finding, he "has lost the use and value of his property."[36]  The record does not contain - and in response to the motion Wayson fails to provide - any evidence that he has been denied the use or value of his property because of Rundell's finding.

Wayson's complaint also suggests that Rundell transmitted her finding to other federal employees, who then transmitted the findings to the "21st Senat[e] of the Cologne Germany appeals court, [] thereby jeopardizing and causing the loss, in part, of Plaintiff's legal access to his daughter."[37]  Here again, Wayson does not provide any evidence in support of his claim.  Rather, the undisputed evidence shows that Rundell sent the memorandum to the BLM Chief of Law Enforcement, and did not send it to anyone else.[38]  Wayson's argument that Rundell denied him due process in reaching her finding that he "forcibly committed a crime against Carol Hammond" is unavailing because Rundell did not make any criminal charges against Wayson, nor could she as a BLM acting or associate state director.

Wayson has failed to show a genuine issue of material fact whose resolution could support a finding that Rundell engaged in state action violating Wayson's First Amendment rights or any other constitutional right.  Therefore, Rundell is entitled to

---

[35] 424 U.S. 693 (1976).

[36] Amended Complaint at p. 7, exh. 1, doc. 4.

[37] *Id.* at 9.

[38] Doc. 69-16, exh. N.

summary judgment dismissing Wayson's *Bivens* claim.  It is unnecessary to address the issue of qualified immunity.

In addition to the *Bivens* claim, it appears that plaintiff is also attempting to allege a claim that Rundell violated 18 U.S.C. § 1519 by "obstructing the investigation of misconduct by her subordinate, Robert Schneider."[39]  Rundell is entitled to summary judgment dismissing Wayson's purported claim under 18 U.S.C. § 1519, because 18 U.S.C. § 1519 is a criminal statute that does not provide for a private cause of action.[40]

### B. Motion to Strike

At docket 85, Wayson moves to strike Rundell's witness list.  For the reasons in the preceding section, the court will grant summary judgment dismissing Wayson's claims.  Accordingly, there will no be trial, and the motion at docket 85 is moot.

### C. Motion for Sanctions

In his motion at docket 92, Wayson asks the court to impose sanctions on Rundell and on "the Anchorage U.S. Attorney's office for their evasive and incomplete discovery ...."[41]  For the reasons advanced in Rundell's opposition at docket 94, which the court finds persuasive and hereby adopts as its rationale, the motion at docket 94 lacks merit.  It will be denied.

---

[39] Amended Complaint at p. 8., exh. 1, doc. 4.

[40] *Forsyth v. Humana, Inc.*, 114 F.3d 1467, 1482 (9th Cir. 1997).

[41] Doc. 92 at p. 1.

## V.  CONCLUSION

For the reasons set out above, defendant's motion for summary judgment at docket 69 is **GRANTED**, and this action is **DISMISSED**; the motion to strike at docket 85 is **DENIED** as moot; and, the motion for sanctions at docket 92 is **DENIED**.

DATED at Anchorage, Alaska, this 27th day of May 2008.

/s/ JOHN W. SEDWICK
UNITED STATES DISTRICT JUDGE